UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HEALTHY FUTURES OF TEXAS, individually and on behalf of all others similarly situated, <br>　　2300 West Commerce Street, <br>　　Suite 212, <br>　　San Antonio, TX 78207, <br><br>　　　　　　Plaintiff, <br><br>　　　　v. <br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br>　　200 Independence Ave. SW, <br>　　Washington, DC 20201, <br><br>and <br><br>ALEX AZAR, Secretary, <br>Department of Health and Human Services, <br>　　200 Independence Ave. SW, <br>　　Washington, DC 20201, <br><br>　　　　　　Defendants. | Civil Action No. 18-CV-992 |

**CLASS ACTION AND INDIVIDUAL COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.　　The Teen Pregnancy Prevention Program (TPPP) is a congressionally mandated program that funds evidence-based programs to prevent teen pregnancy. When created by statute in 2009, TPPP was a major shift away from the abstinence-only approach to pregnancy prevention that had been federal policy for decades and towards an evidence-based approach focused on funding programs that could demonstrate success, regardless of methodology.

2.　　Plaintiff brings this action on its own behalf and seeks to represent a class of the recipients of TPPP grants programmatically approved in 2015 for five-year project periods by the

Office of Adolescent Health (OAH), an office within the Department of Health and Human Services (HHS). In May 2017, HHS announced that it wanted to terminate the TPPP in the next fiscal year and sought no funding for the program in its 2018 budget request to Congress. HHS then informed all TPPP grantees that their grants would be terminated effective June 2018—two years ahead of the scheduled end dates. Despite HHS's request to zero-out funding for the TPPP, Congress has not cancelled the program.

3. HHS's termination of the grants in a manner contrary to HHS regulations and its failure to provide a reasoned basis for the decision to shorten the grants constitutes final agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law under the Administrative Procedure Act (APA).

4. Plaintiff and members of the proposed class are replicating proven evidence-based pregnancy prevention programs and engaged in empirical research of new and innovative pregnancy prevention programs. The unlawful shortening of the TPPP grants threatens the viability of these programs, including by preventing them from completing their research, and will harm the communities they serve. Plaintiff thus brings this class action to enjoin HHS from shortening the grants.

**JURISDICTION AND VENUE**

5. Venue is proper in this district because a substantial part of the acts or omissions giving rise to the claim occurred in this judicial district. 28 U.S.C. § 1391(e).

6. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1361, 28 U.S.C. § 2201, and 5 U.S.C. § 702.

**PARTIES**

7. Plaintiff Healthy Futures of Texas (HFTX) is a San Antonio, Texas, based nonprofit corporation established in 2006 with a mission to reduce teen and unplanned pregnancy in San Antonio and Texas.

8. HFTX is the recipient of a five-year TPPP grant, for $869,902 annually, to implement and conduct a high-quality rigorous evaluation of an innovative teen pregnancy prevention program called Big Decisions in predominantly Hispanic rural school districts on or near the Texas-Mexico border.

9. Defendant HHS is the agency of the federal government of the United States responsible for administering the TPPP. HHS is an agency within the meaning of the APA.

10. Defendant Alex Azar is the Secretary of HHS and the agency's highest-ranking official. Plaintiff sues Secretary Azar in his official capacity.

**BACKGROUND**

**Congress's Creation of the TPPP**

11. In 2009, alarmed that teenage pregnancy rates had begun to rise after years of decline, Congress mandated the creation of the TPPP, an evidence-based initiative to reduce teen pregnancy. Specifically, in the Consolidated Appropriations Act, 2010, Congress appropriated $110 million to HHS for fiscal year 2010 and mandated that the funds "shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy and for the Federal costs associated with

administering and evaluating such contracts and grants." Pub. L. No. 111-117, div. D, tit. II, 123 Stat. 3034, 3253.

12. Congress specified that HHS must expend the appropriated funds across two "tiers" of grants:

- **Tier 1:** Congress mandated that "not less than $75,000,000 shall be for replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors."

- **Tier 2:** Congress mandated that "not less than $25,000,000 shall be available for research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy."

*Id.*

13. Congress specified that "any remaining amounts shall be available for training and technical assistance, evaluation, outreach, and additional program support activities," and that "$4,455,000 shall be available to carry out evaluations (including longitudinal evaluations) of teenage pregnancy prevention approaches." *Id.*

14. Congress directed the program to be administered within the Office of the Assistant Secretary of Health by OAH. OAH is responsible for implementing and administering the program and coordinates its efforts with the Administration for Children and Families, CDC, and other appropriate HHS offices and operating divisions. Conference Rep. No. 111-366, at 1043 (2009).

15. From 2009 through the present, Congress has mandated the continuation of the TPPP and has appropriated funds to HHS to administer the program for each fiscal year using similar appropriations language. For fiscal years 2014–2018, Congress each year appropriated $101 million in grant funding and an additional $6.8 million to fund evaluations.

16. On March 23, 2018, Congress passed the Consolidated Appropriations Act, 2018, which fully funded the TPPP for fiscal year 2018. Congress directed that the appropriated funds "shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy and for the Federal costs associated with administering and evaluating such contracts and grants." Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, H.R. 1625-386. Congress further directed that "not more than 10 percent of the available funds shall be for training and technical assistance, evaluation, outreach, and additional program support activities, and of the remaining amount 75 percent shall be for replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors, and 25 percent shall be available for research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy." *Id.*

**HHS's Administration of the TPPP from 2010 through 2016**

17. Consistent with Congress's mandate and appropriations, HHS, in 2010, through OAH, prepared to provide $75 million in funding to Tier 1 programs that aim to replicate evidence-based programs and $25 million to Tier 2 programs that aim to develop new and innovative evidence-based programs.

18. Prior to awarding the first Tier 1 grants replicating evidence-based programs, HHS undertook an intensive evidence review process to identify programs that had documented positive impacts on teen pregnancy prevention and other associated factors, and would thus be eligible for TPPP funding. Under a contract with HHS, Mathematica Policy Research conducted an independent, systematic review of the evidence base on teen pregnancy, sexually transmitted

infections, and sexual risk behaviors. This review defined the criteria for the quality of an evaluation study and the strength of evidence for a particular intervention. Based on these criteria, HHS defined a set of rigorous standards an evaluation must meet in order for a program to be considered "effective based on rigorous evaluation."

19. Based on the review, HHS compiled a list of evidence-based program models that it deemed to have met those standards. The list included programs that use a number of approaches—sexual health education, youth development, abstinence-based, and programs for delivery in clinical settings and for special populations. Under the TPPP, federal funding moved from being focused on a particular type of sex education based on a certain ideology to evidence-based programs that included a variety of approaches determined to be "effective based on rigorous evaluation."

20. Since the program's inception, HHS has provided funding to Tier 1 and Tier 2 programs for five-year project periods.

21. In April 2010, HHS, through OAH, issued two separate Funding Opportunity Announcements (FOAs) for Tier 1 and Tier 2 cooperative agreements. A cooperative agreement is an award instrument with substantial collaboration between the awarding agency and the recipient. OAH stated that it chose to use cooperative agreements to provide for close collaboration with recipients, ensure adherence to project aims, enable review and approval of curricula and educational materials, and assist with ongoing technical assistance and troubleshooting.

22. In the first cohort, between FY 2010 and FY 2014 (September 2010 to August 2015), HHS funded 102 grant projects that reached approximately half a million youth, trained more than 6,800 professionals, and established partnerships with over 3,800 community-based organizations across the United States.

23. A key aspect of the TPPP is rigorous evaluation of the funded programs to determine whether the replicated evidence-based models (Tier 1) and the new, innovative strategies (Tier 2) are effective. As part of the evaluation of the first cohort of grants, HHS funded 41 independent evaluation studies to assess where, when, and with whom programs are most effective. Of the 41 programs evaluated, HHS found four of the Tier 1 evidence-based programs to be effective in changing behavior when they were applied in new settings or with new populations than where they first showed behavioral impact, and many more programs reported changing participants' knowledge, attitudes, and intentions to avoid risky behaviors. HHS also found that eight of the Tier 2 new and innovative programs showed an impact on behaviors that prevent teen pregnancy and met the criteria to be considered an HHS evidence-based program in the future. The ratio of evaluations that produced positive results exceeded what experts typically expect from rigorous replications of social programs.

24. In addition, HHS conducted its own complementary evaluation activities. One of the federal evaluation studies, the TPPP Replication Study, examined whether program models that were commonly chosen by TPPP grantees and widely used in the field could achieve impacts with different populations and settings. Interim findings released in 2016 concluded that some of the evaluated programs were effective at changing attitudes toward contraception.

25. In early 2015, HHS, through OAH, issued new FOAs for a second five-year cohort of cooperative agreements, this time further specializing the FOAs within the two tiers. As mandated by Congress, the Tier 1 FOAs sought applicants for grants to replicate evidence-based programs that HHS previously determined had been proven effective and the Tier 2 FOAs sought applicants for grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy:

- **Tier 1A – Capacity Building to Support Replication of Evidence-Based Teen Pregnancy Prevention Programs**: "The goal of this FOA is to fund intermediary organizations to provide capacity building assistance (CBA) to at least 3 youth-serving organizations to replicate evidence-based TPP programs in a defined service area with demonstrated need." Tier 1A FOA, at 3-4, https://www.hhs.gov/ash/oah/sites/default/files/tier1a-foafile.pdf.

- **Tier 1B – Replicating Evidence-Based Teen Pregnancy Prevention Programs to Scale in Communities with the Greatest Need**: "The goal of this FOA is to have a significant impact on reducing rates of teen pregnancy and existing disparities by replicating evidence-based TPP programs to scale in at least 3 settings in communities and with populations at greatest need." Tier 1B FOA, at 3, https://www.hhs.gov/ash/oah/sites/default/files/tier1b-foafile.pdf.

- **Tier 2A – Supporting New or Innovative Approaches**: "The overall goal of this FOA … is to enable and support early innovation to advance adolescent health and prevent teen pregnancy." Tier 2A FOA, at 4, https://www.hhs.gov/ash/oah/sites/default/files/tier2a-foafile.pdf.

- **Tier 2B – Rigorous Evaluation of New or Innovative Approaches**: "The purpose of this FOA is to increase the number of evidence-based TPP interventions available by rigorously evaluating new or innovative approaches for preventing teen pregnancy and related high-risk behaviors." Tier 2B FOA, at 3, https://www.hhs.gov/ash/oah/sites/default/files/tier2b-foafile.pdf.

26. The FOAs provided that the five-year project periods for the grants would be funded in annual increments (budget periods) and that funding for all budget periods beyond the first year of the grant would be "contingent upon the availability of funds, satisfactory progress of the project, and adequate stewardship of Federal funds." The FOAs further provided for grantees to submit noncompeting applications in each year of the approved project period, providing progress reports for the current budget year, work plans, budgets, and budget justifications for the upcoming year. *See, e.g.*, Tier 1B FOA, at 39, https://www.hhs.gov/ash/oah/usites/default/files/tier1b-foafile.pdf.

27.     After reviewing nearly 500 applicants, in July 2015, HHS awarded grants to 81 organizations across Tiers 1 and 2. Combined, the chosen programs were designed to serve more than 1.2 million youth across 38 states over the five-year grant period.

28.     Consistent with the FOAs, grantees' initial notices of award provided that the "project period" for each of their grants was five years, from July 1, 2015, through June 30, 2020. Within the project period were five "budget periods," running from July 1 to June 30 of the following year. The first notice of award was for the budget period from July 1, 2015, through June 30, 2016.

29.     In June 2016, each TPPP grantee, including plaintiff HFTX, received a notice of award of the funds for the budget period from July 1, 2016, through June 30, 2017. Like the 2015 notices, the 2016 notices of award provided that the project period was through June 30, 2020.

30.     In early July 2017, each grantee, including plaintiff HFTX, received a notice of award providing the full funding that had been appropriated in fiscal year 2017 for their third grant years.

**HHS's Decision to Terminate the TPPP**

31.     Shortly after the election of President Trump in November 2016, advocates for abstinence-only education to prevent teen pregnancy expressed their hope that the new administration would focus exclusively on abstinence-only education, as opposed to the TPPP's evidence-based programs with diverse methodologies.

32.     In May 2017, as part of the annual budgeting process, HHS submitted its budget request to Congress for the next fiscal year. In that request, HHS stated that "[t]he FY 2018 President's Budget does not request funds for this program" and "HHS will not make amounts available for Teenage Pregnancy Prevention activities in FY 2018." The request summarized the

decision as follows: "The FY 2018 President's Budget request is $0.00, a decrease of $100,808,000 from [] FY 2017 …. The Budget eliminates the TPP program. The teenage pregnancy rate has declined significantly over recent years, but it does not appear this program has been a major driver in that reduction."

33.     On June 5, 2017, Valerie Huber was appointed chief of staff to the Assistant Secretary for Health, who oversees the OAH and, in turn, the TPPP. From 2007 until her appointment to HHS, Ms. Huber served as president and CEO for Ascend, formerly known as the National Abstinence Education Association. She previously served as abstinence education coordinator for the state of Ohio. In April 2017, Huber wrote an editorial arguing that the TPPP was a failure that wasted taxpayer money while promoting teenage sex. In May 2017, after the administration released its proposed budget, Ascend issued a press release calling TPPP "an approach that typically normalizes teen sex and which government research revealed was an abject failure," and quoted Ms. Huber as praising the President's request that Congress maintain funding for abstinence education while terminating the TPPP. In January 2018, Ms. Huber was appointed acting deputy assistant secretary for the HHS Office of Population Affairs, which does not oversee the TPPP program.

34.     In early July 2017, when the grantees received their notices of award for their third grant years, HHS informed them that their TPPP funding would terminate two years early, on June 30, 2018. The notices included only a single sentence informing them that their awards were being terminated: "This award also shortens the project period to end on June 30, 2018 at the end of this budget year."

35.     HHS did not give the grantees prior notice that the awards would be prematurely terminated.

36.     On July 17, 2017, a spokesperson for the Office of the Assistant Secretary for Health confirmed in an email to a reporter that the TPPP grants had been terminated based on President's fiscal year 2018 budget request to eliminate the program: "[T]he President's FY 2018 Budget eliminated funding for the Teen Pregnancy Prevention Program, so our grants office informed the grantees of their June 30, 2018 end date, to give them an opportunity to adjust their programs and plan for an orderly closeout." Megan Molteni, *Teen Pregnancy Researchers Regroup After Trump's HHS Pulls Funding*, Wired (July 19, 2017, 7:00 am), https://www.wired.com/story/teen-pregnancy-researchers-regroup-after-trumps-hhs-pulls-funding/.

37.     On August 17, 2017, HHS released a statement to CNN stating, "The poor evaluation results [from the first cohort of grants] were the reason that the Trump Administration, in its FY 2018 budget proposal, did not recommend continued funding for the TPP program and HHS hit the pause button on it." Jacqueline Howard, *Why the Trump Administration is Cutting Teen Pregnancy Prevention Funding*, CNN (Aug. 17, 2017 8:58 am), https://www.cnn.com/2017/08/17/health/teen-pregnancy-prevention-programs-funding/index.html.

38.     Congress expressly provided that the purpose of the TPPP is to replicate evidence-based programs and develop innovative approaches, conduct studies of those programs and approaches to determine which are effective, and then use the knowledge from those studies to inform current and future projects. Conf. Rep. No. 111-366, at 1042–43 (2009); H.R. Rep. No. 111-220, at 176 (2009); S. Rep. No. 111-66, at 160 (2009). In seeking to terminate the existing grants, HHS has thwarted Congress's objective of enabling HHS to learn from the results of the programs, both positive and negative.

39. Based on the first round of evaluation results, OAH encouraged grantees to shift to the more effective models. Thus, the models that current grantees are implementing are different and stronger than the mix of models used in the first cohort.

40. TPPP has been recognized by bipartisan experts as an outstanding example of how to build evidence and administer a high-quality evidence-based program.

41. In late July 2017, 148 members of the House and thirty-four Senators sent letters to then-Secretary Price inquiring into HHS's decision to shorten all of the TPPP grants despite ongoing congressional funding for the program. After HHS provided an incomplete response, in late November 2017, 27 Senators wrote again to Acting Secretary Hargan to express their concerns.

**Effect of Termination on Grantees' Programs**

42. In prior years, HHS has required TPPP grantees to submit their non-competing continuation applications for the next budget period in April. HHS must accept and process these materials for grantees to be eligible to receive funds for an upcoming budget year.

43. HHS is not accepting or processing continuation applications of TPPP grantees for the next budget year, which absent HHS's termination would begin on July 1, 2018.

## CLASS ACTION ALLEGATIONS

44. Named plaintiff HFTX brings this action on behalf of itself and all other similarly situated grantees, excluding the grantees named as plaintiffs in already pending actions brought to challenge HHS's termination of TPPP grants.

45. Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2), plaintiff seeks to represent the following class:

All entities awarded Teen Pregnancy Prevention Program grants by the Department of Health and Human Services (HHS) in 2015, with five-year project periods, whose grants HHS purported to terminate or "shorten," effective June 30, 2018.

46. Excluded from the class are the plaintiffs in the following pending actions: *Policy and Research, LLC, v. HHS*, No. 18-cv-346-KBJ (D.D.C.), *Planned Parenthood of Greater Washington and Northern Idaho v. HHS*, No. 2:18-cv-00055 (E.D. Wash.), *King County v. Azar*, No. 18-cv-00242 (W.D. Wash.), and *Healthy Teen Network v. Azar*, No. 18-cv-00468 (D. Md.).

47. The class satisfies the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2).

48. The class includes more than 60 members and is so numerous that joinder of all members is impracticable.

49. Questions of law and fact are common to the class, including, without limitation, whether HHS's shortening of the TPPP grant periods violated HHS regulations and the APA.

50. The claims of the named plaintiff are typical of the claims of the class because, among other things, all class members were comparably injured by defendants' unlawful termination of their grants, as described above.

51. The named plaintiff is an adequate representative of the class because its interests do not conflict with the interest of the class it seeks to represent; it has retained counsel who are competent and experienced in litigation; and because it intends to prosecute this action vigorously. Named plaintiff is represented by counsel who have knowledge and familiarity with the relevant law concerning the TPPP program, the APA, and class actions.

52. This case is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because defendants' termination of all the TPPP grants applies generally to the class, such

that final injunctive relief and corresponding declaratory relief finding the termination unlawful is appropriate with respect to the class as a whole.

## CAUSES OF ACTION
## ASSERTED INDIVIDUALLY AND ON BEHALF OF CLASS

### FIRST CAUSE OF ACTION
### (5 U.S.C. § 706(2)(A))

53. The APA authorizes this Court to hold unlawful and set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

54. Defendants' shortening of the TPPP grant periods constitutes final agency action under the APA.

55. HHS's regulations specify reasons why HHS may terminate an award prior to the end of the period for which a grant has been programmatically approved: (1) "if the non–Federal entity fails to comply with the terms and conditions of the award"; (2) "for cause"; or (3) "with the consent of the non–Federal entity." 45 C.F.R. § 75.372(a).

56. HHS terminated the TPPP grants without explanation and that termination was contrary to HHS regulations providing the reasons for termination.

57. Defendants' termination of the TPPP grants was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of itself and all others similarly situated, pray that this Court:

(A)  Certify a class as defined in paragraph 46 pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2);

(B) Declare that defendants' termination of the TPPP grants of all members of the class was unlawful;

(C) Enjoin defendants to reinstate the TPPP grants for the five-year project period for all members of the class and to continue to administer the grants to the same extent and in the same manner as prior to the unlawful termination, as provided in the notices of award and HHS regulations;

(D) Order defendants to notify all members of the class that the termination of the TPPP grants was unlawful and to provide instructions for submitting their non-competing continuation applications for the budget year beginning July 1, 2018;

(E) Order defendants to accept and process the non-competing continuation applications of all members of the class for the fourth budget period;

(F) Award plaintiff reasonable costs and reasonable attorney fees; and

(G) Grant such other relief as this Court may deem just and proper.

Dated: April 27, 2018                    Respectfully submitted,

/s/ Sean M. Sherman
Sean M. Sherman (D.C. Bar No. 1046357)
Allison M. Zieve (D.C. Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiff and Proposed Class*