# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEALTHY FUTURES OF TEXAS, individually and on behalf of all others similarly situated, ) ) ) ) ) | |
| Plaintiff, ) | Civil Action No. 18-CV-992 |
| v. ) ) | |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., ) ) ) | |
| Defendants. ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## ON THE INDIVDIUAL AND CLASS CLAIMS

Pursuant to Federal Rule of Civil Procedure 56, plaintiff hereby moves for summary judgment on its individual and class claims on the ground that there is no genuine issue of disputed material fact and that plaintiff and the members of the class are entitled to judgment as a matter of law. In support of this motion, plaintiff submits the accompanying (1) memorandum, (2) declarations of Dr. Janet Realini and Sean Sherman, and (3) proposed order.

Dated: April 27, 2018             Respectfully submitted,

/s/ Sean M. Sherman
Sean M. Sherman (D.C. Bar No. 1046357)
Allison M. Zieve (D.C. Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HEALTHY FUTURES OF TEXAS, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 18-CV-992 |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE INDIVIDUAL AND CLASS CLAIMS

Sean M. Sherman (D.C. Bar No. 1046357)
Allison M. Zieve (D.C. Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiff and Proposed Class*

April 27, 2018

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
INTRODUCTION ............................................................................................................................... 1
STATEMENT OF FACTS .................................................................................................................. 2
I.   Congress's creation and HHS's administration of the TPPP from 2010–2016 ................... 2
II.  HHS's decision to terminate the TPPP and all TPPP grants ............................................... 5
STANDARD OF REVIEW ................................................................................................................. 7
ARGUMENT ........................................................................................................................................ 8
     Defendants' termination of the TPPP grants was arbitrary, capricious,
     an abuse of discretion, and contrary to HHS regulations ..................................................... 8
CONCLUSION .................................................................................................................................. 11

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                                 **Page(s)**

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................7

*City of Kansas City v. HUD*,
  923 F.2d 188 (D.C. Cir. 1991) ................................................................................9

*Healthy Teen Network v. Azar*,
  No. 18-cv-468, 2018 WL 1942171 (D. Md. Apr. 25, 2018) ...............................8, 9, 10, 11

*James Madison Ltd. by Hecht v. Ludwig*,
  82 F.3d 1085 (D.C. Cir. 1996) ................................................................................2

*Motor Vehicle Manufacturers Association of U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*,
  463 U.S. 29 (1983) ..................................................................................................8

*National Environmental Development Association's Clean Air Project v. EPA*,
  752 F.3d 999 (D.C. Cir. 2014) ............................................................................8, 10

*Planned Parenthood of Greater Washington & North Idaho v. HHS*,
  No. 2:18-cv-00055, 2018 WL 1934070 (E.D. Wash. Apr. 24, 2018) ..............8, 9, 10, 11

*Policy and Research, LLC, v. HHS*,
  No. 18-cv-346-KBJ (D.D.C. Apr. 19, 2018) (Transcript of Oral Ruling) ............8, 9, 10

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947) ..............................................................................................10

**Statutes**

5 U.S.C. § 706(2)(A) ........................................................................................................8

Consolidated Appropriations Act, 2010, Pub. L. No. 111-117 (2009) ............................2

Consolidated Appropriations Act, 2017, Pub. L. No. 115-31 ........................................3

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141 ......................................3

**Rules and Regulations**

45 C.F.R. § 75.2 ................................................................................................................9

45 C.F.R. § 75.372(a) ....................................................................................................10

Fed. R. Civ. P. 56(a) ..................................................................................................................7

Fed. R. Civ. P. 56(c) ..................................................................................................................7

**Legislative Materials**

H.R. Rep. No. 111-220 (2009)...................................................................................................2

H.R. Rep. No. 111-366 (2009) (Conf. Rep.)..........................................................................2, 3

S. Rep. No. 111-66 (2009) ......................................................................................................2, 3

**Miscellaneous**

HHS Justification of Estimates for Appropriations Committee for FY 2018, *General Departmental Management* (May 2017), https://web.archive.org/web/20180202164531/https://www.hhs.gov/about/budget/index.html..................................5, 6

Jacqueline Howard, *Why the Trump Administration is Cutting Teen Pregnancy Prevention Funding*, CNN (Aug. 17, 2017 8:58 am), https://www.cnn.com/2017/08/17/health/teen-pregnancy-prevention-programs-funding/index.html..........................................................................................................6

Megan Molteni, *Teen Pregnancy Researchers Regroup After Trump's HHS Pulls Funding*, Wired (July 19, 2017 7:00 am), https://www.wired.com/story/teen-pregnancy-researchers-regroup-after-trumps-hhs-pulls-funding/........................................6

OAH, *Digital Town Hall on Preventing Teen Pregnancy* (May 11, 2016), https://www.hhs.gov/ash/oah/sites/default/files/digital-town-hall-webinar.PDF................5

OAH Press Release, *HHS Awards Teen Pregnancy Prevention Program Grants* (July 6, 2015) .....................................................................................................................5

Carmen Solomon-Fears, Cong. Research Serv., RS20301, *Teenage Pregnancy Prevention: Statistics & Programs* 23-24 (Jan. 15, 2016), https://fas.org/sgp/crs/misc/RS20301.pdf..........................................................................................................3

Transcript of Oral Argument, *Healthy Teen Network v. Azar*, No. 18-cv-468 (D. Md. argued Apr. 19, 2018) ......................................................................................6, 7

Transcript of Oral Argument, *Planned Parenthood of Greater Washington and Northern Idaho v. HHS*, No. 2:18-cv-00055 (E.D. Wash. argued Apr. 24, 2018) ............................7

Transcript of Oral Argument, *Policy & Research LLC v. HHS*, No. 18-cv-346 (D.D.C. argued Apr. 18, 2018) ..........................................................................................7

## INTRODUCTION

Named plaintiff Healthy Futures of Texas (HFTX) brought this action on behalf of itself and a proposed class of recipients of five-year Teen Pregnancy Prevention Program (TPPP) grants awarded by the Department of Health and Human Services (HHS) in 2015.[1] In July 2017, HHS informed all the grantees, without any explanation, that their grants would be terminated on June 30, 2018—two years ahead of the planned end of the project period. As three district courts have already concluded, HHS's termination of the grants violated HHS regulations, and constitutes final agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law under the Administrative Procedure Act (APA).

Plaintiff and the other TPPP grant recipients are carrying out evidence-based teen pregnancy prevention programs and are engaged in empirical research of new and innovative teen pregnancy prevention programs. Without judicial intervention, HHS will terminate the grants prematurely on June 30, 2018, causing substantial harm to the programs of plaintiff and the other grantees and to the communities they serve, and rendering their research incomplete and largely ineffectual. Further, the continuation of each grant is contingent on grantees' submission of non-competing continuation applications, which HHS has represented require sixty days to process. Because HHS has unlawfully terminated the TPPP grants, HHS is not currently accepting or processing those continuation applications.

---

[1] Plaintiff has concurrently filed a motion to certify a class under Federal Rule of Civil Procedure 23(b)(2) consisting of "[a]ll entities awarded Teen Pregnancy Prevention Program grants by the Department of Health and Human Services (HHS) in 2015, with five-year project periods, whose grants HHS purported to terminate or 'shorten,' effective June 30, 2018. The class excludes the plaintiffs in the following actions: *Policy and Research, LLC, v. HHS*, No. 18-cv-346-KBJ (D.D.C.), *Planned Parenthood of Greater Washington and Northern Idaho v. HHS*, No. 2:18-cv-00055 (E.D. Wash.), *King County v. Azar*, No. 18-cv-00242 (W.D. Wash.), and *Healthy Teen Network v. Azar*, No. 18-cv-00468 (D. Md.)."

Plaintiff has filed concurrently herewith a motion for class certification. After ruling on that motion, this Court should grant plaintiff's motion for summary judgment, set aside HHS's unlawful termination of the TPPP grants, and order HHS to accept and process the non-competing continuation applications to the same extent and in the same manner those applications were processed prior to the unlawful termination.

## STATEMENT OF FACTS[2]

### I.   Congress's creation and HHS's administration of the TPPP from 2010–2016

In 2009, Congress mandated the creation of the TPPP, an evidence-based initiative to reduce teen pregnancy. *See* H.R. Rep. No. 111-366, at 1042–43 (2009) (Conf. Rep.); H.R. Rep. No. 111-220, at 176 (2009); S. Rep. No. 111-66, at 160 (2009). Congress initiated the program through the Consolidated Appropriations Act, 2010, which appropriated $110 million to HHS for the TPPP for fiscal year 2010 and mandated that the funds "shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy and for the Federal costs associated with administering and evaluating such contracts and grants." Pub. L. No. 111-117, 123 Stat. 3034, 3253 (2009). Congress directed HHS to spend the appropriated funds across two "tiers" of grants:

- **Tier 1:** Congress mandated that "not less than $75,000,000 shall be for replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors." *Id.*

---

[2] Plaintiff alleges unlawful agency action in violation of the APA on behalf of itself and all others similarly situated. *See* Compl. p. 14. Pursuant to Local Rule 7(h)(2), plaintiff's memorandum in support of the motion for summary judgment includes this statement of facts with specific references to the administrative record—the information that was "before the agency at the time the decision was made," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (internal quotation marks and citation omitted)—as well as background information about the TPPP and the events surrounding the termination of the TPPP grants.

- **Tier 2:** Congress mandated that "not less than $25,000,000 shall be available for research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy." *Id.*

Congress further specified that "any remaining amounts shall be available for training and technical assistance, evaluation, outreach, and additional program support activities," and that "$4,455,000 shall be available to carry out evaluations (including longitudinal evaluations) of teenage pregnancy prevention approaches." *Id.* Congress specified that the TPPP would be administered within HHS's Office of the Assistant Secretary of Health by the then-newly funded Office of Adolescent Health (OAH). H.R. Rep. No. 111-366, at 1043 (2009) (Conf. Rep.) (adopting Senate position explained in S. Rep. No. 111-66, at 160 (2009)).

Each year since the program's inception, Congress has mandated the continuation of the TPPP and has appropriated funds to HHS to administer the program for each fiscal year using similar appropriations language. For fiscal years 2014–2018, Congress each year appropriated $101 million in grant funding and an additional $6.8 million to fund evaluations.[3] In 2018, as before, Congress directed the appropriated funds "shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy and for the Federal costs associated with administering and evaluating such contracts and grants." Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, H.R. 1625-386. Congress further directed that, of that amount, "not more than 10 percent of the available funds shall be for training and technical assistance, evaluation, outreach, and additional program

---

[3] *See* Carmen Solomon-Fears, Cong. Research Serv., RS20301, *Teenage Pregnancy Prevention: Statistics & Programs* 23-24 (Jan. 15, 2016), https://fas.org/sgp/crs/misc/RS20301.pdf (chart showing annual funding); *see also* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, H.R. 1625-386; Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, 131 Stat. 135, 536.

support activities, and of the remaining amount 75 percent shall be for replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors, and 25 percent shall be available for research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy." *Id.*

In 2010 and again in 2015, HHS awarded grants to Tier 1 and Tier 2 programs for five-year project periods. The project periods for the first cohort of grants was from 2010 to 2015. In early 2015, HHS, through OAH, issued funding opportunity announcements (FOAs) for a second cohort of five-year cooperative agreements, this time further specializing the FOAs within the two tiers.[4] As mandated by Congress, the Tier 1 FOAs sought applicants for grants to replicate evidence-based programs that HHS previously determined had been proven effective, and the Tier 2 FOAs sought applicants for grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy.

The FOAs provided that the five-year project periods for the grants would be funded in annual increments (budget periods), and that funding for all budget periods beyond the first year of the grant would be "contingent upon the availability of funds, satisfactory progress of the project, and adequate stewardship of Federal funds." *See, e.g.*, Sherman Decl., ECF No. 6-2, Ex. A (Tier 2B FOA at 34). The FOAs further provided that grantees would be required to submit non-competing applications in each year of the approved project period providing progress reports for

---

[4] As of April 27, 2018, the four 2015 FOAs were available on OAH's website. *See* https://www.hhs.gov/ash/oah/grant-programs/funding-opportunities/index.html. Relevant portions of one of these lengthy FOAs are attached as Exhibit A to the Declaration of Sean M. Sherman.

the current budget period, work plans, budgets, and budget justifications for the upcoming budget period. *See, e.g.*, *id.* (Tier 2B FOA at 85).

In July 2015, after receiving nearly 500 applications, HHS awarded 81 five-year grants to fund Tier 1 and Tier 2 projects. *See* Sherman Decl. Ex. B (OAH Press Release, *HHS Awards Teen Pregnancy Prevention Program Grants* (July 6, 2015)). Combined, the projects were designed to serve more than 1.2 million youth across 39 states over the five-year grant period. *See* OAH, *Digital Town Hall on Preventing Teen Pregnancy* (May 11, 2016), https://www.hhs.gov/ash/oah/sites/default/files/digital-town-hall-webinar.PDF. HHS programmatically approved each of the projects for a five-year project period.

The first notice of award to plaintiff and the members of the class stated that the "project period" would run from July 1, 2015, through June 30, 2020, and the notice provided the funding for the budget period from July 1, 2015, through June 30, 2016. *See, e.g.*, Realini Decl. ¶ 4, Ex. A. The second notice of award was for the budget period from July 1, 2016, through June 30, 2017. *See, e.g.*, *id.* ¶ 5, Ex. B. Like the 2015 notice, the 2016 notice of award stated that the project period was through June 30, 2020. *Id.*

## II. HHS's decision to terminate the TPPP and all TPPP grants

In May 2017, as part of the annual budgeting process, HHS submitted its budget request to Congress for fiscal year 2018. In that request, HHS stated that "[t]he FY 2018 President's Budget does not request funds for this [TPPP] program" and "HHS will not make amounts available for Teenage Pregnancy Prevention activities in FY 2018." Sherman Decl. Ex. J (HHS Justification of Estimates for Appropriations Committee for FY 2018, *General Departmental Management* (May 2017), at 15). The request summarized the decision as follows: "The FY 2018 President's Budget request is $0.00, a decrease of $100,808,000 from [] FY 2017 …. The Budget eliminates the TPP

5

program. The teenage pregnancy rate has declined significantly over recent years, but it does not appear this program has been a major driver in that reduction." *Id.* at 91.

In early July 2017, all of the Tier 1 and Tier 2 grantees, including named plaintiff HFTX, received their notices of award for their third budget periods. In a sentence, the notices informed the grantees that their TPPP project periods would terminate two years early, on June 30, 2018: "This award also shortens the project period to end on June 30, 2018 at the end of this budget year." Realini Decl. ¶ 8, Ex. C. The agency provided no further explanation for its decision. *Id.* ¶ 9.

Several reports indicate that the decision to terminate all TPPP grants was made by HHS leadership in the Office of the Assistant Secretary for Health on a program-wide basis. On July 17, 2017, a spokesperson for the Office of the Assistant Secretary for Health confirmed in an email to a reporter that HHS intended to terminate the TPPP as a whole: "[T]he President's FY 2018 Budget eliminated funding for the Teen Pregnancy Prevention Program, so our grants office informed the grantees of their June 30, 2018 end date, to give them an opportunity to adjust their programs and plan for an orderly closeout." Sherman Decl. Ex. C (Megan Molteni, *Teen Pregnancy Researchers Regroup After Trump's HHS Pulls Funding*, Wired (July 19, 2017 7:00 am)). On August 17, 2017, HHS released a statement to CNN stating, "The poor evaluation results [from the first cohort of grants] were the reason that the Trump Administration, in its FY 2018 budget proposal, did not recommend continued funding for the TPP program and HHS hit the pause button on it." Sherman Decl. Ex. D (Jacqueline Howard, *Why the Trump Administration is Cutting Teen Pregnancy Prevention Funding*, CNN (Aug. 17, 2017 8:58 am)). And in prior litigation brought by other grantees, HHS reiterated that the termination decision was made across the board for the TPPP as a program, not on a grant-by-grant basis. *See, e.g.*, Sherman Decl. Ex. E (Transcript of Oral

Argument at 36, *Healthy Teen Network v. Azar*, No. 18-cv-468 (D. Md. argued Apr. 19, 2018) ("Yes, there were 81 grants and this similar decision was made to not issue the continuation awards.")); *id.* at 39 ("[I]t was a programmatic decision to step back and reassess the future of the program on a program-wide basis. This was not targeting any individual grantee. … This was a programmatic decision across the board."); Sherman Decl. Ex. F (Transcript of Oral Argument at 73, *Policy & Research LLC v. HHS*, No. 18-cv-346 (D.D.C. argued Apr. 18, 2018) (counsel for HHS stating that the agency "decid[ed] as a programatic [sic] matter that it would not issue continuing awards")); Sherman Decl. Ex. G (Transcript of Oral Argument at 31, *Planned Parenthood of Greater Washington and Northern Idaho v. HHS*, No. 2:18-cv-00055 (E.D. Wash. argued Apr. 24, 2018) (arguing agency action was not an "individualized determination" but was "a broader programatic [sic] determination, a broader policy change, a policy shift")); *id.* at 32 ("a programatic [sic] shift isn't a termination").

## STANDARD OF REVIEW

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where the moving party "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries that initial burden, the burden then shifts to the nonmoving party to show that sufficient evidence exists for a reasonable jury to find in the nonmoving party's favor with respect to the "element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The nonmoving party's opposition must consist of competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

# ARGUMENT

## Defendants' termination of the TPPP grants was arbitrary, capricious, an abuse of discretion, and contrary to HHS regulations.

As three courts have concluded in the span of one week, HHS's termination of the TPPP grants was contrary to HHS regulations and to the APA's requirement of reasoned decisionmaking. *See Healthy Teen Network v. Azar*, No. 18-cv-00468, 2018 WL 1942171 (D. Md. Apr. 25, 2018); *Planned Parenthood of Greater Wash. & N. Idaho v. HHS*, No. 2:18-cv-00055, 2018 WL 1934070 (E.D. Wash. Apr. 24, 2018); Transcript of Oral Ruling, *Policy & Research LLC v. HHS*, No. 18-cv-346 (D.D.C. Apr. 19, 2018) (Sherman Decl. Ex. H). Again here, the Court should hold unlawful and set aside HHS's action as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

"It is axiomatic … that an agency is bound by its own regulations," and "an agency action may be set aside as arbitrary and capricious if the agency fails to 'comply with its own regulations.'" *Nat'l Envtl. Dev. Assocs. Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (internal quotation marks and citations omitted). Further, an agency must give reasons for its actions. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983) ("[A]n agency must cogently explain why it has exercised its discretion in a given manner"). The agency must provide a sufficient explanation for a court to be able to conclude that its action "was the product of reasoned decisionmaking." *Id.* at 51. A court will set aside final agency action where the explanation provided does not demonstrate that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43. Agency action is arbitrary and capricious if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered

8

an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* at 43. And when an agency provides no contemporaneous "reasoned explanation" for its decision to terminate a grant, the action is arbitrary and capricious. *See City of Kansas City v. HUD*, 923 F.2d 188, 189, 194 (D.C. Cir. 1991).

### A. HHS "terminated" the TPPP grants within the meaning of 45 C.F.R. § 75.2.

An HHS regulation defines "termination" as "the ending of a Federal award, in whole or in part at any time prior to the planned end of period of performance," and states that "period of performance" is synonymous with "project period." 45 C.F.R. § 75.2; *see Healthy Teen Network*, 2018 WL 1942171, at *5 ("[T]he regulations make clear that the 'period of performance' includes, at minimum, the 'project period.'"); *Planned Parenthood*, 2018 WL 1934070, at *7 ("[T]he Court determines that the definition found in 45 C.F.R. § 75.2 expressly clarifies that 'project period' and 'period of performance' are synonymous.").

"[I]t is clear beyond cavil that HHS ended plaintiffs' grant awards two years before the planned end of the project period, which is the same thing as saying the agency ended the grants two years before the planned end of the period of performance. And that is exactly what the regulations call a termination of plaintiffs' federal awards." Transcript of Oral Ruling at 15, *Policy & Research LLC* (Sherman Decl. Ex. H); *Planned Parenthood*, 2018 WL 1934070, at *7 ("The parties had a clear intent to create a five-year project and ending this understanding constitutes a termination."); *Healthy Teen Network*, 2018 WL 1942171, at *5 ("[T]he clear text of the regulations defines the challenged action as a termination.").

9

### B. HHS's termination of the TPPP grants should be set aside as arbitrary, capricious, and contrary to HHS regulations.

HHS regulations enumerate the grounds on which a grant "may be terminated in whole or in part": "(1) if the [grantee] fails to comply with the terms and conditions of the award;" "(2) for cause"; "(3) with the consent of the [grantee]"; or "(4) by the [grantee]." 45 C.F.R. § 75.372(a)(1)–(4). In terminating the grants prior to the planned end of the five-year project period, HHS did not invoke any of these grounds. *See Healthy Teen Network*, 2018 WL 1942171, at *5, *7 ("HHS concedes that it did not comply with the regulations governing 'termination' …. Because it is undisputed that none of these four conditions was met, HHS's action was unlawful"); Transcript of Oral Ruling at 21, *Policy & Research LLC* (Sherman Decl. Ex. H).

Because the propriety of its action must be judged on the grounds the agency invoked at the relevant time, and because HHS's decision was not based on a ground allowed under its own regulation, the termination was arbitrary, capricious, an abuse of discretion, and contrary to law. *See* Transcript of Oral Ruling at 21, *Policy & Research LLC* (Sherman Decl. Ex. H); *Healthy Teen Network*, 2018 WL 1942171, at *7–8; *Planned Parenthood*, 2018 WL 1934070, at *11; *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive."); *Nat'l Envtl. Dev. Assocs. Clean Air Project*, 752 F.3d at 1009–11.

Thus, "there can be no other conclusion but that HHS ended plaintiffs' federal award, in whole or in part, prior to the planned end of the period of performance thereby terminating plaintiffs' grant awards under the regulations and that it did so without explanation, much less a finding of any of the causes that the agency's own regulations prescribe. That is arbitrary and capricious action." Transcript of Oral Ruling at 21, *Policy & Research LLC* (Sherman Decl.

10

Ex. H); *accord Planned Parenthood*, 2018 WL 1934070, at *11 ("Defendants thus concede that their concerns with the TPP Program are based on 'policy concerns,' not the alleged ineffectiveness of the Program…. The Court determines that Defendants' reasoning, 'policy concerns' and 'whatever reason' are arbitrary and capricious justifications."); *Healthy Teen Network*, 2018 WL 1942171, at *9 ("The agency has not shown that it considered relevant congressional factors when making its decision to end the plaintiffs' project periods early, and *post hoc* rationalizations cannot rehabilitate a decision unreasoned at the time it was made.").

Importantly, the courts' holdings in the three decisions setting aside HHS's termination of the TPPP grants of the individual plaintiffs in those cases, like HHS's termination decision and its motion papers in the three cases, do not rely on any facts specific to the individual plaintiffs in those cases. The holdings are thus fully applicable to the class of recipients as a whole.

## CONCLUSION

This Court should grant the motion for summary judgment, declare that defendants' termination of the TPPP grants was unlawful, and order HHS to reinstate the grants for the awarded five-year project period, and accept and process the non-competing continuation applications of plaintiff and class members to the same extent and in the same manner as those grants were administered previously.

Dated: April 27, 2018                    Respectfully submitted,

/s/ Sean M. Sherman
Sean M. Sherman (D.C. Bar No. 1046357)
Allison M. Zieve (D.C. Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiff and Proposed Class*