# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| HEALTHY FUTURES OF TEXAS, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-CV-992 (KBJ) |
| v. | ) ) | |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Sean M. Sherman (D.C. Bar No. 1046357)
Allison M. Zieve (D.C. Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiff and Proposed Class*

May 23, 2018

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.     The equitable doctrine of laches does not bar this case. ....................................... 2

     A.     Plaintiff did not "inexcusably or unreasonably" delay filing this lawsuit. ............. 2

     B.     HHS is not prejudiced by the timing of this suit. ....................................... 4

II.     Defendants' termination of the TPPP grants was arbitrary, capricious, an abuse of discretion, and contrary to HHS regulations. ..................................................... 7

CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Birmingham Realty Co. v. General Services Administration*,
    497 F. Supp. 1377 (D. Ala. 1980) ....................................................................................5

*Cook County Legal Assistant Foundation, Inc. v. Pauken*,
    573 F. Supp. 231 (D.D.C. 1983) .......................................................................................3

*Gull Airborne Instruments, Inc. v. Weinberger*,
    694 F.2d 838 (D.C. Cir. 1982) ..................................................................................2, 3, 4

*\*Healthy Teen Network v. Azar*,
    No. 18-cv-468, 2018 WL 1942171 (D. Md. Apr. 25, 2018)..................................... passim

*Independent Bankers Association of America v. Heimann*,
    627 F.2d 486, 488 (D.C. Cir. 1980) .................................................................................3

*LTMC/Dragonfly, Inc. v. Metropolitan Washington Airports Authority*,
    699 F. Supp. 2d 281 (D.D.C. 2010) ..............................................................................3, 7

*Mahan v. Tash*,
    703 F. Supp. 130, 133 (D.D.C. 1989) ...............................................................................3

*Menominee Indian Tribe of Wisconsin v. United States*,
    614 F.3d 519 (D.C. Cir. 2010) ..................................................................................1, 2, 4

*NAACP v. NAACP Legal Defense & Education Fund, Inc.*,
    753 F.2d 131 (D.C. Cir. 1985) .........................................................................................3

*National Treasury Employees Union v. Whipple*,
    636 F. Supp. 2d 63 (D.D.C. 2009) ...................................................................................4

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S. Ct. 1962 (2014) .....................................................................................................7

*\*Planned Parenthood of Greater Washington & North Idaho v. HHS*,
    No. 18-cv-00055, 2018 WL 1934070 (E.D. Wash. Apr. 24, 2018) ......................7, 8, 9, 10

*\*Policy & Research LLC v. HHS*,
    No. 18-cv-346, 2018 WL 2184440 (D.D.C. May 11, 2018).................................... passim

*Pro–Football, Inc. v. Harjo*,
    415 F.3d 44 (D.C. Cir. 2005) ...........................................................................................2

**Statutes & Regulations**

45 C.F.R. § 75.2 ................................................................................................................7, 8

45 C.F.R. § 75.372(a)(1)-(4) ..................................................................................................9

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348 (2009) ..................5, 6

**Miscellaneous**

HHS, *Teen Pregnancy Prevention Evidence Review*,
    https://tppevidencereview.aspe.hhs.gov/ ............................................................................6

HHS, 2018 Tier 1 Funding Opportunity Announcement, *available at*
    https://www.grantsolutions.gov/gs/preaward/previewPublicAnnouncement.do?
    id=61741/ ...........................................................................................................................6

**INTRODUCTION**

Plaintiff Healthy Futures of Texas (HFTX) brought this action on behalf of itself and a proposed class of recipients of five-year Teen Pregnancy Prevention Program (TPPP) grants awarded by the Department of Health and Human Services (HHS) in 2015.[1] In July 2017, HHS, without explanation, informed all the grantees that their grants would be terminated two years early, on June 30, 2018. As this Court and two other district courts have held, HHS's termination of the grants violated HHS regulations and constitutes final agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law under the Administrative Procedure Act (APA).

In opposition to plaintiff's motion for summary judgment, HHS makes two arguments. First, HHS argues that the case should be barred under the equitable defense of laches. Second, HHS argues that its termination of the TPPP grants was not unlawful, and that all three recent decisions holding that the termination was unlawful are wrong. Neither of HHS's argument is meritorious. Accordingly, after ruling on plaintiff's motion for class certification, this Court should deny defendants' motion for summary judgment, grant plaintiff's motion for summary judgment, set aside HHS's unlawful termination of the TPPP grants, and order HHS to accept and expeditiously process the non-competing continuation applications to the same extent and in the same manner those applications were processed prior to the unlawful termination. The Court should also retain jurisdiction over this matter to monitor defendants' compliance with the Court's order.

---

[1] The motion for class certification was fully briefed on May 21, 2018.

1

**ARGUMENT**

**I.      The equitable doctrine of laches does not bar this case.**

"The equitable defense of laches 'is designed to promote diligence and prevent enforcement of stale claims' by those who have 'slumber[ed] on their rights.'" *Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 531 (D.C. Cir. 2010) (quoting *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 843 (D.C. Cir. 1982)). A claim may be barred by laches where two requirements are met: "(1) unreasonable delay in bringing the claim for relief and (2) prejudice caused by that delay." *Id.* To prevail on this defense, HHS must satisfy both prongs, but here it can satisfy neither. HHS did not claim that the lawsuits filed in mid-February were untimely, and cannot meet its burden of demonstrating that the ten weeks between the filing of those lawsuits and the filing of this one constitutes an inexcusable or unreasonable delay, or prejudiced HHS.

**A.  Plaintiff did not "inexcusably or unreasonably" delay filing this lawsuit.**

Laches "attaches only to parties who have unjustifiably delayed in bringing suit." *Menominee Indian Tribe*, 614 F.3d at 531 (quoting *Pro–Football, Inc. v. Harjo*, 415 F.3d 44, 49 (D.C. Cir. 2005)). Run-of-the-mill delay is not sufficient; the plaintiff must have delayed "inexcusably or unreasonably." *Id.* (internal quotation marks and citation omitted).

With respect to the TPPP, HHS's budget request for fiscal year 2018 proposed to eliminate the program in May 2017, and Congress did not pass a 2018 funding bill rejecting that proposal until March 23, 2018. As HHS agrees, Defs. Mem. 5–7, that Act resolved the uncertainty about whether the TPPP would have funding for the budget year beginning July 1, 2018. Notably, HHS itself flagged the relevance of the Consolidated Appropriations Act to a lawsuit, like this one, challenging termination of the 2015 grants: In *Policy & Research LLC v. HHS*, No. 18-cv-346

2

(D.D.C.), HHS, which did not suggest that the case was untimely, requested that its response to the plaintiffs' summary judgment briefing be extended to March 30, 2018, on the theory that the content of the appropriations act for fiscal year 2018—then anticipated to pass on March 23—was pertinent to the issues in the case. And in fact, had Congress agreed with HHS's request to cut TPPP funding, the lawfulness of HHS's decision to terminate would have been a moot point. In light of the timing of the Consolidated Appropriations Act, 2018, the filing of this lawsuit on April 27—only five weeks later—can hardly be deemed a delay, let alone an unreasonable one.

HHS also suggests that delay should be measured from the filing of the four prior lawsuits, on February 15. In fact, those suits demonstrate the timeliness of this action. HHS offers no support for the notion that a lawsuit becomes untimely, as an equitable matter, when it post-dates the filing of similar suits by two months and the decisions in those suits by a few days. If those cases were not barred by laches—and HHS never suggested to the contrary—this one likewise is not.

Unlike this case, every District of Columbia case on which HHS relies where laches barred a claim involved a considerable delay. *See Indep. Bankers Ass'n of Am. v. Heimann*, 627 F.2d 486, 488 (D.C. Cir. 1980) (twelve-year delay); *NAACP v. NAACP Legal Def. & Educ. Fund, Inc.*, 753 F.2d 131, 137 & n.69 (D.C. Cir. 1985) (same and collecting cases); *Mahan v. Tash*, 703 F. Supp. 130, 133 (D.D.C. 1989) (fifteen-year delay); *Cook County Legal Assistant Found., Inc. v. Pauken*, 573 F. Supp. 231, 233 (D.D.C. 1983) (more than two-year delay). And in *Gull Airborne*, 694 F.2d 838, cited by HHS (at 9), the court of appeals held that laches did *not* bar a case filed "only a few months after the GAO denied its last administrative protest" and three years after the claim first accrued. *Id.* at 845. In *LTMC/Dragonfly, Inc. v. Metropolitan Washington Airports Authority*, 699 F. Supp. 2d 281 (D.D.C. 2010), also cited by HHS, Defs. Mem. 9–10, the court denied the defendant's laches argument for lack of prejudice, despite a nineteen-month delay. *Id.* at 292–94.

3

*See also, e.g.*, *Menominee Indian Tribe*, 614 F.3d at 531–32 (vacating district court's laches dismissal involving nine-year delay); *Nat'l Treasury Employees Union v. Whipple*, 636 F. Supp. 2d 63, 76 (D.D.C. 2009) (holding that an APA case filed two years after issuance of the challenged rule was not barred by laches). None of these cases suggests that the filing of this suit can reasonably be characterized as "inexcusably or unreasonably" delayed.

### B.  HHS is not prejudiced by the timing of this suit.

"Two kinds of prejudice support a laches defense. Plaintiff's delay in filing suit may have resulted in a loss of evidence or witnesses supporting defendant's position, or the defendant may have changed its position in a manner that would not have occurred but for plaintiff's delay." *Gull Airborne*, 694 F.2d at 844. Neither even arguably applies here.

First, HHS does not claim that the delay "resulted in a loss of evidence or witnesses." *Id.* at 844–45. In an APA challenge based on the administrative record, such concerns rarely arise.

Second, HHS did not "change[] its position in a manner that would not have occurred but for plaintiff's delay." *Id.* at 844. HHS points to its work "analyzing the TPP Program and developing a new approach," Defs. Mem. 10–11, which culminated in the issuance of new Funding Opportunity Announcements (FOAs) on April 20, 2018, for new awards from the TPPP funds. HHS does not, however, claim that it relied on an assumption that HFTX or other existing grantees would not file suit, and that it would have acted differently had HFTX filed sooner.

Indeed, the chronology of events renders any such claim implausible because HHS's decision has been contested from the start. After HHS terminated the TPPP grants, it received letters from many grantees, including HFTX, attempting to appeal the decision, and letters from members of the House and Senate seeking information about the unlawful termination of the TPPP grants. *See* Link Decl. ¶¶ 3–4; Second Realini Decl. ¶ 4, Ex. A; Gerardi Decl. Exs. E & F.

4

On February 15, 2018, nine grantees filed lawsuits challenging the termination. On March 23, Congress fully funded the TPPP for fiscal year 2018, using the same language it had for the prior years. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348, 733. On April 19, this Court in *Policy & Research*, No. 18-cv-346, held that HHS's termination was unlawful, and another district court heard argument in a similar case. *See Healthy Teen Network v. Azar*, No. 18-cv-468, 2018 WL 1942171, at *4 (D. Md. Apr. 25, 2018). Nonetheless, on April 20, HHS issued the new FOAs. Thus, contrary to HHS's claim, at no point did HHS have reason to rely on "an impression of acquiescence" in its termination decision. Defs. Mem. 10. Rather, HHS developed the new FOAs in light of the possibility of challenges to the termination of the TPPP grants and issued them in the midst of such litigation.

Notwithstanding these facts, HHS contends that the absence of additional suits induced it "to make substantial financial commitments" that support a laches defense. Defs. Mem. 10. HHS, however, has yet to make new financial commitments for the TPPP appropriation: Applications for the new FOAs are not due until June 29, and HHS does not intend to award the money until September 1. *See* Gerardi Decl. Exs. J & K. Accordingly, unlike in *Birmingham Realty Co. v. General Services Administration*, 497 F. Supp. 1377 (D. Ala. 1980), *cited in* Defs. Mem. 9–10, where the plaintiff did not file its challenge until two months after the contract award, during which time the awardee had substantially performed, here the application deadline has not even passed, and HHS has awarded no grants under the FOAs.

HHS points to 150 hours (about one month's time of one staff person) and $8 million spent developing the new FOAs. *See* Kretschmaier Decl. ¶ 5. But the time and money that HHS spent on the terminated grants—more than $100 million per year for three years and substantially more time than 150 hours—easily dwarfs these small numbers, and much of it will have been wasted if

5

the funded programs are cut short. *See* Realini Decl. ¶¶ 12–13; *Policy & Research*, 2018 WL 2184440, at *4 (D.D.C. May 11, 2018) (noting that loss of TPPP funding will force the plaintiffs to cease ongoing studies and to terminate current programs). In any event, in arguing that the "requested relief interferes with the recompetition by reducing the funds available to the agency to award to new grantees," Defs. Mem. 11, HHS ignores that funds for recompetition are "available" only because of the unlawful termination. In these circumstances, the equitable defense of laches cannot apply.

     HHS's argument is further undercut by the fact that the new Tier 1 FOA appears to violate the terms of Congress's TPPP appropriation. Congress requires that Tier 1 TPPP funds "shall be for replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors." Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348, 733. Since 2009, HHS has sponsored the Teen Pregnancy Prevention Evidence Review (https://tppevidencereview.aspe.hhs.gov/), an independent systematic review of the teen pregnancy prevention literature to identify programs that meet the statutory standard for Tier 1. Whereas the Tier 1 FOAs for the 2010 and 2015 TPPP cohorts required applicants to replicate programs that the Evidence Review identified as "proven effective," the new FOA does not mention the Review or the approved programs. Rather, it requires applicants to "replicate a risk avoidance model or a risk reduction model that incorporates the common characteristics" outlined in two "tools," neither of which meet the Act's requirement that grants "be for replicating programs that have been proven effective through rigorous evaluation." *See* 2018 Tier 1 FOA, available at https://www.grantsolutions.gov/gs/preaward/previewPublicAnnouncement.do?id=61741.   The equitable doctrine of laches cannot properly be based on a claim that this lawsuit, if successful,

will impede HHS's ability to award funds under a FOA that is contrary to the statutory requirements of the TPPP.

Finally, HHS speculates about possible prejudice to third parties who may be preparing to apply for the new FOAs. Defs. Mem. 11. Putting aside the absence of evidence to support its claim, laches must be based on prejudice to the *defendant*. See *LTMC/Dragonfly*, 699 F. Supp. 2d at 294 ("[Defendant] also refers to the prejudice to the other … companies whose … contracts might be rescinded as a result of a reprocurement. However, they are not parties to this action.").

Laches applies only in "extraordinary circumstances." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 (2014). No such circumstances are presented here, and the Court should reject HHS's laches theory.

## II. Defendants' termination of the TPPP grants was arbitrary, capricious, an abuse of discretion, and contrary to HHS regulations.

This Court and two others have held that HHS's termination of the TPPP grants was contrary to HHS regulations and to the APA's requirement of reasoned decisionmaking. *See Policy & Research*, 2018 WL 2184449; *Healthy Teen Network*, 2018 WL 1942171; *Planned Parenthood of Greater Wash. & N. Idaho v. HHS*, No. 18-cv-00055, 2018 WL 1934070 (E.D. Wash. Apr. 24, 2018). Neither these three court decisions nor the agency in litigating those cases relied on any facts specific to the plaintiffs in the cases. Because, as HHS has conceded, the agency acted the same with respect to each TPPP grantee, the holdings in those cases apply fully here. The termination of all of the TPPP grants at issue should be set aside as unlawful.

**A.** "By definition, the agency's 'termination' of a grant award 'means the ending of a Federal award in whole or in part at any time prior to the planned end of [the] period of performance.'" *Policy & Research*, 2018 WL 2184449, at *8 (quoting 45 C.F.R. § 75.2). "When one also takes into account the fact that, per the regulations, a grant recipient's 'period of

performance' *is the same thing* as the 'project period,' there really is no question that HHS's announcement that it was 'shorten[ing Plaintiffs'] project period[s]' by two years, prematurely ended Plaintiffs' TPPP awards prior to the planned end of their period of performance within the plain meaning of the termination definition." *Id.* (quoting § 75.2 and Notice of Award 2017–2018); *see Healthy Teen Network*, 2018 WL 1942171, at *5; *Planned Parenthood*, 2018 WL 1934070, at *7. Thus, as three courts have now held, "[b]oth the plain language of the regulations and the agency's own characterization of its conduct with respect to Plaintiffs' projects … clearly establish that" the agency's decision to "shorten" the "project period" of the TPPP grants of plaintiff and the members of the proposed class was a termination. *Policy & Research*, 2018 WL 2184449, at *9; *see also Healthy Teen Network*, 2018 WL 1942171, at *5; *Planned Parenthood*, 2018 WL 1934070, at *7.

Notwithstanding the terms of its regulations and the grant documents, HHS claims that the annual "budget period," not the five-year "project period," must be the "period of performance," because a contrary interpretation would violate the Anti-Deficiency Act. Defs. Mem. 12–21. However, "nothing in HHS's regulations or in the relevant grant documents even hints at the conclusion that the 'period of performance' is synonymous with the 'budget period.'" *Policy & Research*, 2018 WL 2184449, at *10; *see Healthy Teen Network*, 2018 WL 1942171, at *6; *Planned Parenthood*, 2018 WL 1934070, at *7; *see also Policy & Research*, 2018 WL 2184449, at *10 ("Truth be told, it actually makes no sense to equate these two timeframes in the TPPP context.").

Moreover, because the continuation for each budget period within the five-year project period is contingent on both the availability of funds and the agency's acceptance and processing of grantees' continuation applications, the Anti-Deficiency Act "does not justify ignoring the plain

8

language of the agency's regulations and grant documents, or 'constru[ing]' its rules and policies 'in a way that negates [their] plain text.'" *Policy & Research*, 2018 WL 2184449, at *11; *see also Healthy Teen Network*, 2018 WL 1942171, at *6–7 & n.10 ("The Act only has relevance if the court's interpretation would require a federal officer or employee to authorize funding beyond an existing appropriation. There is no reason to think it would."); *Planned Parenthood*, 2018 WL 1934070, at *4–5. At bottom, "the agency's 'budget period' analysis is entirely unpersuasive." *Policy & Research*, 2018 WL 2184449, at *9 (capitalizations omitted).

The agency's reliance on its 2007 Grants Policy Statement, Defs. Mem 3–5, 21, is "woefully misplaced." *Policy & Research*, 2018 WL 2184449, at *12. That document "does not, and cannot, trump the agency's formal regulations." *Id.*; *see Healthy Teen Network*, 2018 WL 1942171, at *6; *Planned Parenthood*, 2018 WL 1934070, at *3. "Thus, any language in the Grants Policy Statement that suggests that HHS can stop providing grant funding 'for whatever reasons[,]' or, apparently, no reasons, has no force or effect, and HHS certainly cannot insist that this Court consider such a statement to be lawful authority for terminating Plaintiffs' grant awards under circumstances other than those the regulations prescribe." *Policy & Research*, 2018 WL 2184449, at *12.

**B.** HHS regulations enumerate the grounds on which a grant "may be terminated in whole or in part": "(1) if the [grantee] fails to comply with the terms and conditions of the award"; "(2) for cause"; "(3) with the consent of the [grantee]"; or "(4) by the [grantee]." 45 C.F.R. § 75.372(a)(1)–(4). In terminating the TPPP grants, HHS did not invoke any of these grounds. *See Healthy Teen Network*, 2018 WL 1942171, at *5, *7. Rather, "HHS *provided no explanation whatsoever* for its decision." *Policy & Research*, 2018 WL 2184449, at *13.

HHS has previously conceded that if the decision to "shorten" the grants was a "termination" under the agency's regulation, its action violated the APA. *See Policy & Research*, 2018 WL 2184449, at *13; *accord Planned Parenthood*, 2018 WL 1934070, at *11; *Healthy Teen Network*, 2018 WL 1942171, at *9. Because the agency made the identical decision for each TPPP grant in the proposed class, the law demands the same conclusion here.

## CONCLUSION

This Court should grant plaintiff's motion for summary judgment, deny defendants' cross-motion, declare that defendants' termination of the TPPP grants was unlawful, order HHS to reinstate the grants for the awarded five-year period, and order HHS to accept and expeditiously process the non-competing continuation applications of plaintiff and the class members by June 30 to the same extent and in the same manner as those grants were administered previously. The Court should also retain jurisdiction over this matter to monitor defendants' compliance with the Court's order.

Dated: May 23, 2018

Respectfully submitted,

/s/ Sean M. Sherman
Sean M. Sherman (D.C. Bar No. 1046357)
Allison M. Zieve (D.C. Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiff and Proposed Class*