```
 1                 UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
 2
       CHOCTAW NATION OF         )
 3     OKLAHOMA,                 )
                                 )
 4          Plaintiff,           )   Civil Action 18-971
                                 )
 5       v.                      )
                                 )   Washington, D.C.
 6     ALEX M. AZAR, II,         )   Monday, May 21, 2018
                                 )
 7          Defendant.           )
       ------------------------  )
 8     HEALTHY FUTURES OF        )   Civil Action 18-922
       TEXAS,                    )
 9                               )
            Plaintiff,           )
10                               )
         v.                      )
11                               )
       DEPARTMENT OF HEALTH AND  )
12     HUMAN SERVICES, et al.,   )
                                 )
13          Defendants.          )
       ------------------------  )
14     CHILD & FAMILY            )   Civil Action 18-1042
       RESOURCES, INC.,          )
15                               )
            Plaintiff,           )
16                               )
         v.                      )
17                               )
       DEPARTMENT OF HEALTH AND  )
18     HUMAN SERVICES, et al.,   )
                                 )
19          Defendants.          )
       ------------------------  )
20     HENNEPIN COUNTY,          )   Civil Action 18-1053
                                 )
21          Plaintiff,           )
                                 )
22       v.                      )
                                 )
23     DEPARTMENT OF HEALTH AND  )
       HUMAN SERVICES, et al.,   )
24          Defendants.          )
25
```

```
 1              TRANSCRIPT OF STATUS HEARING
          BEFORE THE HONORABLE KETANJI B. JACKSON
 2              UNITED STATES DISTRICT JUDGE

 3                 APPEARANCES:

 4    For the Plaintiff        Steven D. Gordon, Esq.
      in Civil 18-971:         Philip Baker-Shenk, Esq.
 5                             HOLLAND & KNIGHT LLP
                               800 17th Street, NW
 6                             Suite 1100
                               Washington, DC 20006
 7
      For the Plaintiff        Daniel Rogan, Esq.
 8    in Civil 18-1053:        Ginger Anders, Esq.
                               Rebecca Holschuh, Esq.
 9                             Office of the Hennepin County
                                  Attorney
10                             C-2000 Government Center
                               300 South Sixth Street
11                             Minneapolis, Minnesota  55487

12    For the Plaintiff        Sean M. Sherman, Esq.
      in Civil 18-922:         Allison Marcy Zieve, Esq.
13                             PUBLIC CITIZEN LITIGATION GROUP
                               1600 20th Street, NW
14                             Washington, DC 20009

15    For the Plaintiff        April N. Ross, Esq.
      in Civil 18-1042:        Marie Dennis, Esq.
16                             CROWELL & MORING LLP
                               1001 Pennsylvania Avenue, NW
17                             Washington, DC 20004

18    For the Defendants:      Joel McElvain, Esq.
                               Michael Joseph Gerardi, Esq.
19                             U.S. DEPARTMENT OF JUSTICE
                               Civil Division
20                             Federal Programs Branch
                               20 Massachusetts Avenue, NW
21                             Washington, DC 20530

22
      Court Reporter:     PATRICIA A. KANESHIRO-MILLER, RMR, CRR
23                        U.S. Courthouse, Room 4700A
                          333 Constitution Avenue, NW
24                        Washington, DC 20001
                          (202) 354-3243
25    Proceedings reported by stenotype shorthand.
      Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S

 2                       (3:04 p.m.)

 3            THE DEPUTY CLERK:  Your Honor, this is Civil Action

 4      18-971, Choctaw Nation of Oklahoma versus Alex M. Azar; Civil

 5      Action 18-992, Healthy Futures of Texas versus Department of

 6      Health and Human Services, et al; 18-1042, Child & Family

 7      Resources, Inc. versus Department of Health and Human

 8      Services; and 18-1053, Hennepin County versus Department of

 9      Health and Human Services.

10            I'm going to ask counsel to please approach the

11      podium, state your appearance for the record, and also state

12      who you represent.

13            MR. GORDON:  Good afternoon, Your Honor.  Steven

14      Gordon on behalf of Plaintiff Choctaw Nation.  With me is my

15      partner Philip Baker-Shenk.

16            THE COURT:  Good afternoon.

17            MR. ROGAN:  Good afternoon, Your Honor, Dan Rogan

18      from Hennepin County Attorney's office.  And with me is

19      Ginger Anders and Rebecca Holschuh.

20            THE COURT:  Thank you all.

21            MR. SHERMAN:  Good afternoon, Your Honor.  Sean

22      Sherman from Public Citizen Litigation Group for Healthy

23      Futures of Texas, and with me is Allison Zieve.

24            THE COURT:  Good afternoon.

25            MS. ROSS:  Good afternoon.  April Ross on behalf of
```

1        Child & Family Resources, Inc.  With me is my colleague Marie

2        Dennis.

3                THE COURT:  Good afternoon to you, as well.

4                MR. McELVAIN:  Good afternoon, Your Honor.  I'm Joel

5        McElvain from the Department of Justice on behalf of the

6        defendants in all four actions.  Also with me is Michael

7        Gerardi from the Department of Justice.

8                THE COURT:  Good afternoon to you, as well.

9                This is a status conference that I have called in

10       hopes that we can discuss what we need to do in order to

11       resolve these four cases.  From the Court's perspective, they

12       deal more or less with the same legal disputes that were at

13       issue in the *Policy and Research* case, and so I'm trying to

14       figure out whether there are any distinctions and, if so,

15       deal with them so we can wrap this all up.

16               Mr. McElvain, will you be speaking on behalf of the

17       defendant?

18               MR. McELVAIN:  Yes, Your Honor.

19               THE COURT:  Maybe you can approach.

20               Let me start by getting the government's view as to

21       whether or not these four cases involve any different

22       analysis from *Policy and Research*.

23               I will start by laying out my understanding based on

24       the briefs that have been filed so far.  I realize all of the

25       briefing hasn't been done.

1              In the Choctaw Nation case, the government has

2     asserted a defense of laches, but other than that, are the

3     arguments that it raises identical to *Policy and Research?*

4              MR. McELVAIN:  Essentially so, Your Honor.  Our

5     understanding of the plaintiff's briefing in Choctaw was they

6     didn't choose to present new arguments of their own.  They

7     simply chose to refer the Court back to its reasoning in a

8     prior case.

9              THE COURT:  What about Healthy Futures?  Again, we

10    have laches and, obviously, the opposition to the preliminary

11    class certification.  But on the merits, do we have anything

12    different?

13             MR. McELVAIN:  I think with all four cases, the

14    merits arguments are going to be very similar.  We reserve

15    the right to respond in case plaintiffs come up with

16    something new or some variation in their replies.

17             THE COURT:  Sure.

18             MR. McELVAIN:  The ultimate bottom line is that the

19    laches arguments will be the same.  There are slight

20    variations.  Some plaintiffs did nothing between July 2017

21    and filing their lawsuits this month.  Some plaintiffs did go

22    so far as to submit a letter to HHS after learning of the

23    July 2017 team notice not to issue the continuation award.

24    Those plaintiffs didn't do anything further beyond that

25    letter.  Our basic bottom line is the same, each of the

1     plaintiffs was on notice since July 2017.  They did nothing

2     until now after learning of this Court's reasoning in the

3     prior case.

4           THE COURT:  All right.  That's helpful because I'm

5     trying to figure out what my issue points are in terms of

6     resolving this.

7           I know I didn't notice it as a hearing, but I wonder

8     if the government is prepared to talk about their laches

9     argument.

10          MR. McELVAIN:  I can give an overview, to be sure.

11    We certainly didn't prepare for a hearing, but I can do that.

12         THE COURT:  Yes.

13         MR. McELVAIN:  I think the point is there is

14    unreasonable delay and there is prejudice to the government.

15    The unreasonable delay derives from the points that I just

16    mentioned, that they have been on notice since July 2017, for

17    10 months now, that they would not receive continuation of

18    award.  They didn't do anything.  They didn't bring suit.

19    They waited until now to bring suit after learning there was

20    a favorable ruling in *Policy and Research*.

21         The second element is the prejudice to the

22    government.  The government is currently in the process of

23    processing the recount petition for the funds that are

24    available to comply with this Court's order and the orders in

25    the other two cases.

 1              If they were to proceed now with their

 2     claims -- firstly, they claim that they need relief by

 3     June 30th.  That simply can't happen.  If you recall what

 4     happened in setting proceedings for the *Policy and Research*

 5     case, we worked out an agreement with the plaintiffs in that

 6     first case to submit their continuation of awards by a date,

 7     certain -- which I don't recall right now -- so that the

 8     processing could take place so that there could be a decision

 9     by June 30th because it is not an instantaneous process for

10     HHS.

11              THE COURT:  I see how their delay prejudices them.

12     What I'm confused about is why the government contends that

13     it prejudices the government, which is the element for

14     laches.

15              MR. McELVAIN:  Correct.  It is proceeding under

16     uncertainty and continuing with plans for recompetition --

17              THE COURT:  That is on the government.  That is your

18     choice.  If you choose to recompete funds that are being

19     challenged or to which plaintiffs have claims, some of which

20     have been successfully made in court, then that's a risk that

21     you bear, not something that I think could be the basis for

22     contending that no future claims should be brought.  Right?

23              MR. McELVAIN:  I would view the matter differently,

24     Your Honor, and the approach I would take is to disaggregate

25     this from the merits a bit.  I know it is difficult because I

 1   know the Court has already ruled on the merits and I hope to

 2   persuade you to reconsider that view.  I know you have

 3   expressed your views on that.

 4        Even separating apart the merits, the agency has made

 5   a policy choice to engage in a recompetition.  It believes

 6   that it has lawfully done so.  I recognize it is at issue.

 7   To proceed with its plans for its policy choice, it is

 8   proceeding with its plans for a recompetition.  But if they

 9   were to receive relief now or to prepare for the possibility

10   that these plaintiffs would receive relief now, it would

11   simultaneously have to both hold the recompetition and

12   process --

13        THE COURT:  Only insofar as the agency has made the

14   policy choice.  I understand you want to separate them out.

15   But policy choices aren't made in a vacuum.  And I have to

16   say one of the things that has been so interesting to me and

17   confusing to me, frankly, when I think about how the

18   government has reacted to this is the fact that, in my

19   experience, when the government has received unfavorable

20   rulings in APA cases, what they typically do is suspend the

21   particular policy or practice or thing that has been

22   challenged, not apply it to other people, and then appeal,

23   perhaps even with an expedited request for appeal.  But they

24   ordinarily, in my experience, don't continue to apply that

25   challenged practice.  And if you do -- that is, if you

 1    continue recompeting the funds as though my opinion didn't

 2    come down, as though there is no other challenge -- then I

 3    suppose you have the right to do that.  I hear you saying

 4    we've made the decision to continue to recompete funds that

 5    have been challenged in court, but it doesn't seem to me that

 6    you can then complain that no future challenges can arise

 7    because of the policy choice you have made.  You can't have

 8    it both ways.  Either you're going to say, we understand that

 9    this funding is being challenged and that all of the

10    plaintiffs who are similarly situated at least have plausible

11    claims because one federal court -- now, I guess it is

12    three -- have found that these challenges exist, and so in

13    light of that, we're not going to do anything further with

14    the money because it is in dispute, right?  Or you say, we

15    don't care about the fact that there is a challenge, the

16    money is in dispute, but we are going to recompete it anyway,

17    and if you're going to do that, then let the litigation

18    proceed.

19         I don't understand how you can say to stop the

20    litigation because we've chosen to recompete --

21         MR. McELVAIN:  It is not a question of stopping the

22    litigation --

23         THE COURT:  You're asking to dismiss these claims on

24    laches --

25         MR. McELVAIN:  Fair point.

1            But if there had been litigation brought earlier,

2     there would be a different story --

3            THE COURT:  How so?  You decided to recompete the

4     funds after my ruling.  So you knew that the funds --

5            MR. McELVAIN:  Um --

6            THE COURT:  Yes, a day after.  I ruled on April 19th.

7     On April 20th out goes the funding announcement.  So the

8     government knew at the time it put its funding announcement

9     out that there could very well be challenges to the remaining

10    other plaintiffs, to the remaining grants and yet you chose

11    to proceed.

12           MR. McELVAIN:  To be sure, and a few points in

13    response to that.  First, as to the question of an appeal,

14    the only thing I can report at this point is that

15    consideration of whether to appeal is still before the

16    Department of Justice.  I can't make any representations

17    beyond that point other than that is a matter --

18           THE COURT:  That's fine.  The time has not elapsed.

19    You certainly have the opportunity and ability to appeal.

20    The question is, what do you do in the meantime.  To the

21    extent that there is still ongoing litigation, I don't know

22    that the government can continue as though there has been no

23    challenge and claim that the new lawsuits should be

24    dismissed.

25           MR. McELVAIN:  The initial litigation did not proceed

1    as a class action.  We now have a motion for class

2    certification in the cases that are pending.  So the judgment

3    that this Court entered ran in favor of the plaintiffs.  We

4    are complying with that judgment.  I want to be absolutely

5    clear on the record.  We are complying with that judgment.

6         THE COURT:  Understood.

7         MR. McELVAIN:  But apart from the notion of setting

8    aside funds for the plaintiffs who got that order entered in

9    their favor, the government otherwise has the right under

10   cases like *Mendoza.*  The principle there is non-mutual

11   offensive collateral estoppel against the federal government

12   to continue with a policy choice that it has made so long as

13   it is not conflicting with the order this Court has entered.

14   Now, it may be that there is an appeal taken and we'll get a

15   definitive answer from the circuit or other circuits sometime

16   in the future.  Obviously, that hasn't happened yet.  But in

17   the interim, it is our understanding it is still within our

18   policy discretion to proceed with our legal options available

19   to us.

20        THE COURT:  I don't know.  I haven't looked at that

21   particular question, whether the government can continue and

22   recompete the funds in this circumstance.

23        What I'm interested in is, having made the decision

24   to do so, does the government have a legal basis for blocking

25   the future lawsuits or blocking these lawsuits?  Can you say,

1    you know, we have decided to exercise this policy choice that

2    we believe we have a right to do -- that is, recompete the

3    funds -- and on that basis we're going to be prejudiced if

4    you allow these lawsuits to continue?  I'm not sure that is a

5    thing.  And if it is, it seems like a self-inflicted wound

6    because you don't have to recompete the money, and if you

7    didn't recompete the money, then you wouldn't be harmed.  It

8    is the choice that you have made.

9             MR. McELVAIN:  There is ample law, which I can't cite

10   to the Court right now, but it is my understanding there is

11   ample law that says an agency is allowed to make the lawful

12   policy choices available to it, and if it is constrained from

13   doing so, that can be injury to the government, and that can

14   weigh in the equitable analysis for things like the PI

15   factors or for laches, any sort of equitable balancing

16   analysis.

17            The one additional point I would make is --

18            THE COURT:  Yes.

19            MR. McELVAIN:  -- I would like the opportunity to

20   brief this in some of the cases coming up.  This is a

21   separate concern that you are raising from anything --

22            THE COURT:  I don't think so.  I think this is a

23   response to the prejudice point that the government has put

24   on the table by asserting the defense of laches.  I don't

25   think this comes in any other way, at least as far as my

1    analysis is concerned.  In other words, we're not talking

2    about a situation in which the plaintiffs have run in and

3    said, Judge, you have issued your ruling, stop the government

4    from recompeting the funds.  Nobody is saying that, right?

5          The government is recompeting the funds.  The

6    question is whether the government can simultaneously claim

7    laches because they say they're prejudiced.  It is really not

8    new or different.  You said prejudice is one of the laches

9    elements, and I'm questioning that under these circumstances.

10          MR. McELVAIN:  Sure.  And there is no

11   question -- perhaps I can try to put the point this way:

12   There is no question there would be prejudice to the

13   government from being required to devote resources to

14   processing the continuing applications and potentially

15   awarding funds to the new plaintiffs in addition to their

16   policy claims, to its announced policy preference to proceed

17   with the recompetition.

18          So I think the only way the plaintiffs get out of the

19   laches point is to say that's not a legitimate point of

20   prejudice for the government because the government is

21   legally obligated to do so anyway.

22          THE COURT:  I disagree.  The government makes a

23   choice.  You keep disaggregating from the merits.  You keep

24   talking about doing this without regard to the challenge that

25   preexisted your policy choice to recompete the funds.  Before

1    you decided to recompete the funds, you had a federal court

2    order indicating arbitrary and capricious with respect to

3    your decision to terminate, says the Court, the grants that

4    previously existed.

5         So this is game on, right?  This pot of money, the

6    grants, are in dispute.

7         What I don't understand is how the government says

8    they're prejudiced in any way if the government chooses to

9    promise those funds to somebody else while this litigation is

10   ongoing.

11        MR. McELVAIN:  I think the implication, if that were

12   the rule, would be that the government could not proceed at

13   all with the recompetition even for the funds that were not

14   the subject of this Court's prior order.

15        THE COURT:  No, you can proceed; you just bear the

16   risk that if you lose you have to get the funds back from the

17   people you gave it to.  No one is saying you can't promise

18   the funds.  You can recompete all you want, but understand,

19   there is litigation going on, and if you lose -- let's say

20   you decide to appeal -- then the fact that you have given the

21   money elsewhere can't be any sort of defense to reinstituting

22   these people's grants and redoing the process.  So you can

23   proceed, absolutely, but you bear the risk of having to undue

24   the new processes that you have created.  So the government

25   ordinarily doesn't want to take that risk.  They ordinarily

1    choose not to recompete the funds when the money is being

2    challenged.  They wait, and they run to the Court of Appeals

3    really fast because they say we got to get this nailed down.

4    And I understand you're still deciding, you haven't done

5    that.  But I don't know what you want me to do with respect

6    to the people who are claiming that they're entitled to the

7    funds.  That's no basis, the fact that you have chosen to go

8    in this direction is no basis for stopping them from

9    proceeding with the litigation.

10          MR. McELVAIN:  I think the first step would be to ask

11   the plaintiffs why they waited until May to bring the suit.

12   As you recall --

13          THE COURT:  I will ask them.  That's the first part.

14          MR. McELVAIN:  I think you will recall from *Policy*

15   *and Research* very clear statements from the plaintiff in that

16   action that they need to bring suit at that moment and they

17   needed emergency relief because the time they could gain

18   effective relief was expiring.  It is just as true for these

19   plaintiffs here.  They all face the same June 30th cutoff.

20   There is the same practical concern, that it takes time for

21   HHS to process a continuation award.  So if, in fact, the

22   agency is being jammed right now, I think this may be the

23   fundamental dispute that we have between the way we are both

24   seeing the matter.  And again, I would like the opportunity

25   to present briefing on this.  But ultimately I think the onus

1    for that pressure on the agency's resources falls on the

2    plaintiffs' decision to delay.

3        THE COURT:  Can I ask you about class action?  That

4    is another piece of this.  Are you the class action person,

5    or Mr. Gerardi.

6        MR. McELVAIN:  I'm happy to speak to that.

7        THE COURT:  I would think you would want to get

8    everybody together and go to the Court of Appeals and get it

9    all finished.  It's as though you want to litigate each one

10   of these separately, and I don't know why that is.

11       MR. McELVAIN:  I think it is a fair statement to say

12   that we take no pleasure in litigating each of these

13   separately.

14       THE COURT:  Agree to consolidation --

15       MR. McELVAIN:  I think we can agree it seems like an

16   accommodation to the plaintiffs.  If there's a way to combine

17   these four actions into one matter, that would be music to my

18   ears, to be sure.

19       The class action issue I think is a technical one,

20   but it is an important one to the government, not just in

21   this case but in other cases.  Under *Dukes*, a (b)(2) action

22   has to provide relief for the whole class.  You can't have an

23   opt-out.  And as we understand what *Dukes* held, an attempt to

24   carve out particular plans is the same thing as an opt-out --

25       THE COURT:  Why do you say this is a carve-out in a

1    de facto opt-out?  The people who previously brought actions

2    could not possibly have opted out because the class did not

3    exist.  So I don't understand how you could even conceive an

4    opt-out to pertain to people who brought actions prior to the

5    existence of the class.

6          MR. McELVAIN:  Because the class motion that is being

7    brought now has a class action that defines some of the

8    people who are subject to the agency decision but not all of

9    them.

10         THE COURT:  No, but it's not.  They define their

11   class to exclude people who have already brought claims.

12   Even if they didn't put that in there, I would say that those

13   people can't be a part of the class.  Right?  Even if they're

14   not written in, any plaintiff who has already received relief

15   and who otherwise would have been a putative plaintiff in the

16   class is necessarily not in the class.  Right?

17         MR. McELVAIN:  That's the horns of the dilemma that

18   the plaintiffs are in.  This goes back to the laches

19   discussion.  It is a dilemma that is created by their coming

20   in after the fact as opposed to bringing class action up

21   front in the first instance.

22         THE COURT:  Your position is that unless the very

23   first plaintiff among potential class action plaintiffs

24   brings their claim as a class action under (b)(2), everybody

25   else, you can't have a class action?

1          MR. McELVAIN:  It follows from *Dukes*.  *Dukes* held

2     that you cannot have an opt-out from a class action because

3     the relief has to apply to the entire class.

4          THE COURT:  Yes.  And that just begs the question

5     what does it mean to have an opt-out from the class action.

6     And I'm suggesting that carving out or referring to or

7     excluding people who have already received relief is not an

8     opt-out from the class action.

9          MR. McELVAIN:  Right.  And in our view that carve-out

10    is functionally the same thing as the opt-out that was spoken

11    of in *Dukes* because it's an attempt to pick and choose which

12    of the various plaintiffs who are subject to the agency

13    policy they're challenging --

14         THE COURT:  Were there any plaintiffs in *Dukes* that

15    had previously brought their complaints before the class

16    action arose?

17         MR. McELVAIN:  I don't know the answer to that.  I

18    will assume no.

19         THE COURT:  I will look for that.  I think those

20    people stand in a different position than any other potential

21    class action members.  Maybe *Dukes* did say you can't carve

22    people out in this way, but those people were really never a

23    part of the class because they already got relief, or they

24    are in the process of getting relief, so they can't opt out

25    of an action that didn't exist at the time they brought their

1     own action one would say.  Maybe that was *Dukes*.  I don't

2     know.  Maybe I have to go look at it.  But I'm interested in

3     the government's view.

4               Let me talk to plaintiffs' counsel.

5               Thank you.

6               MR. McELVAIN:  Certainly.  Thank you, Your Honor.

7               THE COURT:  All right.  There are many of you.  Last

8     time there was only one, so it was easy.  Let me have --

9               Mr. Gordon, yes, sir.

10              MR. GORDON:  Thank you, Your Honor.

11              What would Your Honor like me to address first?

12              THE COURT:  Why don't you start with the laches

13    discussion.  The government makes a good point insofar as

14    they say laches requires two things:  unreasonable delay and

15    prejudice to the defendant.  And they suggest that your

16    client has unreasonably delayed the bringing of this action

17    by waiting 10 months from the time in which the basis for the

18    action arose.  And then, even a month after -- maybe it was a

19    month -- I don't remember -- at least a while --

20              MR. GORDON:  A month.

21              THE COURT:  Was it a month after this Court --

22              MR. GORDON:  No, I'm sorry, Your Honor.  It was a

23    month after --

24              THE COURT:  After Congress reappropriated the money.

25              MR. GORDON:  Congress finally funded it.

1          THE COURT:  How long after my opinion?

2          MR. GORDON:  We filed on the 25th, so it was six days

3     after your oral ruling --

4          THE COURT:  Okay.

5          MR. GORDON:  -- and the day before that ruling became

6     final.

7          THE COURT:  All right.  Do you get to wait?  Like,

8     why are you sitting around?  Didn't you know back in

9     July 2017?

10          MR. GORDON:  In July of 2017, the situation was that

11     the government advised us and the other grantees that the

12     funding was going to end as of mid-June of 2018.  At the same

13     time, the administration had asked Congress to zero out this

14     program.  Now, if Congress proceeded to zero out the program,

15     since all of the grants are dependent on funding, there would

16     have been no cause of action.  So whether there is a cause of

17     action is dependent in the first instance on whether Congress

18     provides the requisite funding.

19          THE COURT:  I understand, but at least one plaintiff

20     decided to move forward.  Right?  *Policy and Research* --

21          MR. GORDON:  Four plaintiffs.

22          THE COURT:  Four plaintiffs.

23          MR. GORDON:  Simultaneously, on February 15th,

24     decided that they would, if you will, bet on the calm, that

25     the funding would be there, and they filed suit.  I applaud

1    them for doing so.  I applaud them for the quality of their

2    advocacy.  There is no question that we are here standing on

3    their shoulders.  But it still was not clear that the funding

4    was going to come through.  The funding came through on, I

5    believe, March 23rd.  And we filed suit just over a month

6    later.

7              THE COURT:  So you don't think that that is a basis

8    for contending that there's been an unreasonable delay in

9    this case?

10             MR. GORDON:  No, Your Honor, I don't.

11             THE COURT:  Does it matter at all that the government

12   in the meantime has apparently moved on, thinking that

13   perhaps you aren't going to challenge, so they have

14   recompeted the funds?

15             MR. GORDON:  Well, so there is an interesting

16   situation here.  Let me put this out fairly to the government

17   as well as the grantees.

18             Once Congress appropriates the funds, they have to be

19   obligated in general before the end of the fiscal year, and

20   we are already partway through the fiscal year before

21   Congress acts here.  At the point that Congress acts, there

22   are the four pending lawsuits, including the one before this

23   Court.  It's not clear to the government how those suits are

24   going to turn out.  It now has this pot of money that it must

25   obligate by year-end.  The government decides, as they put

1    it, they make a policy choice that we're going to take this

2    money, and rather than turn around and give it to the

3    existing grantees, you know, back off of what we said last

4    year, we're going to do a new program with different limits,

5    with different limitations, and we're going to get this all

6    competed and obligated before the end of this fiscal year.

7    That's what they proceeded to do.

8         Now, as long as there were the four suits, they

9    weren't necessarily inconsistent completely, because the four

10   grantees in the pending suits would take a certain amount of

11   the money but only a fraction thereof.  If there weren't

12   other challenges, if the other grantees stayed quiet and

13   accepted the government's position, then the government would

14   have funds that they could allocate and distribute through a

15   new grant program.

16        THE COURT:  Of course the government is arguing

17   that's the position they were in until you suddenly popped

18   up.  They are saying this is precisely why I should not allow

19   you to continue because they thought you were fine with it

20   and they could go ahead and recompete the funds.

21        MR. GORDON:  That is indeed their position, Your

22   Honor.  As I said, I'm trying to be fair here in setting

23   forth the position.

24        But the government, as the Court I think has pointed

25   out through its questions, has hardly prejudiced itself when

1    we step forward -- now I'm speaking on behalf of my client,

2    the Choctaw Nation -- and what we have asked for is relief

3    from this Court to keep the funds for our grant, which is a

4    little over a million dollars, from being reallocated.

5    Insofar as that goes, we are agnostic about whether the new

6    grant program moves forward with the remaining funds.  The

7    rub to some extent comes because of the class action, which

8    would now, if granted, would cover all of the existing grants

9    and basically use up all of the funds.

10            THE COURT:  Are you agnostic with regard to class

11   action?

12            MR. GORDON:  Well, Your Honor, we haven't moved for

13   class action.  But we do have --

14            THE COURT:  You would be covered, you would be in the

15   class?  Or no?

16            MR. GORDON:  Well, the way the class has been

17   proposed, we would be part of the class.

18            THE COURT:  You would?

19            MR. GORDON:  The way it has been proposed.  Let me

20   hasten to add, it hasn't been proposed by us that way.

21            THE COURT:  Are you challenging or opposing your

22   inclusion in the class as proposed?

23            MR. GORDON:  Well, Your Honor, the Choctaw Nation's

24   preference is to litigate its own cases.  Many litigants feel

25   that way.  So our preference would be to be carved out.  But

1      in particular -- and it is not just a philosophical thing

2      about we like to litigate our own case -- our primary concern

3      is the threat of irreparable harm that the client is facing

4      on an ongoing basis because as long as its funding is

5      uncertain, the staff that are biding the program, that are

6      running the program, making it happen at the schools in

7      Choctaw Nation think that they're going to be out of a job at

8      the end of June.

9             THE COURT:  I understand.  But boy, all of these

10     different concepts are now colliding for me as I listen to

11     you talk because I had assumed that all of the plaintiffs

12     were pretty much in the same boat, that everybody wanted

13     TPPP.  Internally, we call my opinion "TP3" because it is

14     easier.  Everybody wanted TP3 relief, right?

15            MR. GORDON:  We all do.

16            THE COURT:  And we were just here trying to evaluate

17     whether this group of cases was any different than *Policy and*

18     *Research* and shouldn't I just treat them all the same.

19     You're suggesting a little bit that Choctaw Nation would

20     rather go it alone in a way that makes me nervous, and let me

21     tell you why.  Because the defendant has argued legitimately

22     that Choctaw Nation waited, waited, waited until it saw

23     everything that was happening, not only Congress, but in this

24     Court's opinion with respect to *Policy and Research* and then

25     it comes in.  And it comes in with a preliminary injunction

1    suggesting irreparable harm, which you have now reinforced.

2         But isn't that your risk?  In other words, you waited

3    until the last minute.  You knew the funding was going to run

4    out as of June 30th.  Right?  So I don't understand how the

5    irreparable harm doesn't cut against you under these

6    circumstances.

7         MR. GORDON:  Let me address that.  Here's the reality

8    of the world.  Litigation is not free unless you're the

9    Department of Justice.  My client -- or unless you have the

10   benefit of a public interest group that is litigating on your

11   behalf.  The Choctaw Nation, like most other litigants, pays

12   its attorneys.  And while I think my rates are eminently

13   reasonable, the truth of the matter is that counsel is not

14   cheap.  It is not an inexpensive nor an easy matter to file

15   suit against the federal government.

16        And so the Choctaw Nation, before it files suit, like

17   most other plaintiffs, wants to know:  Do I have a good cause

18   of action?  And is there enough that is worth fighting about?

19        So to cut the apple real fine, you had continuing

20   resolutions that provided funding in small chunks up until

21   you finally got the legislation, but you had no assurance

22   until then that there was going to be enough in the pot for

23   fiscal year 2018 to make it worth litigating over.  It only

24   became clear on March 23rd, when Congress passed the law and

25   it got signed into law that there would be enough money in

1    the pot, i.e., the whole year, and more than a million

2    dollars in the case of the Choctaw Nation to make it worth

3    fighting about.

4         Then, the next question is:  Is the cause of action

5    good?  And the fact of the matter is that the Choctaw Nation

6    was already evaluating the pending cases.  That had started

7    before the Court ruled.  Now, it became clearer when the

8    Court ruled.  But it is hardly unreasonable delay for a

9    litigant to study, once it knows it has got a fight worth

10   fighting, to study for a month to decide whether the legal

11   cause is good enough.

12        THE COURT:  All right.  What do you say with respect

13   to your contentions about the preliminary injunction aspect

14   of this?

15        I always try to get people to go on the merits with

16   respect to cases as opposed to doing it in stages because

17   it's frankly annoying to have to evaluate the likelihood of

18   success and you come back on the merits.  It's like why can't

19   we just treat this as an expedited motion for summary

20   judgment or whatever and get to the heart of it?

21        MR. GORDON:  Okay.

22        THE COURT:  Okay?  But you seem to want to talk about

23   irreparable harm.  You seem to want to make this about

24   preliminary injunction.  So I'm trying to understand how you

25   respond to the government's position on, even if Choctaw

1    Nation were to win today, says the government, it takes two

2    months to process these applications.

3         MR. GORDON:  First of all, our client has prepared an

4    application, a renewal application, and that can be filed

5    very quickly.  The two months is what the HHS has previously

6    allowed itself, and it doesn't take a full two months to

7    process any one particular application.

8         THE COURT:  I'm trying to see where Choctaw stands,

9    and then I will ask the other plaintiffs.

10        Unlike what happened in *Policy and Research*, where

11   the Court's injunctive order was you cannot, quote/unquote,

12   shorten these people's grant applications -- excuse

13   me -- project periods, you need to continue to process their

14   applications as though you had not made that shortening

15   determination.

16        Is Choctaw asking for a ruling from this Court that

17   would require the government to complete the processing of

18   its application by June 30th?

19        MR. GORDON:  Yes, Your Honor.  I think that the order

20   that we seek from the Court would be identical to the one

21   issued in *Policy and Planning* --

22        THE COURT:  That's not what I said in *Policy* --

23        MR. GORDON:  Well, except for the deadline.  The

24   Court didn't put in a deadline in *Policy and Planning*.

25        THE COURT:  I wasn't asked to.  They had negotiated

1   with the government regarding the application so that they

2   didn't need it.  And they brought their case early enough

3   that it wouldn't make a difference.  This is the problem,

4   right?  I understand Choctaw wants to evaluate it, wants to

5   spend its money wisely.  All of that is reasonable.  The

6   question is to what extent can they do it and then run into

7   court with respect to a process that takes 60 days and demand

8   that if you win the government do it faster than it did with

9   respect to any other plaintiff.  I am confused by that.

10  There is something of this notion of talking to the

11  government, letting them know what your claims are, bringing

12  your case in enough time so the deadlines are not looming,

13  and on that basis, you then can contend there is irreparable

14  harm because we only have a few weeks left.  Isn't that your

15  fault?

16          MR. GORDON:  Well, Your Honor, the certainty of the

17  funding is the most important thing for the Choctaw Nation.

18          THE COURT:  Right.  But you waited a month after the

19  Congress reappropriated the funding for this, right?

20          MR. GORDON:  Right.

21          THE COURT:  A whole month passed --

22          MR. GORDON:  Yes.

23          THE COURT:  -- before the Choctaw said we should get

24  the money that has now been appropriated for this.  And the

25  government says that's unreasonable delay, especially when

1   you're now claiming that you are entitled to the money so

2   quickly, you know, a process that we don't ordinarily even

3   apply in the usual case.

4        MR. GORDON:  What the government actually said, they

5   said, first of all, that it is laches and that our claim

6   should be dismissed.  It is clearly not laches.

7        THE COURT:  Why not?

8        MR. GORDON:  Because there has not been unreasonable

9   delay and there has been no prejudice to the government.

10       THE COURT:  Setting aside the prejudice, why is it

11  not unreasonable to wait a month after Congress appropriates

12  the money when you know there is a June 30th deadline

13  approaching?

14       MR. GORDON:  In terms of bringing a suit, Your Honor?

15       THE COURT:  Yes.

16       MR. GORDON:  Because in the cases like *Gull Airborne,*

17  which was a bid protest where the time deadlines are even

18  more demanding, they were a year and a half after the initial

19  award.  There had been administrative appeals in the

20  meantime.  But after the administrative appeals completed,

21  they waited more than a month, and the Court of Appeals said

22  that was reasonable.  They had already been litigating it for

23  over a year and had all of the legal arguments out.

24       THE COURT:  All right.  Do you have any other merits

25  arguments other than the merits arguments --

1           MR. GORDON:  No, we don't --

2           THE COURT:  -- that the Court addressed in *Policy and*

3      *Research?*

4           You do not.  But you would be asking for slightly

5      different relief insofar as now we have to worry about --

6           MR. GORDON:  That would be our preferred relief.  If

7      the Court says, I'm not going to do it by the set deadline,

8      I'm just going to enter the same order, then that is not what

9      we would seek, but that obviously gives us the certainty that

10     even if not by June 30th that the funds will be forthcoming.

11     So the point I would like to impress on the Court is this,

12     just to understand where we are vis-a-vis the class

13     certification issue and the other plaintiffs.  Our case will

14     be fully briefed as of Wednesday.  All that's remaining is

15     the government's reply brief on its cross motion, which is

16     due this Wednesday.

17          We are looking for relief at the earliest possible

18     date.  I understand the Court's point about preferring to

19     expedite summary judgment rather than do the preliminary

20     injunction and then have to rule twice.

21          THE COURT:  In this case, they collapse, right,

22     because preliminary injunction versus the merits would even

23     prolong your situation?  Wouldn't it?  I don't know.  Would I

24     be able to order the final relief as a matter of preliminary

25     injunction?

1          MR. GORDON:  I think you could.  I think you could

2    order at least the start of the processing.

3          But our point is this:  The Texas case, in which

4    class certification is sought, is at least trailing us by at

5    least a week and maybe a little bit longer, depending on how

6    the briefing schedules goes.  We don't want to become tied to

7    that schedule as opposed to our own, which is basically

8    almost ripe for a decision by the Court.  That is the primary

9    concern with the Choctaw Nation.

10         THE COURT:  So you would disagree with the

11   government's veiled suggestion that we should at least have

12   consolidation of all of these cases?

13         MR. GORDON:  I absolutely would.  All that does is

14   slow us down.

15         THE COURT:  All right.

16         MR. GORDON:  I was going to say something else, but I

17   will leave that for other counsel.

18         THE COURT:  You are ahead of the Texas case, class

19   certification case, by a week.  You would prefer not to be in

20   the class, and you disagree with consolidation?

21         MR. GORDON:  Because of the delay, Your Honor, not --

22         THE COURT:  Because of the delay.

23         MR. GORDON:  If we got preliminary injunctive relief,

24   then I think that changes our position.  But the main thing

25   is to have basically the certainty, the Court having put its

1     imprimatur either via preliminary injunction or summary

2     judgment on the notion the funding will be forthcoming for

3     this coming year so we can tell our staff, you've got a job,

4     you don't know to leave.

5          THE COURT:  I understand what you want.  I am

6     confused as to why it matters to you the vehicle by which you

7     get there.  Whether you're part of a class in which I say

8     that or you stand alone, I don't know why you're drawing such

9     a line in the sand about it.

10         MR. GORDON:  The primary concern, Your Honor, is

11    simply the expedition.

12         THE COURT:  What if the class goes faster because

13    there's more of it or because it wraps it all up?  Would you

14    want to be in the class then?

15         MR. GORDON:  The bottom line is we're interested in

16    relief.  I'm absolutely with the Court on that.

17         THE COURT:  Thank you.

18         Let me speak to Mr. Rogan.

19         Good afternoon.

20         MR. ROGAN:  Good afternoon again.

21         THE COURT:  You've heard my conversation with

22    Mr. Gordon regarding the Choctaw's position.  Maybe you can

23    enlighten me as to what Hennepin County thinks about this.

24         MR. ROGAN:  So Hennepin County is a little different

25    because we are the latest filed of the cases before you right

1    now.  And so we would be happy to be part of the class and

2    have this case decided through the class as long as obviously

3    the class certification happens and that we're a part of the

4    class.

5         We would be happy with a consolidation to come up

6    with a briefing schedule that allowed the government the

7    appropriate time to respond to the different issues.

8         And with respect to the preliminary injunction or

9    expedited summary judgment, we are looking to try to get

10   relief as fast as we can so that we can tell our client that

11   there is some certainty or more certainty about whether

12   there's going to be funding.  So I'm a little bit --

13        THE COURT:  All right.  Let me ask you this:  What is

14   your response to the government's position that your

15   complaint should be dismissed because of laches?  They

16   haven't made it yet, but we think it is coming, because you

17   haven't briefed yet --

18        MR. ROGAN:  No, Your Honor.  They have asked for --

19        THE COURT:  -- additional time.

20        MR. ROGAN:  Right.

21        THE COURT:  So we can perhaps safely assume that

22   since they have claimed laches with regard to lawsuits that

23   have preceded yours, that same argument is coming down the

24   pike.  Do you have thoughts as to why this is not an

25   unreasonable delay?

1          MR. ROGAN:  Yes.  I will try not to repeat some of
2     the arguments that Mr. Gordon made.
3          First, Hennepin County did attempt as many
4     nonlitigation ways to try to get this resolved as possible.
5     We got our notice in July.  We filed an administrative appeal
6     in August and tried to get a response to that.  And the
7     government gave us no response to that.
8          We worked with our congressional delegation, and we
9     had letters sent in the fall of 2017 and in 2018 imploring
10    HHS to continue with the TTP grants that had been awarded in
11    2015, and worked with our delegation to get funding for the
12    FY 2018.
13         As Your Honor already knows, it wasn't until March 23
14    of 2018 that Congress fully funded for the rest of the fiscal
15    year.  So up until that time, the administration position
16    was -- and it was part of what was in the House bill -- was
17    to zero out the TPP funding.  So as Mr. Gordon pointed out,
18    it didn't make a lot of sense to bring a litigation case at
19    that time or try to convince my county board to sue the
20    federal government, which is something we had never done
21    before, on the hope that Congress would take an opposite view
22    of the administration and fully fund the TPP.
23         THE COURT:  I see.  So the betting person's thought
24    on this prior to March was that it was probably going to be
25    mooted, a non-issue by congressional --

 1              MR. ROGAN:  Well, I think if you're going to try to

 2      read the tea leaves, when you have a Republican Congress and

 3      a Republican administration and you have flipped from a

 4      Democratic administration to a Republican administration and

 5      the  Republican Congress is saying one of our priorities is

 6      to zero out TPP funding, our thought was that we don't want

 7      to bring a lawsuit, to spend a bunch of time and money and

 8      energy and political capital to bring a lawsuit where there

 9      is not going to be any money there.  But we did continue to

10      work to try to get our funding.  We, unlike some of the

11      others, after that March 23 date, did file a continuing

12      application.  We filed it on March 30th.

13              THE COURT:  They accepted it?

14              MR. ROGAN:  No.  They didn't accept it.  They

15      accepted the mail.  They didn't accept it -- I don't think it

16      would be described as being accepted because they said that

17      our budget period or our program period had ended, and it was

18      ending as of June 30th.  So we filed it at the same time as

19      we had done the previous years, and we have been an applicant

20      since 2010, and so we got it to the right folks, but we

21      weren't able to access the system --

22              THE COURT:  I see.

23              MR. ROGAN:  -- so it was only after all of those

24      events that we brought suit.

25              So I don't think that it is a fair characterization

1      to describe what Hennepin County did as sitting back and

2      waiting the whole time.  We tried to do everything possible

3      to get this resolved in a way that we thought was going to be

4      fair to Hennepin County.  And only when it became clear that

5      the administration was going to reallocate the funds that we

6      believe that we were entitled to, did we bring a lawsuit.

7              THE COURT:  All right.  So you say, under those

8      circumstances, here we are, we're okay with being part of the

9      class, or okay with consolidation, assuming we get it all

10     worked out, we would like this resolved as soon as possible.

11     Are you asking, like the Choctaw, for sort of an order that

12     requires the government to process your applications by

13     June 30th?

14             MR. ROGAN:  We would like to have it by June 30th.

15     But, Your Honor, I recognize that the government has argued

16     in previous cases it takes 60 days.  We would like to get our

17     case resolved as quickly as possible, and the June 30th date

18     to get it processed by would allow us to have the maximum

19     flexibility to communicate with our grantees about the

20     availability of the funding.

21             So the short answer is as fast as we can, but we

22     would like to get an order --

23             THE COURT:  But you can get there via the class, you

24     say?  You're not resisting being part of the class?  I

25     haven't really thought about the class action, but I'm trying

1     to understand people's positions.

2           MR. ROGAN:  That's correct, Your Honor.  Actually,

3     when we filed our preliminary injunction, we referenced the

4     class action, and the reason we brought the case in part was

5     in case there were questions about class certification and we

6     were not somehow being included in the class, some of the

7     arguments that the government is making now that somehow the

8     class is an appropriate way to deal with this.  We wanted to

9     make sure that we moved as quickly as we could to make sure

10    that we got our case filed.

11          So we have the exact same legal argument that is

12    present in the class action, and we believe that there are no

13    fact issues that are unique to Hennepin County that would

14    distinguish it.  So we're happy to --

15          THE COURT:  From *Policy and Research* or anybody

16    else --

17          MR. GORDON:  Correct.

18          THE COURT:  -- who is in this position to receive the

19    notice in the way that you did.

20          MR. GORDON:  Correct, Your Honor.

21          There might be some with laches, I mean I think that

22    we might stand a little bit different to the extent that the

23    Court was concerned about that.  But on the merits itself, we

24    have no distinction on what has been before you before or

25    what we believe is in the pending case right now.

1          THE COURT:  All right.  Thank you.

2          Mr. Sherman.

3          MR. SHERMAN:  Good afternoon, Your Honor.

4          THE COURT:  Good afternoon.

5          MR. SHERMAN:  Your Honor, just as a matter of our

6     scheduling, we filed a reply for the motion for class

7     certification this morning, so that motion is now fully

8     briefed before Your Honor.

9          THE COURT:  Yes.

10         MR. SHERMAN:  And then as far as the motions for

11    summary judgment, our plan is to have our brief filed by the

12    middle of this week at the latest.  And given that opposing

13    counsel has indicated that these arguments were all the same,

14    if Your Honor is concerned about timing, Your Honor could

15    order them to file quicker their reply.  We're not going to

16    raise any new arguments that hadn't been raised before.

17         THE COURT:  I'm sorry.  I'm trying to figure out

18    exactly -- you mean you have already filed a motion for class

19    certification and the motion for summary judgment?

20         MR. SHERMAN:  That's correct, Your Honor.

21         THE COURT:  Have they responded?

22         MR. SHERMAN:  Yes, Your Honor.

23         THE COURT:  You're talking about your opposition to

24    their motion for summary judgment?

25         MR. SHERMAN:  That's right.  The reply for class

1    certification, that motion is fully briefed before the Court.

2         THE COURT:  When you're saying getting the summary

3    judgment brief fully together, you mean this coming Wednesday

4    you will file the opposition to the government's cross

5    motion --

6         MR. SHERMAN:  And our reply, that's correct, Your

7    Honor.  That is just with respect to how we expect this to

8    proceed very quickly.

9         THE COURT:  Right.

10        MR. SHERMAN:  The government then would have a week

11   to respond, which would only put us a week, then, behind the

12   Choctaw case.  But Your Honor, given that we're going to have

13   all the same arguments that have already been laid out, if

14   Your Honor orders the government to respond quicker, I don't

15   understand why it wouldn't be able to do so.  For example, by

16   Friday or Monday, which would cut the delay between the two

17   cases even shorter, Your Honor, just to look at how quickly

18   these cases are and how close they are together in time.

19        THE COURT:  All right.  The government, I think,

20   intends to make a laches argument, if it hasn't done so

21   already, with respect to your case.

22        MR. SHERMAN:  It has, Your Honor.

23        THE COURT:  Why do you think you should be allowed to

24   proceed in light of their defense?

25        MR. SHERMAN:  Your Honor, it is an equitable defense,

1    and the touchstones are unreasonable delay and prejudice.

2    And it is hard to disconnect the two.  And I would like to

3    start with prejudice because, Your Honor, there is no

4    prejudice to the government here.  They did issue a

5    recompetition letter seeking applicants for funding, but

6    applications are not even due, Your Honor, until the end of

7    June.  They have not promised the money to anybody.  They

8    have simply put out a request for applications.  And so the

9    idea that the government is prejudiced from lawsuits like

10   this lawsuit being brought only a week after that decision,

11   we just don't see any prejudice there, Your Honor.

12          As to delay, this case was brought a week after your

13   decision in *Policy and Research*, Your Honor and --

14          THE COURT:  After my oral ruling or after --

15          MR. SHERMAN:  Yes, your oral ruling, Your Honor.

16          And then the government never argued that the *Policy*

17   *and Research* case was untimely.  In fact, in briefing on that

18   case, Your Honor, the government took the position that its

19   brief should not even be due until after the Appropriations

20   Act was filed.  It sought to have its responsive brief due

21   March 30th there.  So the government clearly understood that

22   these issues were not -- potentially not ripe for

23   adjudication.  So this short period of time is hardly a

24   delay, Your Honor, let alone an unreasonable one.

25          THE COURT:  All right.  So I want to talk about class

1    certification.

2            MR. SHERMAN:  Uh-huh.

3            THE COURT:  I have to tell you I have been sort of

4    confused by all of this -- all of this -- because I had

5    understood the government's position with respect to all of

6    these cases to have been that it was entitled to act in the

7    way that it did to shorten the project periods, notify

8    everybody in the way that they did, and that what was

9    presented to me in the *Policy and Research* context was

10   essentially a question of law, right?  Is the act an

11   arbitrary and capricious exercise of the government's

12   decision-making authority?

13           I answered as quickly as possible because I

14   understood Policy and Research and the other plaintiffs who

15   were before me at the time wanted an answer.  And so what has

16   been confusing to me is all of these other lawsuits and

17   whether or not there's really any distinction or should I

18   issue the same order in all these cases or why is this a

19   class action, why isn't the government appealing.  I'm so

20   confused.  I'm so confused.

21           So maybe you can help me to understand why we have a

22   class action in this context, why are you raising the motion.

23           MR. SHERMAN:  Absolutely, Your Honor.

24           THE COURT:  Okay.

25           MR. SHERMAN:  Your Honor is right, it is a question

```
 1    of law.  And the government, Mr. McElvain agreed there's no

 2    differences in the merits arguments, no substantive

 3    differences in the arguments they're making.  In our cases,

 4    for any members of the class, the (b)(2) class is for when

 5    the government has taken an action that one injunction can

 6    set aside, and here it was a termination of all the grants,

 7    and that decision should be set aside, Your Honor.

 8             As far as the other cases --

 9             THE COURT:  Have the plaintiffs worked together in

10    any sense?  I have all these cases coming in.  I would have

11    thought you all would have maybe consolidated amongst

12    yourselves or something.  I don't know.

13             MR. SHERMAN:  Your Honor, we have certainly spoken

14    with one another.

15             THE COURT:  Yes.

16             MR. SHERMAN:  As Mr. Rogan pointed out, Hennepin

17    County brought its case protectively in the event Your Honor

18    denied class certification.  Not to speak for other

19    plaintiffs, but that is at least one reason.  But as he also

20    indicated, everybody wants relief as quickly as possible.

21    And class relief with an order that Your Honor is

22    substantively -- is identical to the order in *Policy and*

23    *Research* would be appropriate to the class and would resolve

24    every class member's claim.

25             With respect to Choctaw Nation, if they have some
```

 1    sort of different claim, Your Honor could carve them out of

 2    the class, as we have carved out the non-similarly situated

 3    agencies.  But otherwise, Your Honor, every plaintiff here,

 4    to my understanding, wants the exact same relief, which is an

 5    order setting aside the termination as unlawful.

 6          THE COURT:  All right.  In your experience or as

 7    you've thought about this and done this in the past with

 8    respect to other cases, to the extent that the Court set

 9    aside the action of the government as unlawful in *Policy and*

10    *Research*, that was only with respect to those plaintiffs.  In

11    other words, I have to do this with respect to 80 different

12    plaintiffs?  Everybody has got their name on the complaint

13    absent a class action?  Is that the way this works?

14          MR. SHERMAN:  Your Honor, I believe that might be the

15    way this works, yes.

16          THE COURT:  All right.

17          MR. SHERMAN:  There are 61 grantees remaining, Your

18    Honor, that we have brought a class action on behalf of.

19          THE COURT:  61 remain.

20          MR. SHERMAN:  Yes.

21          THE COURT:  All right.  I guess in the past I haven't

22    done this because the government hasn't insisted upon it.

23    But you're saying, as matter of law, this is pretty much what

24    you have to do if the government treats an injunction of its

25    action that is substantially similar to all these people, if

1    it treats it as only applying to the plaintiffs before it,

2    then you have to go through each one or have a class action.

3         MR. SHERMAN:  We can't force the government to take

4    any other action, Your Honor.

5         THE COURT:  Okay, so 61 remain in the class.  Now,

6    the government says you can't carve out the way that you have

7    attempted to do.  Why are they wrong about that?

8         MR. SHERMAN:  Your Honor, the carve-out of the

9    non-similarly situated plaintiffs is just not an opt-out.

10   What they're talking about in *Dukes* just doesn't actually

11   apply.  Your Honor, *Califano v. Yamasaki*, which is a Supreme

12   Court case and a case the government cites is directly on

13   point here.  There it was an (e)(2) class that the Supreme

14   Court affirmed certification of, and that case there

15   specifically excluded cases that were pending in other

16   districts.  And the court there actually noted that it was a

17   good decision by the district court to do that in order to

18   not interfere with those other cases, and it was the

19   appropriate way to proceed if those cases were excluded from

20   class definition of (e)(2) class --

21        THE COURT:  And indeed, if you don't do that, then

22   you have the other problem, which is why why the government

23   calls it the horns of a dilemma, right?

24        MR. SHERMAN:  Right, Your Honor.

25        THE COURT:  Because either you leave them in and

1    interfere with them or you take them out and the government

2    says you can't do that --

3            MR. SHERMAN:  Absolutely, Your Honor.  And that is

4    just not an actual issue because we haven't excluded them,

5    and there's no -- excluding those non-similarly situated

6    entities is not the same as giving them an opt-out, Your

7    Honor.

8            THE COURT:  Do you read the government as having any

9    other basis for opposing the class treatment?

10           MR. SHERMAN:  No, Your Honor, there is no other

11   basis --

12           THE COURT:  I mean, in the rules do they say --

13           MR. SHERMAN:  No, Your Honor.  The only thing they

14   also say is that the definition should be changed, the actual

15   way that they phrase it, and we disagree with the changes

16   that they suggest.  They suggest adding terms in order to

17   inject subjective standards into the class definition.  They

18   say it only should be for grantees in good standing that

19   intend to seek continuation of their grants.  Those are

20   subjective standards, and the class definition should be

21   objective and should be every grantee.  So we don't see why

22   the government's definition should be adopted.  We disagree

23   with it because it would make it far more difficult to

24   identify the class members when we know who they are, Your

25   Honor, we can give you a list.  There's 61 grantees.

1          THE COURT:  All right.  Maybe I will ask them, when

2     they come back up, as to why they have imposed the other

3     definition.

4          I typically like to try to do things as efficiently

5     as possible.  So in terms of thinking about this as

6     preliminary injunction versus summary judgment, as class

7     action versus some other mechanism, how would you suggest

8     that I go about dealing with the remaining cases?

9          MR. SHERMAN:  It is very simple, Your Honor.  The

10     class motion is fully briefed.  Your Honor can certify the

11     class.  We will then file our response, and the government

12     reply as quickly as possible.  We haven't moved for

13     preliminary injunction, just summary judgment.  Your Honor

14     can grant summary judgment as to the entire class immediately

15     after, as soon as possible after the motion is fully

16     submitted, and that will eliminate -- or that will give a

17     remedy to every member of the class.  That will be it.

18          THE COURT:  All right.  Thank you, Mr. Sherman.

19          MR. SHERMAN:  Thank you.

20          THE COURT:  Ms. Ross.

21          MS. ROSS:  Good afternoon, Your Honor.

22          THE COURT:  Good afternoon.

23          MS. ROSS:  I do not want to belabor points that have

24     already been made here, so I will keep this fairly brief.

25          I just want to make a couple of points with respect

1     to our client --

2              THE COURT:  Yes.

3              MS. ROSS:  -- Child & Family Resources, so you

4     understand our position on the issues that we have been

5     talking about today.

6              THE COURT:  Yes.

7              MS. ROSS:  With respect to laches, I don't mean to go

8     through the history of the Appropriations Bill and the

9     statements that the administration made in advance of

10    Congress' decision to continue the funding for the TPP

11    Program.  Our client promptly, after the Appropriations Bill

12    was passed, did submit an application, a continuing

13    application for its two grants.  Submitted those in the

14    beginning of April, I believe on April 2nd.  And then

15    probably put together and filed this lawsuit to preserve its

16    rights.

17             I will also note with respect to laches and the

18    government's argument that there is some prejudice to them in

19    not being allowed to re-obligate these funds while these

20    cases are pending, we do have an agreement in our case, which

21    is on the record in Docket Number 11, where the government

22    has agreed to not otherwise obligate the funds for our

23    client's grants through the end of August.

24             THE COURT:  Are you the only one that you're aware

25    of?

1          MS. ROSS:  I believe they have entered into

2     agreements in other cases.  I don't want to speak for my

3     co-plaintiffs here.  I will allow them to address that.

4          We do have an agreement the defendants will preserve

5     and refrain from obligating, through August 31st, 2018, any

6     moneys appropriated for the TPP Program that would fund

7     plaintiff's grant in our case.

8          THE COURT:  All right.  Tell me what you think that

9     means in terms of the arguments that they either have already

10    made or will make in your case about laches.

11         MS. ROSS:  They have made no arguments in our case

12    yet.  Their brief is due on Wednesday.  But we want to

13    reserve any right to respond to anything they might actually

14    say.

15         THE COURT:  Sure.

16         MS. ROSS:  We think there is no argument that the

17    government will be prejudiced by our case going forward.

18    They have already voluntarily agreed to preserve that money.

19         Additionally, we don't believe there is any undue or

20    unreasonable delay on the part of our client, who has acted

21    promptly to submit the application within the time frame of

22    all of the previous years for the continuing applications

23    and stuck with that timeline after the appropriations did

24    come through.  And again, the prejudice point with respect to

25    the funds.

1          THE COURT:  All right.  Are you interested in being a

2     part of the class or no?

3          MS. ROSS:  We are largely agnostic to the class.  Our

4     client's primary interest is getting their application

5     processed as promptly as possible and having their funding

6     continue uninterrupted, if possible, understanding that the

7     timing issues that have already been addressed.  They have

8     had our application now for six weeks, seven weeks, and I

9     don't know what they're doing with it.  I presume it is not

10    being processed --

11         THE COURT:  There was no agreement to process --

12         MS. ROSS:  Right.  I believe they have accepted the

13    mail, would be the term, rather than accepted the

14    application, and aren't doing anything with it.

15         So our concern with respect to the class is simply

16    one of timing.  If the relief can be afforded through that

17    vehicle as fast or faster than through our individual

18    lawsuit, our client is fine with that.  Our interest

19    primarily is in the relief we seek, not the vehicle.

20         THE COURT:  What about June 30th?  Does that have any

21    relevance to you in terms of your thoughts on this?

22         MS. ROSS:  Continuing our funding without

23    interruption is important to our client.  They have 16

24    employees who potentially would need to be terminated if

25    their funding isn't continued.  Moving as quickly as possible

1    is obviously something that is very important to them.  I

2    believe between the filing of our lawsuit and June 30th there

3    are 59 days, and that doesn't account for the full month

4    ahead of time that they have had our client's continuing

5    applications.  We believe that either through a preliminary

6    injunction, or some other instruction from the Court, that if

7    the government chose to act in haste that we could get there

8    by June 30th.  But we understand, Your Honor, that that

9    depends in part on the timing of the Court.

10           THE COURT:  But you have filed a motion for

11   preliminary injunction?

12           MS. ROSS:  We have.

13           THE COURT:  Again, I guess I take you to say whatever

14   is fastest.  In other words, you are not wedded to the

15   preliminary injunction versus expedited motion for summary

16   judgment, I address the merits and not have to deal with the

17   three other factors and the extra layer of processing that

18   goes into preliminary injunction.

19           MS. ROSS:  That's right, Your Honor.

20           One possibility that we could consider is whether a

21   preliminary injunction could require them to begin processing

22   our application even if a decision isn't ultimately made to

23   fund it until the Court issues a judgment on the merits.

24           THE COURT:  I see.

25           MS. ROSS:  Our client's interest is in moving as

1    promptly as possible through the judicial process in whatever

2    way Your Honor believes is the most efficient.

3              THE COURT:  All right.  Thank you.

4              MS. ROSS:  Thank you.

5              THE COURT:  Mr. McElvain, there are four separate

6    plaintiffs, and there's a lot to discuss, but you're up.

7              MR. McELVAIN:  I will try my best.

8              On the last point first, on preliminary injunction

9    versus merits briefing, in the cases we have filed so far and

10   in all of the four cases eventually, we will file combined PI

11   and motions to dismiss and/or for summary judgment.  We're

12   more than happy to go straight to the merits.

13             THE COURT:  All right.

14             MR. McELVAIN:  That's perfectly fine by us.

15             I repeat my at least tentatively stated offer from

16   earlier that consolidation of these cases for the remaining

17   briefing is something --

18             THE COURT:  And the benefit to that is that you just

19   have a single brief that the government would be responsible

20   for --

21             MR. McELVAIN:  So far we have been filing the same

22   brief before you, so I'm sure it is somewhat tedious for you

23   to see the same words over and over.  There may be slight

24   variations as to particular factual allegations which we

25   could address in a consolidated brief, I'm sure, but I

1    imagine there is a way to limit the load of paper that we're

2    all dropping on you.

3         THE COURT:  The only problem is we're almost done,

4    aren't we?

5         MR. McELVAIN:  We're almost done with the first case

6    and we're starting briefing on the others.  Let me think

7    here.

8         As to Choctaw, we will file a reply on Wednesday, and

9    then briefing will be complete in that case.  In Healthy

10   Futures, we're halfway through the briefing.  They say they

11   will file their reply on Wednesday, and we would owe a reply

12   brief in that case.  And then in the other cases, we have not

13   filed our cross motions yet.

14        THE COURT:  You have not filed your cross motions

15   yet?  All right.

16        I suppose the plaintiffs will want to each have their

17   own thing to say.  But I'm thinking about consolidation in my

18   head.

19        So what about class action?  Can we circle back to

20   that?

21        MR. McELVAIN:  Sure, yeah.  So I guess starting with

22   the class definition --

23        THE COURT:  Yes, please.

24        MR. McELVAIN:  -- so our first objections to the

25   class definition is the use of the word "terminate" in the

1    class definition, and that assumes the merits.  I recognize

2    that in *Policy and Research* you ruled that what HHS did was a

3    termination.  We, of course, adhere to our respectful

4    disagreement with that, and we don't believe that we have

5    terminated any grant.

6          THE COURT:  Right.  They say, or shorten.  If we take

7    out "terminate," would you be fine with that?

8          MR. McELVAIN:  If you change "terminate" to

9    "shorten" --

10         THE COURT:  Well, "shorten" is already in there.

11         MR. McELVAIN:  I apologize.  I don't have my --

12         THE COURT:  That's okay.

13         All entities awarded Teen Pregnancy Prevention

14   Program grants by the Department of Health and Human Services

15   in 2015 with a five-year project period whose grants HHS

16   purported to terminate or, quote/unquote, "shorten" effective

17   June 30th, 2018.

18         Then they go on to the exclusion part.  If HHS

19   purported to "shorten" --

20         MR. McELVAIN:  I think if we say "purported to

21   shorten," that would be, as I understand it, the same class

22   that we're trying to get at, and that would resolve my

23   concern.

24         THE COURT:  All right.  I'm going to keep you at the

25   podium.  I'm going to look over at the plaintiffs to see if

 1     they're nodding.

 2          Yes, that is pretty much.  So, okay, if we take out

 3     "terminate" and have "shorten," that would still capture what

 4     it is that they're looking for.

 5          What about the exclusion part of this?

 6          MR. McELVAIN:  The exclusion of the other plaintiffs,

 7     the plaintiffs in other actions?

 8          THE COURT:  Yes.

 9          MR. McELVAIN:  So I go back to the points I made

10     before.  I don't want to belabor the same points.  But in our

11     view, *Dukes* changed the law and made clear two points.  One

12     is you cannot have an opt-out from a (b)(2) class.  So if it

13     is their decision to try to proceed under (b)(2), they are

14     stuck with that rule of law.

15          And then the second point is that by trying to carve

16     out particular grantees, that is functionally the same thing

17     as an opt-out.  I will acknowledge *Dukes* did not use the word

18     "carve out."  It didn't deal with the precise analogy, but

19     the reasoning of *Dukes* that applies is the same as the

20     carve-out --

21          THE COURT:  So the government's position is that

22     there can be no exclusions, express exclusions from a (b)(2)

23     class?

24          MR. McELVAIN:  If they are proceeding on a (b)(2)

25     theory and their theory is that the government acted in the

1    same way and it was one governmental action that adversely

2    affected all the plaintiffs equally in the same way, then

3    that would be incompatible with carving out plaintiffs.  But

4    the dilemma again, as we discussed before, is that they can't

5    sweep any other plaintiffs because that would interfere

6    with --

7         THE COURT:  Plaintiffs say it's a dilemma of your own

8    making because it is not true that they're actually carving

9    out anybody, they're just defining class as to people who

10   haven't already received relief.

11        MR. McELVAIN:  If they had brought a class action

12   back in February or whenever the first case was brought, that

13   wouldn't have been the issue that we have now.  But the fact

14   that they waited until after they got one favorable ruling

15   and then brought a class action, that is what creates the

16   problem.

17        THE COURT:  Okay.  What else did we want to discuss?

18        Maybe let's talk about the timing.  The government

19   says 60 days.  Is that really how long it takes to process

20   these?

21        What about the ones who have given you the

22   application already?

23        MR. McELVAIN:  I would need to circle back with the

24   agency on that.  I don't have a factual representation I can

25   make to you.  It is my understanding that, to date, the

 1    agency has been pretty definite that they need 60 days

 2    because there's a lot of steps that the grant administration

 3    people need to go through.  It's a resource-intensive

 4    process.

 5         THE COURT:  Other than the class definition, does the

 6    government object to -- for the arguments and the reasons

 7    that you pointed out -- does the government object to class

 8    certification?

 9         MR. McELVAIN:  Apart from the (b)(2) point that they

10    can't have a (b)(2) class --

11         THE COURT:  Right.  Are you challenging this on the

12    grounds of numerosity or commonality or any of those other

13    aspects of the class certification?

14         MR. McELVAIN:  Our class certification opposition did

15    not assert any arguments other than the (b)(2) point I

16    discussed.  I don't want to complicate things further, but I

17    think there is a new issue that just arose today given that

18    my colleague that represented for Choctaw appears to object

19    to proceeding in a class that raises an adequacy issue that

20    we would need to think about at our end.

21         THE COURT:  Adequacy in terms of representation?

22         MR. McELVAIN:  Adequacy of representation if you have

23    a plaintiff standing before you saying they don't want to be

24    in the class, that may be an adequacy issue.

25         THE COURT:  All right.  I will circle back with

1      Choctaw to make sure that's what they're saying.

2               MR. McELVAIN:  Sure.

3               THE COURT:  I didn't hear the hesitancy that you are

4      referencing.  I don't know.  Maybe hearing the full

5      discussion, they might --

6               MR. McELVAIN:  I want to be clear, I'm not forcefully

7      arguing that point.  I said this is a point we need to think

8      about.  That just arose earlier --

9               THE COURT:  If I disagree with you on the horns of

10     the dilemma, for example, other than that, do you see any

11     basis for us not proceeding as a class --

12              MR. McELVAIN:  Apart from the (b)(2) point, apart

13     from the issues of the class definition, and apart from

14     potentially the adequacy issue given Choctaw's position

15     stated today, apart from those issues, we don't have any

16     other --

17              THE COURT:  And with respect to the class then, let's

18     assume for the moment that it's certified, you would still be

19     making the laches argument --

20              MR. McELVAIN:  That's correct.

21              THE COURT:  -- about the remaining 61 and waiting too

22     late.

23              Are there any other bases for, on the merits,

24     treating the assumed class to be different than *Policy and*

25     *Research* plaintiffs?

1          MR. McELVAIN:  We're not aware of any others apart

2     for the reasons we stated in our briefing.

3          THE COURT:  All right.  Anything else you want to

4     say?

5          MR. McELVAIN:  On the laches point, just one final

6     point, and I don't want to --

7          THE COURT:  Yes.

8          MR. McELVAIN:  -- test the Court's patience by

9     dragging this point out -- we will plan to address this also

10    in briefing -- but I think as to the question of whether

11    there's undue prejudice, I will refer you to the *Heimann*

12    case, which is cited in our briefing --

13         THE COURT:  Okay.

14         MR. McELVAIN:  -- and that case reasoned that when

15    the plaintiffs gave an impression of acquiescence and the

16    government was permissibly relying on the acquiescence, to

17    proceed with its contrary plans, then it is that impression

18    of acquiescence that creates the undue delay and the

19    prejudice to the government.

20         THE COURT:  Let's take us out of class mode for a

21    second and talk about the individual representations that

22    were made here by saying, Hennepin County, could you say that

23    they gave an impression of acquiescence since they said they

24    did all of these things and made you aware that they were

25    uncomfortable with the notice provided?

1      MR. McELVAIN:  I will have to get back to the Court

2      in briefing on the representations made by Hennepin County,

3      not that I have any reason to doubt the accuracy.  I would

4      need to consult with the agency, and I can't stipulate to any

5      particular facts right here and now.

6           THE COURT:  I see.

7           MR. McELVAIN:  But taking the representations as a

8      given, as I understand what they're saying, they're largely

9      relying on the fact that funding wasn't certain until

10     March 23rd, and I think that is something of a red herring.

11     All through the process from July through March 23rd, all

12     parties agreed the that the status of funding was in doubt.

13     The administration was seeking to terminate -- the wrong

14     word -- the administration was seeking to cancel funding in

15     the appropriations for TPP, but how that would ultimately

16     play out in Congress was uncertain.  Congress could have

17     refunded it.  Congress could have chosen not to refund it.

18          THE COURT:  So how can that whole period count

19     against any of these plaintiffs?

20          MR. McELVAIN:  So my point is that what is clear

21     during that period was the administration said that if there

22     was going to be funding that our plan is to hold a recount

23     petition.  We're not going to provide continuation funding

24     regardless unless Congress directed us to do so.  So given

25     that, the *Policy and Research* plaintiffs had no difficulty

1    bringing their claim before March 23rd.  They recognized they

2    had a dispute to bring, and they brought it.  There is no

3    reason that the other plaintiffs couldn't have brought their

4    claim at the same time.

5        THE COURT:  There is no reason, but you do

6    acknowledge that there was this looming uncertainty as to how

7    Congress was going to deal with this.  You said it was our

8    intention to recompete the funding, we made that clear,

9    unless Congress directed us.  So it is possible, I suppose,

10   in that March 23rd order Congress could have not only

11   designated the funding again but said give it to the people

12   who have already gotten these grants maybe, especially in

13   light of lobbying by Hennepin County and other people who

14   were concerned about the notice that they had received in

15   July.

16       So I guess I'm a little confused with respect to all

17   of the uncertainty that existed prior to March.  Kudos to

18   *Policy and Research* for getting out ahead of the problem.

19   But how can you hold that against anybody else?  Aren't we

20   really only talking about the delay from the moment of

21   Congress' funding to when they brought their lawsuit?

22       MR. McELVAIN:  Well, I guess I would refer the Court

23   to the reasons that *Policy and Research* got out ahead.  They

24   said they had to bring their lawsuit then to be sure that

25   they could have applications that would continue during the

1    time that they needed.  So now we have new plaintiffs coming

2    in, and at least their allegations of harm may be shifting

3    slightly today, but in their initial papers all said the same

4    thing, our harm is we need continuation by June 30th, just

5    the same Policy and Research did.  Policy and Research got in

6    here in February --

7         THE COURT:  I understand, but that just goes to the

8    timing.  That just says, Choctaw, maybe you don't get it by

9    June 30th because you waited.  I don't know that that says

10   dismiss your case as opposed to they bore the risk of waiting

11   and waiting and waiting in a way that Policy and Research

12   didn't because it wanted to ensure that they got money if it

13   won by June 30th.  Fine.  Why is that a laches concern?

14        MR. McELVAIN:  Right.  But now it brings us that much

15   closer to September 30th, the end of the fiscal year.  The

16   agency has to allocate the funds by September 30th.  We did

17   represent to Hennepin that we will not obligate funds going

18   to their grant application before September 1st.  That same

19   representation was available for any of the plaintiffs.  The

20   way the recount petition process works is we have devoted a

21   lot of resources into developing and reviewing the program,

22   developing the process, soliciting bids.  Third parties have

23   now relied on that solicitation and they're developing their

24   own bid.  There is prejudice to them as well as to the

25   government.  Those who will be coming over the summer, we

1    will be reviewing those over the summer.  And in September,

2    we will be making awards.  There is a process that the agency

3    is now devoting a lot of resources to, and will continue to

4    throughout the summer --

5         THE COURT:  On the assumption that the plaintiffs

6    will lose, right?  I thought there was a pot of money, all

7    been divided up to the existing 80 some odd plaintiffs.  I

8    guess what I'm confused about is the statement that you just

9    made that the Child & Family Resources representation is

10   available to everybody because that undermines your whole

11   program, doesn't it?

12        MR. McELVAIN:  No.  Even apart from any litigation,

13   the way that the recompetition is proceeding and whether we

14   have these plaintiffs here, or any plaintiff, just the way

15   the process is going --

16        THE COURT:  Yes.

17        MR. McELVAIN:  -- we will be reviewing applications

18   over the summer, and we will be making awards before

19   September 30th, and we won't do it before September 1st.  So

20   that's why we made the representation to one set of

21   plaintiffs and are willing to do so for any of the

22   plaintiffs.

23        THE COURT:  Doesn't that undermine your prejudice

24   argument?  That is what Ms. Ross said.  She said, how can you

25   possibly say that there's prejudice in our case since you

1    have agreed to not recompete the funds until sometime in the

2    future.

3              MR. McELVAIN:  Because the prejudice is not only the

4    possibility that we would have to obligate the funds in a way

5    differently from the agency's preference of recompetition

6    would be, although that would be prejudice if we reach that

7    point.  The prejudice also is the agency has devoted a lot of

8    its resources involving this recompetition, third-parties are

9    relying on that for preparing their applications --

10             THE COURT:  I understand, but you have undermined the

11   promise you have given them.  You are basically saying -- you

12   want me to dismiss the lawsuit on the grounds, in part, you

13   say, that we are gearing up to recompete the funds.  You have

14   promised that you won't actually recompete the funds until

15   later --

16             MR. McELVAIN:  I'm sorry to interrupt you.

17             THE COURT:  Yes.

18             MR. McELVAIN:  This may just be a terminologic

19   point --

20             THE COURT:  Okay.

21             MR. McELVAIN -- we are recompeting the funds.  We are

22   in the process of the recompetition.  We are going through

23   the procedures --

24             THE COURT:  You won't obligate --

25             MR. McELVAIN:  -- we will not obligate --

1          THE COURT:  Okay.  But it is not as though you won't

2     obligate the funds before September 1st in sort of a good

3     faith reexamination of your decision to -- that you could

4     possibly have given back to her client.  You're basically

5     saying we're done with our decision about giving it to other

6     people, we're actively recompeting them right now.  We just

7     won't sign the contract with someone else until September

8     1st.

9          MR. McELVAIN:  We won't make the decision, we won't

10    make the grant award.

11         THE COURT:  Okay.  And why are you doing that?

12    Because there is litigation?

13         MR. McELVAIN:  No, no.  Even apart from litigation.

14    That is just the process.  There are many steps that go along

15    the way of the agency reviewing applications, getting the

16    applications in, formulating the procedures in the first

17    place.  So we won't be in a position to have made evaluations

18    of all the potential grantees and make the decisions until

19    September 1st.

20         THE COURT:  September 1st is not really any

21    consideration of anything.  It is just the way that your

22    process works.

23         MR. McELVAIN:  Right.

24         THE COURT:  It is not you're giving them anything by

25    suddenly saying September 1st is available for you.  It

1     doesn't matter.  You couldn't do it before September 1st

2     anyway.

3             MR. McELVAIN:  The reason this comes up at all is

4     because the plaintiffs came in and said we need emergency

5     relief because for all we know the agency is going to turn

6     around tomorrow and obligate the funds.  That is a response

7     to plaintiffs' stated fears that there is an emergency right

8     now.

9             THE COURT:  Okay.

10            MR. McELVAIN:  Yeah.

11            THE COURT:  But you're saying that as a matter of

12    prejudice, even though we're not obligating the funds until

13    September 1st, the fact that we're planning to do so should

14    be sufficient grounds for this Court to prevent these

15    lawsuits from going forward about the funds that have not yet

16    been re-obligated?

17            MR. McELVAIN:  Yeah, the prejudice argument is not

18    that we would have to obligate the funds to the plaintiffs,

19    although certainly if September arrives and we have to do

20    that, that would be prejudicial.  The prejudice argument is

21    we have devoted a lot of resources in the agency, very busy

22    grant administration people who have devoted a lot of work to

23    developing recompetition and now have to do two very

24    resource-intensive, time-intensive things at the same time.

25    I refer the Court for more detail to our papers.

1          THE COURT:  You have to because you have chosen to.

2     You could just do this all over the next year cycle, right?

3     You could give them the money, the people who are currently

4     saying that they are entitled to it and do your process

5     through the fall for the next year?  You have chosen to

6     recompete the funds in this way; right?

7          MR. McELVAIN:  Correct.  And again, I don't want to

8     belabor points --

9          THE COURT:  Right.

10         MR. McELVAIN -- but the agency believes it is

11    lawfully doing so and it is within the lawful scope of its

12    discretion to do so.  So when that discretion is scaled back,

13    that is prejudice to the government, leaving aside the merits

14    question.  I'm hoping that we can disentangle the equitable

15    points from the merits points.

16         THE COURT:  When a discretion is scaled back, what do

17    you mean by that?

18         MR. McELVAIN:  If the agency believes it can lawfully

19    shorten the budgetary, or not renew the budget period because

20    it does not believe that is a termination, so it does not

21    believe --

22         THE COURT:  I know.  I appreciate your position, but

23    it is really strange to me.  You can't ignore a court order,

24    right?  In other words, you can't choose to pretend as though

25    it doesn't exist.  If you want to challenge it, challenge it.

1    But you have to negotiate your own way in the world in light

2    of the existence of these challenges.  And what's confusing

3    to me is the government's apparent choice in this case to

4    insist that it not only can proceed as though there hasn't

5    been a challenge to its decision to shorten the plaintiffs'

6    periods, but it can in fact stop those challenges on the

7    grounds that it has chosen to proceed to ignore the Court's

8    ruling.  It is like the most bizarre situation.

9         MR. McELVAIN:  I don't think so, Your Honor.  This

10    goes back to principles of administrative law that non-mutual

11    offensive collateral estoppel does not apply against the

12    government.

13         THE COURT:  And that means?

14         MR. McELVAIN:  So what that means is the Policy and

15    Research plaintiffs won, they got their order, we have to

16    comply with that order as to the plaintiffs, and we are

17    complying with that order.

18         THE COURT:  Correct.

19         MR. McELVAIN:  As to other plaintiffs, they cannot

20    rely on the force of that order by itself to claim relief

21    against the government.  They can bring their own lawsuit if

22    they do so on a timely basis in a way that the timing is not

23    prejudicial to the government.

24         THE COURT:  But the question is, yes, they can bring

25    their own lawsuits if the timing is not prejudicial to the

1    government.  Can the government make the argument that timing

2    is prejudicial to us because we would prefer to pretend as

3    though they're not challenged, there's no challenge, and we

4    are going forward as if these people don't have a claim?

5    Like that is the basis of your prejudice.  It is not like

6    we're prejudiced because we're doing something that is

7    independent of this entire thing and so now these lawsuits

8    coming in are a problem.  I hear the basis of your prejudice

9    being that you have chosen to continue recompeting the funds

10   and putting in the resources and whatever, and we don't want

11   these lawsuits because the fact that there are lawsuits

12   interferes with our, you know, ideal state, which is there is

13   no lawsuit.

14        You understand what I'm saying?  I'm not articulating

15   it clearly, but it is a bizarre thing to claim prejudice

16   based on the foreseeable actions that started way back when

17   and that continue to roll in and that the government has now

18   said you can bring such an action.  But apparently, you can't

19   bring such an action if we would like to recompete the funds

20   that you're challenging.

21        MR. McELVAIN:  Because of the timing, because timing

22   is running short.  So I do understand what you're saying and

23   I hope I can do a better job on briefing than I may be doing

24   right now in assuaging the Court's concern.

25        THE COURT:  I'm glad we had this conversation so

1      you'll know what you need to address.

2            Here is what I'm going to do:  I'm going to go back,

3      take a look at the schedule.  I understand the plaintiffs'

4      concerns.  They have concerns about timing, as well.  With

5      respect to the briefs that you have due on Wednesday, I'm not

6      going to do anything prior to that because I would like them

7      to come in.  But hopefully, I will be able to get some

8      clarity about the way forward and issue an order that tells

9      everybody what we're going to do in light of the briefing.

10     All right.

11           Does that make sense?

12           There's a lot of moving parts in a way that I had not

13     anticipated in these cases.  And so I need to go back and

14     think about what we have talked about.  But I will issue

15     orders that address either substantively or procedurally or

16     both how we're going to deal with this.  Okay?

17           MR. McELVAIN:  Thank you, Your Honor.

18           THE COURT:  Anything else from the plaintiffs?

19           MR. GORDON:  Do you want to hear from us about the

20     adequacy issue, Your Honor?

21           THE COURT:  Yes.  Thank you for reminding me.  He

22     left you out there, hung you out there to dry on that issue.

23           MR. GORDON:  Your Honor, Choctaw has not and does not

24     challenge adequacy.  Choctaw does not oppose a class

25     certification and, indeed, thinks that class certification

1    makes eminent good sense in this case.  All that Choctaw says

2    is, because of the urgency of the situation as we see it, we

3    would like the Court to rule on our case as soon as possible,

4    which will be necessarily before the Court would be in a

5    position to rule on the class action.

6           THE COURT:  Based on the briefing as we have it?

7           MR. GORDON:  Yes, Your Honor.

8           THE COURT:  What if I change the briefing schedule so

9    the class action moves up?  Would you then want to be

10   considered as part of it?

11          MR. GORDON:  Your Honor, we're briefed as of

12   Wednesday.  There is no way the Court is going to be -- maybe

13   I'm naive and I'm missing something here, Your Honor.  I

14   don't see any way the Court is going to be in a position as

15   of this Wednesday to rule on the class action.

16          THE COURT:  Well, the class action is fully briefed

17   now or not?

18          MR. SHERMAN:  Your Honor, the certification motion is

19   fully briefed.  The cross motions for summary judgment are in

20   the middle of briefing, Your Honor.

21          THE COURT:  All right.  So the question of class or

22   no apparently is pending, fully briefed right now.  What is

23   Choctaw's position?  You're worried about the merits

24   being --

25          MR. GORDON:  We want a merits decision as quickly as

1    possible.

2              THE COURT:  Yeah.

3              MR. GORDON:  And the way to do that is through our

4    case, which is fully briefed on everything as of Wednesday to

5    be ruled on before the Court will be in a position to reach

6    merits on the class action.

7              THE COURT:  Reach merits on the other case.  I think

8    I understand your position.

9              Can you entertain the following hypothetical?

10             MR. GORDON:  Yes, Your Honor.

11             THE COURT:  If the Court were to grant class action,

12   expedite the briefing on the underlying merits of the class

13   claims, and bring them within the same time frame as Choctaw

14   and perhaps even accelerate them because we're talking about

15   a lot of people rather than just you, would Choctaw want to

16   be a part of the class?

17             MR. GORDON:  What Your Honor has suggested is not

18   physically possible because the class action cannot be

19   brought within the same time frame that we already have.

20             THE COURT:  I don't understand the federal rules to

21   require me to rule on any particular thing before anything

22   else.  Right?

23             MR. GORDON:  Your Honor is in a position to say,

24   look, Mr. Gordon, I'm not going to rule on this for two weeks

25   anyway.  So guess what?  You're going to be part of the

1      class.  I understand that.

2            THE COURT:  And how would you feel about that?

3            MR. GORDON:  I would feel about that that our client

4      runs the risk of losing staff each day that goes by.  So I

5      would not be happy about that, because if we lost staff

6      between now and two weeks from now, I would feel bad about

7      that, Your Honor.  That's the concern I have.  There is no

8      other concern about the class.  I want to be completely clear

9      about that.

10           THE COURT:  You just want to get your client relief

11     as quickly as possible.

12           MR. GORDON:  That is exactly it, Your Honor.

13           If the Court would enter on Thursday the very order

14     that you entered in *Policy and Research, that would be fine.*

15     We prefer a June 30th deadline, but even without it, we

16     rather have an order from the court ASAP.

17           THE COURT:  Which I hear the class saying, too, but I

18     understood your position to be that, as well.

19           MR. GORDON:  Right.  But the Court won't be in a

20     position to do that for another week or two as to the class.

21     That's the distinction I have been trying to make.

22           THE COURT:  All right.  Mr. Sherman is jumping out of

23     his chair.

24           MR. SHERMAN:  Your Honor, the class motion can be

25     fully briefed within a few days.  We would be happy to file

1    our opposition and reply by Wednesday, at noon, and the

2    government, Your Honor -- if Your Honor ordered it, as I

3    said, the arguments are identical to the arguments that have

4    been briefed before, filed by Friday, the case can be fully

5    submitted on Friday.

6        THE COURT:  Let me double-check with the government.

7    What is your thought on the expedited briefing that has been

8    proposed?

9        MR. McELVAIN:  Assuming the premise that a class is

10   certified and Healthy Futures files their summary judgment

11   reply on May 23rd, our deadline would be May 30th, next

12   Wednesday, for our reply brief, which would be the final

13   brief in that case.  I would ask for the full seven days for

14   a few reasons.  I have a major brief due before Judge

15   Boasberg in this district on Thursday.  Because of Memorial

16   Day, I can't make representations as to how easy it will be

17   for me to consult with relevant agency personnel given it is

18   a holiday weekend.  We will have to figure out if our

19   briefing needs to discuss anything as to --

20       THE COURT:  Let me ask you, the current schedule as

21   it exists between the two of you, Mr. Sherman and

22   Mr. McElvain, the current schedule is your brief is due on

23   Wednesday.

24       MR. SHERMAN:  No, Your Honor.  Our brief is not due

25   on Wednesday, but we're happy to file it.  Our plan is to

1    file it by Wednesday in order to expedite briefing, and we

2    intend to do so regardless of Your Honor's order here.

3              THE COURT:  Then it would be one week --

4              MR. McELVAIN:  Correct.

5              THE COURT:  -- is the ordinary course of things --

6              MR. McELVAIN:  Correct.

7              THE COURT:  -- under these circumstances.

8              All right.  Where does that put it relative to

9    Choctaw?  Choctaw is already done; right?

10             MR. GORDON:  Is done as of this Wednesday.

11             THE COURT:  So we would be a week off of the full

12   briefing?

13             MR. GORDON:  Yes.

14             THE COURT:  Memorial Day Weekend.  And you would

15   expect me to work in that time.  This one week is a big deal

16   to you.

17             MR. GORDON:  We have asked the Court to issue the

18   ruling this week, before the holidays, so it would not be

19   hanging over the Court's head.

20             THE COURT:  I think I get the gist of it.  Let me go

21   back and look at the dates.  I'm likely to order the Healthy

22   Futures to get their brief in this Wednesday, and then the

23   government's brief will be due a week from then.  Whether or

24   not I can get to Choctaw before then, unclear.  But I don't

25   hear you necessarily indicating that if for some reason the

1      Choctaw ruling can't be made this week, you would not want to

2      be considered if I was considering the class action next

3      week; is that correct?

4              MR. GORDON:  Your Honor, that's correct.  Other than

5      the timing issue, there is no reason for us to object to

6      being part of the class.

7              THE COURT:  All right.  Thank you.

8              I will get something to you on the procedure, and

9      then we will go from there.

10              Anything else?

11              All right.  Thank you.

12              (Proceedings adjourned at 4:43 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                   CERTIFICATE OF OFFICIAL COURT REPORTER

2

3            I, Patricia A. Kaneshiro-Miller, certify that the

4       foregoing is a correct transcript from the record of

5       proceedings in the above-entitled matter.

6

7

8       /s/ Patricia A. Kaneshiro-Miller          May 23, 2018
        ----------------------------------    ---------------------
9       PATRICIA A. KANESHIRO-MILLER                   DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## /

**/s** [1] - 76:8

## 1

**10** [2] - 6:17, 19:17
**1001** [1] - 2:16
**11** [1] - 47:21
**1100** [1] - 2:6
**15th** [1] - 20:23
**16** [1] - 49:23
**1600** [1] - 2:13
**17th** [1] - 2:5
**18-1042** [3] - 1:14, 2:15, 3:6
**18-1053** [3] - 1:20, 2:8, 3:8
**18-922** [2] - 1:8, 2:12
**18-971** [3] - 1:4, 2:4, 3:4
**18-992** [1] - 3:5
**19th** [1] - 10:6
**1st** [9] - 61:18, 62:19, 64:2, 64:8, 64:19, 64:20, 64:25, 65:1, 65:13

## 2

**20** [1] - 2:20
**20001** [1] - 2:24
**20004** [1] - 2:17
**20006** [1] - 2:6
**20009** [1] - 2:14
**2010** [1] - 35:20
**2015** [2] - 34:11, 53:15
**2017** [7] - 5:20, 5:23, 6:1, 6:16, 20:9, 20:10, 34:9
**2018** [9] - 1:6, 20:12, 25:23, 34:9, 34:12, 34:14, 48:5, 53:17, 76:8
**202** [1] - 2:24
**20530** [1] - 2:21
**20th** [2] - 2:13, 10:7
**21** [1] - 1:6
**23** [3] - 34:13, 35:11, 76:8
**23rd** [7] - 21:5, 25:24, 59:10, 59:11, 60:1, 60:10, 73:11
**25th** [1] - 20:2
**2nd** [1] - 47:14

## 3

**300** [1] - 2:10

**30th** [25] - 7:3, 7:9, 15:19, 25:4, 27:18, 29:12, 30:10, 35:12, 35:18, 36:13, 36:14, 36:17, 40:21, 49:20, 50:2, 50:8, 53:17, 61:4, 61:9, 61:13, 61:15, 61:16, 62:19, 72:15, 73:11
**31st** [1] - 48:5
**333** [1] - 2:23
**354-3243** [1] - 2:24
**3:04** [1] - 3:2

## 4

**4700A** [1] - 2:23
**4:43** [1] - 75:12

## 5

**55487** [1] - 2:11
**59** [1] - 50:3

## 6

**60** [4] - 28:7, 36:16, 55:19, 56:1
**61** [5] - 43:17, 43:19, 44:5, 45:25, 57:21
**Action** [6] - 1:4, 1:8, 1:14, 1:20, 3:3, 3:5
**actions** [6] - 4:6, 16:17, 17:1, 17:4, 54:7, 68:16
**actively** [1] - 64:6
**acts** [2] - 21:21
**actual** [2] - 45:4, 45:14

## 8

**80** [2] - 43:11, 62:7
**800** [1] - 2:5

## A

**ability** [1] - 10:19
**able** [4] - 30:24, 35:21, 39:15, 69:7
**above-entitled** [1] - 76:5
**absent** [1] - 43:13
**absolutely** [6] - 11:4, 14:23, 31:13, 32:16, 41:23, 45:3
**accelerate** [1] - 71:14
**accept** [2] - 35:14, 35:15
**accepted** [6] - 22:13, 35:13, 35:15, 35:16, 49:12, 49:13
**access** [1] - 35:21
**accommodation** [1] - 16:16
**account** [1] - 50:3
**accuracy** [1] - 59:3
**acknowledge** [2] -

54:17, 60:6
**acquiescence** [4] - 58:15, 58:16, 58:18, 58:23
**Act** [1] - 40:20
**act** [3] - 41:6, 41:10, 50:7
**acted** [2] - 48:20, 54:25
**action** [54] - 11:1, 15:16, 16:3, 16:4, 16:19, 16:21, 17:7, 17:20, 17:23, 17:24, 17:25, 18:2, 18:5, 18:8, 18:16, 18:21, 19:1, 19:16, 19:18, 20:16, 20:17, 23:7, 23:11, 23:13, 25:18, 26:4, 36:25, 37:4, 37:12, 41:19, 41:22, 42:5, 43:9, 43:13, 43:18, 43:25, 44:2, 44:4, 46:7, 52:19, 55:1, 55:11, 55:15, 68:18, 68:19, 70:5, 70:9, 70:15, 70:16, 71:6, 71:11, 71:18, 75:2
**Action** [6] - 1:4, 1:8, 1:14, 1:20, 3:3, 3:5
**actions** [6] - 4:6, 16:17, 17:1, 17:4, 54:7, 68:16
**actively** [1] - 64:6
**acts** [2] - 21:21
**actual** [2] - 45:4, 45:14
**add** [1] - 23:20
**adding** [1] - 45:16
**addition** [1] - 13:15
**additional** [2] - 12:17, 33:19
**additionally** [1] - 48:19
**address** [8] - 19:11, 25:7, 48:3, 50:16, 51:25, 58:9, 69:1, 69:15
**addressed** [2] - 30:2, 49:7
**adequacy** [7] - 56:19, 56:21, 56:22, 56:24, 57:14, 69:20, 69:24
**adhere** [1] - 53:3
**adjourned** [1] - 75:12
**adjudication** [1] - 40:23
**administration** [13] -

20:13, 34:15, 34:22, 35:3, 35:4, 36:5, 47:9, 56:2, 59:13, 59:14, 59:21, 65:22
**administrative** [4] - 29:19, 29:20, 34:5, 67:10
**adopted** [1] - 45:22
**advance** [1] - 47:9
**adversely** [1] - 55:1
**advised** [1] - 20:11
**advocacy** [1] - 21:2
**affected** [1] - 55:2
**affirmed** [1] - 44:14
**afforded** [1] - 49:16
**afternoon** [15] - 3:13, 3:16, 3:17, 3:21, 3:24, 3:25, 4:3, 4:4, 4:8, 32:19, 32:20, 38:3, 38:4, 46:21, 46:22
**agencies** [1] - 43:3
**agency** [18] - 8:4, 8:13, 12:11, 15:22, 17:8, 18:12, 55:24, 56:1, 59:4, 61:16, 62:2, 63:7, 64:15, 65:5, 65:21, 66:10, 66:18, 73:17
**agency's** [2] - 16:1, 63:5
**agnostic** [3] - 23:5, 23:10, 49:3
**agree** [2] - 16:14, 16:15
**agreed** [5] - 42:1, 47:22, 48:18, 59:12, 63:1
**agreement** [4] - 7:5, 47:20, 48:4, 49:11
**agreements** [1] - 48:2
**ahead** [5] - 22:20, 31:18, 50:4, 60:18, 60:23
**aided** [1] - 2:25
**Airborne** [1] - 29:16
**al** [4] - 1:12, 1:18, 1:23, 3:6
**Alex** [1] - 3:4
**ALEX** [1] - 1:6
**allegations** [2] - 51:24, 61:2
**Allison** [2] - 2:12, 3:23
**allocate** [2] - 22:14, 61:16
**allow** [4] - 12:4, 22:18, 36:18, 48:3
**allowed** [5] - 12:11, 27:6, 33:6, 39:23,

47:19
**almost** [3] - 31:8, 52:3, 52:5
**alone** [3] - 24:20, 32:8, 40:24
**amount** [1] - 22:10
**ample** [2] - 12:9, 12:11
**analogy** [1] - 54:18
**analysis** [4] - 4:22, 12:14, 12:16, 13:1
**AND** [3] - 1:11, 1:17, 1:23
**Anders** [2] - 2:8, 3:19
**announced** [1] - 13:16
**announcement** [2] - 10:7, 10:8
**annoying** [1] - 26:17
**answer** [4] - 11:15, 18:17, 36:21, 41:15
**answered** [1] - 41:13
**anticipated** [1] - 69:13
**anyway** [4] - 9:16, 13:21, 65:2, 71:25
**APA** [1] - 8:20
**apart** [10] - 8:4, 11:7, 56:9, 57:12, 57:13, 57:15, 58:1, 62:12, 64:13
**apologize** [1] - 53:11
**apparent** [1] - 67:3
**appeal** [8] - 8:22, 8:23, 10:13, 10:15, 10:19, 11:14, 14:20, 34:5
**appealing** [1] - 41:19
**Appeals** [3] - 15:2, 16:8, 29:21
**appeals** [1] - 29:19, 29:20
**appearance** [1] - 3:11
**APPEARANCES** [1] - 2:3
**applaud** [2] - 20:25, 21:1
**apple** [1] - 25:19
**applicant** [1] - 35:19
**applicants** [1] - 40:5
**application** [15] - 27:4, 27:7, 27:18, 28:1, 35:12, 47:12, 47:13, 48:21, 49:4, 49:8, 49:14, 50:22, 55:22, 61:18
**applications** [14] - 13:14, 27:2, 27:12,

27:14, 36:12, 40:6, 40:8, 48:22, 50:5, 60:25, 62:17, 63:9, 64:15, 64:16

**applies** [1] - 54:19
**apply** [6] - 8:22, 8:24, 18:3, 29:3, 44:11, 67:11
**applying** [1] - 44:1
**appreciate** [1] - 66:22
**approach** [3] - 3:10, 4:19, 7:24
**approaching** [1] - 29:13
**appropriate** [4] - 33:7, 37:8, 42:23, 44:19
**appropriated** [2] - 28:24, 48:6
**appropriates** [2] - 21:18, 29:11
**Appropriations** [3] - 40:19, 47:8, 47:11
**appropriations** [2] - 48:23, 59:15
**April** [6] - 2:15, 3:25, 10:6, 10:7, 47:14
**arbitrary** [2] - 14:2, 41:11
**argued** [3] - 24:21, 36:15, 40:16
**arguing** [2] - 22:16, 57:7
**argument** [11] - 6:9, 33:23, 37:11, 39:20, 47:18, 48:16, 57:19, 62:24, 65:17, 65:20, 68:1
**arguments** [20] - 5:3, 5:6, 5:14, 5:19, 29:23, 29:25, 34:2, 37:7, 38:13, 38:16, 39:13, 42:2, 42:3, 48:9, 48:11, 56:6, 56:15, 73:3
**arise** [1] - 9:6
**arose** [4] - 18:16, 19:18, 56:17, 57:8
**arrives** [1] - 65:19
**articulating** [1] - 68:14
**ASAP** [1] - 72:16
**aside** [7] - 11:8, 29:10, 42:6, 42:7, 43:5, 43:9, 66:13
**aspect** [1] - 26:13
**aspects** [1] - 56:13
**assert** [1] - 56:15
**asserted** [1] - 5:2

**asserting** [1] - 12:24
**assuaging** [1] - 68:24
**assume** [3] - 18:18, 33:21, 57:18
**assumed** [2] - 24:11, 57:24
**assumes** [1] - 53:1
**assuming** [2] - 36:9, 73:9
**assumption** [1] - 62:5
**assurance** [1] - 25:21
**attempt** [3] - 16:23, 18:11, 34:3
**attempted** [1] - 44:7
**Attorney** [1] - 2:9
**Attorney's** [1] - 3:18
**attorneys** [1] - 25:12
**August** [3] - 34:6, 47:23, 48:5
**authority** [1] - 41:12
**availability** [1] - 36:20
**available** [6] - 6:24, 11:18, 12:12, 61:19, 62:10, 64:25
**Avenue** [3] - 2:16, 2:20, 2:23
**award** [5] - 5:23, 6:18, 15:21, 29:19, 64:10
**awarded** [2] - 34:10, 53:13
**awarding** [1] - 13:15
**awards** [3] - 7:6, 62:2, 62:18
**aware** [3] - 47:24, 58:1, 58:24
**AZAR** [1] - 1:6
**Azar** [1] - 3:4

**B**

**b)(2** [11] - 16:21, 17:24, 42:4, 54:12, 54:13, 54:22, 54:24, 56:9, 56:10, 56:15, 57:12
**bad** [1] - 72:6
**Baker** [2] - 2:4, 3:15
**Baker-Shenk** [2] - 2:4, 3:15
**balancing** [1] - 12:15
**based** [3] - 4:23, 68:16, 70:6
**bases** [1] - 57:23
**basic** [1] - 5:25
**basis** [15] - 7:21,

11:24, 12:3, 15:7, 15:8, 19:17, 21:7, 24:4, 28:13, 45:9, 45:11, 57:11, 67:22, 68:5, 68:8
**bear** [3] - 7:21, 14:15, 14:23
**became** [4] - 20:5, 25:24, 26:7, 36:4
**become** [1] - 31:6
**BEFORE** [1] - 2:1
**begin** [1] - 50:21
**beginning** [1] - 47:14
**begs** [1] - 18:4
**behalf** [7] - 3:14, 3:25, 4:5, 4:16, 23:1, 25:11, 43:18
**behind** [1] - 39:11
**belabor** [3] - 46:23, 54:10, 66:8
**believes** [4] - 8:5, 51:2, 66:10, 66:18
**benefit** [2] - 25:10, 51:18
**best** [1] - 51:7
**bet** [1] - 20:24
**better** [1] - 68:23
**betting** [1] - 34:23
**between** [6] - 5:20, 15:23, 39:16, 50:2, 72:6, 73:21
**beyond** [2] - 5:24, 10:17
**bid** [2] - 29:17, 61:24
**biding** [1] - 24:5
**bids** [1] - 61:22
**big** [1] - 74:15
**Bill** [2] - 47:8, 47:11
**bill** [1] - 34:16
**bit** [5] - 7:25, 24:19, 31:5, 33:12, 37:22
**bizarre** [2] - 67:8, 68:15
**blocking** [2] - 11:24, 11:25
**board** [1] - 34:19
**Boasberg** [1] - 73:15
**boat** [1] - 24:12
**bore** [1] - 61:10
**bottom** [3] - 5:18, 5:25, 32:15
**boy** [1] - 24:9
**Branch** [1] - 2:20
**brief** [19] - 12:20, 30:15, 38:11, 39:3, 40:19, 40:20, 46:24, 48:12, 51:19, 51:22, 51:25, 52:12, 73:12, 73:13, 73:14, 73:22, 73:24, 74:22, 74:23

**briefed** [12] - 30:14, 33:17, 38:8, 39:1, 46:10, 70:11, 70:16, 70:19, 70:22, 71:4, 72:25, 73:4
**briefing** [25] - 4:25, 5:5, 15:25, 31:6, 33:6, 40:17, 51:9, 51:17, 52:6, 52:9, 52:10, 58:2, 58:10, 58:12, 59:2, 68:23, 69:9, 70:6, 70:8, 70:20, 71:12, 73:7, 73:19, 74:1, 74:12
**briefs** [2] - 4:24, 69:5
**bring** [15] - 6:18, 6:19, 15:11, 15:16, 34:18, 35:7, 35:8, 36:6, 60:2, 60:24, 67:21, 67:24, 68:18, 68:19, 71:13
**bringing** [5] - 17:20, 19:16, 28:11, 29:14, 60:1
**brings** [2] - 17:24, 61:14
**brought** [22] - 7:22, 10:1, 17:1, 17:4, 17:7, 17:11, 18:15, 18:25, 28:2, 35:24, 37:4, 40:10, 40:12, 42:17, 43:18, 55:11, 55:12, 55:15, 60:2, 60:3, 60:21, 71:19
**budget** [2] - 35:17, 66:19
**budgetary** [1] - 66:19
**bunch** [1] - 35:7
**busy** [1] - 65:21

**C**

**C-2000** [1] - 2:10
**Califano** [1] - 44:11
**calm** [1] - 20:24
**cancel** [1] - 59:14
**cannot** [5] - 18:2, 27:11, 54:12, 67:19, 71:18
**capital** [1] - 35:8
**capricious** [2] - 14:2, 41:11
**capture** [1] - 54:3
**care** [1] - 9:15
**carve** [10] - 16:24, 16:25, 18:9, 18:21, 43:1, 44:6, 44:8, 54:15, 54:18, 54:20
**carve-out** [4] - 16:25,

18:9, 44:8, 54:20
**carved** [2] - 23:25, 43:2
**carving** [3] - 18:6, 55:3, 55:8
**case** [55] - 4:13, 5:1, 5:8, 5:15, 6:3, 7:5, 7:6, 16:21, 21:9, 24:2, 26:2, 28:2, 28:12, 29:3, 30:13, 30:21, 31:3, 31:18, 31:19, 33:2, 34:18, 36:17, 37:4, 37:5, 37:10, 37:25, 39:12, 39:21, 40:12, 40:17, 40:18, 42:17, 44:12, 44:14, 47:20, 48:7, 48:10, 48:11, 48:17, 52:5, 52:9, 52:12, 55:12, 58:12, 58:14, 61:10, 62:25, 67:3, 70:1, 70:3, 71:4, 71:7, 73:4, 73:13
**cases** [36] - 4:11, 4:21, 5:13, 6:25, 8:20, 11:2, 11:10, 12:20, 16:21, 23:24, 24:17, 26:6, 26:16, 29:16, 31:12, 32:25, 36:16, 39:17, 39:18, 41:6, 41:18, 42:3, 42:8, 42:10, 43:8, 44:15, 44:18, 44:19, 46:8, 47:20, 48:2, 51:9, 51:10, 51:16, 52:12, 69:13
**Center** [1] - 2:10
**certain** [3] - 7:7, 22:10, 59:9
**certainly** [5] - 6:11, 10:19, 19:6, 42:13, 65:19
**certainty** [5] - 28:16, 30:9, 31:25, 33:11
**CERTIFICATE** [1] - 76:1
**certification** [19] - 5:11, 11:2, 30:13, 31:4, 31:19, 33:3, 37:5, 38:7, 38:19, 39:1, 41:1, 42:18, 44:14, 56:8, 56:13, 56:14, 69:25, 70:18
**certified** [2] - 57:18, 73:10
**certify** [2] - 46:10, 76:3
**chair** [1] - 72:23
**challenge** [10] - 9:2, 9:15, 10:23, 13:24,

21:13, 66:25, 67:5, 68:3, 69:24
**challenged** [7] - 7:19, 8:22, 8:25, 9:5, 9:9, 15:2, 68:3
**challenges** [6] - 9:6, 9:12, 10:9, 22:12, 67:2, 67:6
**challenging** [4] - 18:13, 23:21, 56:11, 68:20
**change** [2] - 53:8, 70:8
**changed** [2] - 45:14, 54:11
**changes** [2] - 31:24, 45:15
**characterization** [1] - 35:25
**cheap** [1] - 25:14
**check** [1] - 73:6
**CHILD** [1] - 1:14
**Child** [4] - 3:6, 4:1, 47:3, 62:9
**CHOCTAW** [1] - 1:2
**Choctaw** [36] - 3:4, 3:14, 5:1, 5:5, 23:2, 23:23, 24:7, 24:19, 24:22, 25:11, 25:16, 26:2, 26:5, 26:25, 27:8, 27:16, 28:4, 28:17, 28:23, 31:9, 36:11, 39:12, 42:25, 52:8, 56:18, 57:1, 61:8, 69:23, 69:24, 70:1, 71:13, 71:15, 74:9, 74:24, 75:1
**Choctaw's** [3] - 32:22, 57:14, 70:23
**choice** [12] - 7:18, 8:5, 8:7, 8:14, 9:7, 11:12, 12:1, 12:8, 13:23, 13:25, 22:1, 67:3
**choices** [2] - 8:15, 12:12
**choose** [5] - 5:6, 7:18, 15:1, 18:11, 66:24
**chooses** [1] - 14:8
**chose** [3] - 5:7, 10:10, 50:7
**chosen** [7] - 9:20, 15:7, 59:17, 66:1, 66:5, 67:7, 68:9
**chunks** [1] - 25:20
**circle** [3] - 52:19, 55:23, 56:25
**circuit** [1] - 11:15
**circuits** [1] - 11:15

**circumstance** [1] - 11:22
**circumstances** [4] - 13:9, 25:6, 36:8, 74:7
**cite** [1] - 12:9
**cited** [1] - 58:12
**cites** [1] - 44:12
**CITIZEN** [1] - 2:13
**Citizen** [1] - 3:22
**Civil** [11] - 1:4, 1:8, 1:14, 1:20, 2:4, 2:8, 2:12, 2:15, 2:19, 3:3, 3:4
**claim** [12] - 7:2, 10:23, 13:6, 17:24, 29:5, 42:24, 43:1, 60:1, 60:4, 67:20, 68:4, 68:15
**claimed** [1] - 33:22
**claiming** [2] - 15:6, 29:1
**claims** [9] - 7:2, 7:19, 7:22, 9:11, 9:23, 13:16, 17:11, 28:11, 71:13
**clarity** [1] - 69:8
**class** [127] - 5:11, 11:1, 16:3, 16:4, 16:19, 16:22, 17:2, 17:5, 17:6, 17:7, 17:11, 17:13, 17:16, 17:20, 17:23, 17:24, 17:25, 18:2, 18:3, 18:5, 18:8, 18:15, 18:21, 18:23, 23:7, 23:10, 23:13, 23:15, 23:16, 23:17, 23:22, 30:12, 31:4, 31:18, 31:20, 32:7, 32:12, 32:14, 33:1, 33:2, 33:3, 33:4, 36:9, 36:23, 36:24, 36:25, 37:4, 37:5, 37:6, 37:8, 37:12, 38:6, 38:18, 38:25, 40:25, 41:19, 41:22, 42:4, 42:18, 42:21, 42:23, 42:24, 43:2, 43:13, 43:18, 44:2, 44:5, 44:13, 44:20, 45:9, 45:17, 45:20, 45:24, 46:6, 46:10, 46:11, 46:14, 46:17, 49:2, 49:3, 49:15, 52:19, 52:22, 52:25, 53:1, 53:21, 54:12, 54:23, 55:9, 55:11, 55:15, 56:5, 56:7, 56:10, 56:13, 56:14, 56:19, 56:24, 57:11, 57:13, 57:17,

57:24, 58:20, 69:24, 69:25, 70:5, 70:9, 70:15, 70:16, 70:21, 71:6, 71:11, 71:12, 71:16, 71:18, 72:1, 72:7, 72:12, 72:20, 72:24, 73:9, 75:2, 75:6
**clear** [11] - 11:5, 15:15, 21:3, 21:23, 25:24, 36:4, 54:11, 57:6, 59:20, 60:8, 72:8
**clearer** [1] - 26:7
**clearly** [3] - 29:6, 40:21, 68:15
**CLERK** [1] - 3:3
**client** [14] - 19:16, 23:1, 24:3, 25:9, 27:3, 33:10, 47:1, 47:11, 48:20, 49:18, 49:23, 64:4, 72:3, 72:10
**client's** [4] - 47:23, 49:4, 50:4, 50:25
**close** [1] - 39:18
**closer** [1] - 61:15
**co** [1] - 48:3
**co-plaintiffs** [1] - 48:3
**collapse** [1] - 30:21
**collateral** [2] - 11:11, 67:11
**colleague** [2] - 4:1, 56:18
**colliding** [1] - 24:10
**COLUMBIA** [1] - 1:1
**combine** [1] - 16:16
**combined** [1] - 51:10
**coming** [10] - 12:20, 17:19, 32:3, 33:16, 33:23, 39:3, 42:10, 61:1, 61:25, 68:8
**commonality** [1] - 56:12
**communicate** [1] - 36:19
**competed** [1] - 22:6
**complain** [1] - 9:6
**complaint** [2] - 33:15, 43:12
**complaints** [1] - 18:15
**complete** [2] - 27:17, 52:9
**completed** [1] - 29:20
**completely** [2] - 22:9, 72:8
**complicate** [1] - 56:16

**comply** [2] - 6:24, 67:16
**complying** [3] - 11:4, 11:5, 67:17
**computer** [1] - 2:25
**computer-aided** [1] - 2:25
**conceive** [1] - 17:3
**concepts** [1] - 24:10
**concern** [11] - 12:21, 15:20, 24:2, 31:9, 32:10, 49:15, 53:23, 61:13, 68:24, 72:7, 72:8
**concerned** [4] - 13:1, 37:23, 38:14, 60:14
**concerns** [2] - 69:4
**conference** [1] - 4:9
**conflicting** [1] - 11:13
**confused** [8] - 7:12, 28:9, 32:6, 41:4, 41:20, 60:16, 62:8
**confusing** [3] - 8:17, 41:16, 67:2
**Congress** [23] - 19:24, 19:25, 20:13, 20:14, 20:17, 21:18, 21:21, 24:23, 25:24, 28:19, 29:11, 34:14, 34:21, 35:2, 35:5, 59:16, 59:17, 59:24, 60:7, 60:9, 60:10
**Congress'** [2] - 47:10, 60:21
**congressional** [2] - 34:8, 34:25
**consider** [1] - 50:20
**consideration** [2] - 10:15, 64:21
**considered** [2] - 70:10, 75:2
**considering** [1] - 75:2
**consolidated** [2] - 42:11, 51:25
**consolidation** [7] - 16:14, 31:12, 31:20, 33:5, 36:9, 51:16, 52:17
**Constitution** [1] - 2:23
**constrained** [1] - 12:12
**consult** [2] - 59:4, 73:17
**contend** [1] - 28:13
**contending** [2] - 7:22, 21:8
**contends** [1] - 7:12

**contentions** [1] - 26:13
**context** [2] - 41:9, 41:22
**continuation** [7] - 5:23, 6:17, 7:6, 15:21, 45:19, 59:23, 61:4
**continue** [17] - 8:24, 9:1, 9:4, 10:22, 11:12, 11:21, 12:4, 22:19, 27:13, 34:10, 35:9, 47:10, 49:6, 60:25, 62:3, 68:9, 68:17
**continued** [1] - 49:25
**continuing** [8] - 7:16, 13:14, 25:19, 35:11, 47:12, 48:22, 49:22, 50:4
**contract** [1] - 64:7
**contrary** [1] - 58:17
**conversation** [2] - 32:21, 68:25
**convince** [1] - 34:19
**correct** [14] - 7:15, 37:2, 37:17, 37:20, 38:20, 39:6, 57:20, 66:7, 67:18, 74:4, 74:6, 75:3, 75:4, 76:4
**counsel** [5] - 3:10, 19:4, 25:13, 31:17, 38:13
**count** [1] - 59:18
**COUNTY** [1] - 1:20
**county** [1] - 34:19
**County** [13] - 2:9, 3:8, 3:18, 32:23, 32:24, 34:3, 36:1, 36:4, 37:13, 42:17, 58:22, 59:2, 60:13
**couple** [1] - 46:25
**course** [3] - 22:16, 53:3, 74:5
**COURT** [200] - 1:1, 3:16, 3:20, 3:24, 4:3, 4:8, 4:19, 5:9, 5:17, 6:4, 6:12, 7:11, 7:17, 8:13, 9:23, 10:3, 10:6, 10:18, 11:6, 11:20, 12:18, 12:22, 13:22, 14:15, 15:13, 16:3, 16:7, 16:14, 16:25, 17:10, 17:22, 18:4, 18:14, 18:19, 19:7, 19:12, 19:21, 19:24, 20:1, 20:4, 20:7, 20:19, 20:22, 21:7, 21:11, 22:16, 23:10, 23:14, 23:18, 23:21, 24:9, 24:16, 26:12, 26:22, 27:8, 27:22,

27:25, 28:18, 28:21,
28:23, 29:7, 29:10,
29:15, 29:24, 30:2,
30:21, 31:10, 31:15,
31:18, 31:22, 32:5,
32:12, 32:17, 32:21,
33:13, 33:19, 33:21,
34:23, 35:13, 35:22,
36:7, 36:23, 37:15,
37:18, 38:1, 38:4,
38:9, 38:17, 38:21,
38:23, 39:2, 39:9,
39:19, 39:23, 40:14,
40:25, 41:3, 41:24,
42:9, 42:15, 43:6,
43:16, 43:19, 43:21,
44:5, 44:21, 44:25,
45:8, 45:12, 46:1,
46:18, 46:20, 46:22,
47:2, 47:6, 47:24,
48:8, 48:15, 49:1,
49:11, 49:20, 50:10,
50:13, 50:24, 51:3,
51:5, 51:13, 51:18,
52:3, 52:14, 52:23,
53:6, 53:10, 53:12,
53:24, 54:8, 54:21,
55:7, 55:17, 56:5,
56:11, 56:21, 56:25,
57:3, 57:9, 57:17,
57:21, 58:3, 58:7,
58:13, 58:20, 59:6,
59:18, 60:5, 61:7,
62:5, 62:16, 62:23,
63:10, 63:17, 63:20,
63:24, 64:1, 64:11,
64:20, 64:24, 65:9,
65:11, 66:1, 66:9,
66:16, 66:22, 67:13,
67:18, 67:24, 68:25,
69:18, 69:21, 70:6,
70:8, 70:16, 70:21,
71:2, 71:7, 71:11,
71:20, 72:2, 72:10,
72:17, 72:22, 73:6,
73:20, 74:3, 74:5,
74:7, 74:11, 74:14,
74:20, 75:7, 76:1

**Court** [46] - 2:22, 5:7,
8:1, 11:3, 11:13,
12:10, 14:3, 15:2,
16:8, 19:21, 21:23,
22:24, 23:3, 26:7,
26:8, 27:16, 27:20,
27:24, 29:21, 30:2,
30:7, 30:11, 31:8,
31:25, 32:16, 37:23,
39:1, 43:8, 44:12,
44:14, 50:6, 50:9,
50:23, 59:1, 60:22,
65:14, 65:25, 70:3,

70:4, 70:12, 70:14,
71:5, 71:11, 72:13,
72:19, 74:17
**court** [9] - 7:20, 9:5,
9:11, 14:1, 28:7,
44:16, 44:17, 66:23,
72:16
**Court's** [11] - 4:11,
6:2, 6:24, 14:14,
24:24, 27:11, 30:18,
58:8, 67:7, 68:24,
74:19
**Courthouse** [1] -
2:23
**cover** [1] - 23:8
**covered** [1] - 23:14
**created** [2] - 14:24,
17:19
**creates** [2] - 55:15,
58:18
**cross** [5] - 30:15,
39:4, 52:13, 52:14,
70:19
**CROWELL** [1] - 2:16
**CRR** [1] - 2:22
**current** [2] - 73:20,
73:22
**cut** [3] - 25:5, 25:19,
39:16
**cutoff** [1] - 15:19
**cycle** [1] - 66:2

# D

**D.C** [1] - 1:5
**Dan** [1] - 3:17
**Daniel** [1] - 2:7
**date** [5] - 7:6, 30:18,
35:11, 36:17, 55:25
**DATE** [1] - 76:9
**dates** [1] - 74:21
**days** [8] - 20:2, 28:7,
36:16, 50:3, 55:19,
56:1, 72:25, 73:13
**DC** [5] - 2:6, 2:14,
2:17, 2:21, 2:24
**de** [1] - 17:1
**deadline** [6] - 27:23,
27:24, 29:12, 30:7,
72:15, 73:11
**deadlines** [2] -
28:12, 29:17
**deal** [8] - 4:12, 4:15,
37:8, 50:16, 54:18,
60:7, 69:16, 74:15
**dealing** [1] - 46:8
**decide** [2] - 14:20,
26:10
**decided** [6] - 10:3,
12:1, 14:1, 20:20,

20:24, 33:2
**decides** [1] - 21:25
**deciding** [1] - 15:4
**decision** [20] - 7:8,
9:4, 11:23, 14:3, 16:2,
17:8, 31:8, 40:10,
40:13, 41:12, 42:7,
44:17, 47:10, 50:22,
54:13, 64:3, 64:5,
64:9, 67:5, 70:25
**decision-making** [1]
- 41:12
**decisions** [1] - 64:18
**Defendant** [1] - 1:7
**defendant** [3] - 4:17,
19:15, 24:21
**Defendants** [4] -
1:13, 1:19, 1:24, 2:18
**defendants** [2] - 4:6,
48:4
**defense** [5] - 5:2,
12:24, 14:21, 39:24,
39:25
**define** [1] - 17:10
**defines** [1] - 17:7
**defining** [1] - 55:9
**definite** [1] - 56:1
**definition** [11] -
44:20, 45:14, 45:17,
45:20, 45:22, 46:3,
52:22, 52:25, 53:1,
56:5, 57:13
**definitive** [1] - 11:15
**delay** [19] - 6:14,
6:15, 7:11, 16:2,
19:14, 21:8, 26:8,
28:25, 29:9, 31:21,
31:22, 33:25, 39:16,
40:1, 40:12, 40:24,
48:20, 58:18, 60:20
**delayed** [1] - 19:16
**delegation** [2] - 34:8,
34:11
**demand** [1] - 28:7
**demanding** [1] -
29:18
**Democratic** [1] -
35:4
**denied** [1] - 42:18
**Dennis** [2] - 2:15, 4:2
**Department** [8] - 3:5,
3:7, 3:8, 4:5, 4:7,
10:16, 25:9, 53:14
**DEPARTMENT** [4] -
1:11, 1:17, 1:23, 2:19
**dependent** [2] -
20:15, 20:17
**DEPUTY** [1] - 3:3
**derives** [1] - 6:15
**describe** [1] - 36:1

**described** [1] - 35:16
**designated** [1] -
60:11
**detail** [1] - 65:25
**determination** [1] -
27:15
**developing** [4] -
61:21, 61:22, 61:23,
65:23
**devote** [1] - 13:13
**devoted** [4] - 61:20,
63:7, 65:21, 65:22
**devoting** [1] - 62:3
**difference** [1] - 28:3
**differences** [2] -
42:2, 42:3
**different** [16] - 4:21,
5:12, 10:2, 13:8,
18:20, 22:4, 22:5,
24:10, 24:17, 30:5,
32:24, 33:7, 37:22,
43:1, 43:11, 57:24
**differently** [2] - 7:23,
63:5
**difficult** [2] - 7:25,
45:23
**difficulty** [1] - 59:25
**dilemma** [6] - 17:17,
17:19, 44:23, 55:4,
55:7, 57:10
**directed** [2] - 59:24,
60:9
**direction** [1] - 15:8
**directly** [1] - 44:12
**disaggregate** [1] -
7:24
**disaggregating** [1] -
13:23
**disagree** [6] - 13:22,
31:10, 31:20, 45:15,
45:22, 57:9
**disagreement** [1] -
53:4
**disconnect** [1] - 40:2
**discretion** [4] -
11:18, 66:12, 66:16
**discuss** [4] - 4:10,
51:6, 55:17, 73:19
**discussed** [2] - 55:4,
56:16
**discussion** [3] -
17:19, 19:13, 57:5
**disentangle** [1] -
66:14
**dismiss** [4] - 9:23,
51:11, 61:10, 63:12
**dismissed** [3] -
10:24, 29:6, 33:15
**dispute** [5] - 9:14,
9:16, 14:6, 15:23,

60:2
**disputes** [1] - 4:12
**distinction** [3] -
37:24, 41:17, 72:21
**distinctions** [1] -
4:14
**distinguish** [1] -
37:14
**distribute** [1] - 22:14
**DISTRICT** [3] - 1:1,
1:1, 2:2
**district** [2] - 44:17,
73:15
**districts** [1] - 44:16
**divided** [1] - 62:7
**Division** [1] - 2:19
**Docket** [1] - 47:21
**dollars** [2] - 23:4,
26:2
**done** [13] - 4:25, 8:6,
15:4, 34:20, 35:19,
39:20, 43:7, 43:22,
52:3, 52:5, 64:5, 74:9,
74:10
**double** [1] - 73:6
**double-check** [1] -
73:6
**doubt** [2] - 59:3,
59:12
**down** [4] - 9:2, 15:3,
31:14, 33:23
**dragging** [1] - 58:9
**drawing** [1] - 32:8
**dropping** [1] - 52:2
**dry** [1] - 69:22
**due** [10] - 30:16,
40:6, 40:19, 40:20,
48:12, 69:5, 73:14,
73:22, 73:24, 74:23
**Dukes** [12] - 16:21,
16:23, 18:1, 18:11,
18:14, 18:21, 19:1,
44:10, 54:11, 54:17,
54:19
**during** [2] - 59:21,
60:25

# E

**e)(2** [2] - 44:13,
44:20
**earliest** [1] - 30:17
**early** [1] - 28:2
**ears** [1] - 16:18
**easier** [1] - 24:14
**easy** [3] - 19:8,
25:14, 73:16
**effective** [2] - 15:18,
53:16
**efficient** [1] - 51:2

**efficiently** [1] - 46:4
**either** [6] - 9:8, 32:1, 44:25, 48:9, 50:5, 69:15
**elapsed** [1] - 10:18
**element** [2] - 6:21, 7:13
**elements** [1] - 13:9
**eliminate** [1] - 46:16
**elsewhere** [1] - 14:21
**emergency** [3] - 15:17, 65:4, 65:7
**eminent** [1] - 70:1
**eminently** [1] - 25:12
**employees** [1] - 49:24
**end** [9] - 20:12, 21:19, 21:25, 22:6, 24:8, 40:6, 47:23, 56:20, 61:15
**ended** [1] - 35:17
**ending** [1] - 35:18
**energy** [1] - 35:8
**engage** [1] - 8:5
**enlighten** [1] - 32:23
**ensure** [1] - 61:12
**enter** [2] - 30:8, 72:13
**entered** [5] - 11:3, 11:8, 11:13, 48:1, 72:14
**entertain** [1] - 71:9
**entire** [3] - 18:3, 46:14, 68:7
**entities** [2] - 45:6, 53:13
**entitled** [6] - 15:6, 29:1, 36:6, 41:6, 66:4, 76:5
**equally** [1] - 55:2
**equitable** [4] - 12:14, 12:15, 39:25, 66:14
**especially** [2] - 28:25, 60:12
**Esq** [11] - 2:4, 2:4, 2:7, 2:8, 2:8, 2:12, 2:12, 2:15, 2:15, 2:18, 2:18
**essentially** [2] - 5:4, 41:10
**estoppel** [2] - 11:11, 67:11
**et** [4] - 1:12, 1:18, 1:23, 3:6
**evaluate** [3] - 24:16, 26:17, 28:4
**evaluating** [1] - 26:6
**evaluations** [1] - 64:17

**event** [1] - 42:17
**events** [1] - 35:24
**eventually** [1] - 51:10
**exact** [2] - 37:11, 43:4
**exactly** [2] - 38:18, 72:12
**example** [2] - 39:15, 57:10
**except** [1] - 27:23
**exclude** [1] - 17:11
**excluded** [3] - 44:15, 44:19, 45:4
**excluding** [2] - 18:7, 45:5
**exclusion** [3] - 53:18, 54:5, 54:6
**exclusions** [2] - 54:22
**excuse** [1] - 27:12
**exercise** [2] - 12:1, 41:11
**exist** [4] - 9:12, 17:3, 18:25, 66:25
**existed** [2] - 14:4, 60:17
**existence** [2] - 17:5, 67:2
**existing** [3] - 22:3, 23:8, 62:7
**exists** [1] - 73:21
**expect** [2] - 39:7, 74:15
**expedite** [3] - 30:19, 71:12, 74:1
**expedited** [5] - 8:23, 26:19, 33:9, 50:15, 73:7
**expedition** [1] - 32:11
**experience** [3] - 8:19, 8:24, 43:6
**expiring** [1] - 15:18
**express** [1] - 54:22
**expressed** [1] - 8:3
**extent** [5] - 10:21, 23:7, 28:6, 37:22, 43:8
**extra** [1] - 50:17

**F**

**face** [1] - 15:19
**facing** [1] - 24:3
**fact** [14] - 8:18, 9:15, 14:20, 15:7, 15:21, 17:10, 26:5, 37:13, 40:17, 55:13, 59:9, 65:13, 67:6, 68:11

**facto** [1] - 17:1
**factors** [2] - 12:15, 50:17
**facts** [1] - 59:5
**factual** [2] - 51:24, 55:24
**fair** [5] - 9:25, 16:11, 22:22, 35:25, 36:4
**fairly** [2] - 21:16, 46:24
**faith** [1] - 64:3
**fall** [2] - 34:9, 66:5
**falls** [1] - 16:1
**Family** [4] - 3:6, 4:1, 47:3, 62:9
**FAMILY** [1] - 1:14
**far** [8] - 4:24, 5:22, 12:25, 38:10, 42:8, 45:23, 51:9, 51:21
**fast** [4] - 15:3, 33:10, 36:21, 49:17
**faster** [3] - 28:8, 32:12, 49:17
**fastest** [1] - 50:14
**fault** [1] - 28:15
**favor** [2] - 11:3, 11:9
**favorable** [2] - 6:20, 55:14
**fears** [1] - 65:7
**February** [3] - 20:23, 55:12, 61:6
**federal** [6] - 9:11, 11:11, 14:1, 25:15, 34:20, 71:20
**Federal** [1] - 2:20
**few** [4] - 10:12, 28:14, 72:25, 73:14
**fight** [1] - 26:9
**fighting** [3] - 25:18, 26:3, 26:10
**figure** [4] - 4:14, 6:5, 38:17, 73:18
**file** [11] - 25:14, 35:11, 38:15, 39:4, 46:11, 51:10, 52:8, 52:11, 72:25, 73:25, 74:1
**filed** [21] - 4:24, 20:2, 20:25, 21:5, 27:4, 32:25, 34:5, 35:12, 35:18, 37:3, 37:10, 38:6, 38:11, 38:18, 40:20, 47:15, 50:10, 51:9, 52:13, 52:14, 73:4
**files** [2] - 25:16, 73:10
**filing** [3] - 5:21, 50:2, 51:21
**final** [4] - 20:6,

**facto** column continues:
**finally** [2] - 19:25, 25:21
**fine** [8] - 10:18, 22:19, 25:19, 49:18, 51:14, 53:7, 61:13, 72:14
**finished** [1] - 16:9
**first** [16] - 7:6, 10:13, 15:10, 15:13, 17:21, 17:23, 19:11, 20:17, 27:3, 29:5, 34:3, 51:8, 52:5, 52:24, 55:12, 64:16
**firstly** [1] - 7:2
**fiscal** [2] - 21:19, 21:20, 22:6, 25:23, 34:14, 61:15
**five** [1] - 53:15
**five-year** [1] - 53:15
**flexibility** [1] - 36:19
**flipped** [1] - 35:3
**folks** [1] - 35:20
**following** [1] - 71:9
**follows** [1] - 18:1
**FOR** [1] - 1:1
**force** [2] - 44:3, 67:20
**forcefully** [1] - 57:6
**foregoing** [1] - 76:4
**foreseeable** [1] - 68:16
**formulating** [1] - 64:16
**forth** [1] - 22:23
**forthcoming** [2] - 30:10, 32:2
**forward** [7] - 20:20, 23:1, 23:6, 48:17, 65:15, 68:4, 69:8
**four** [12] - 4:6, 4:11, 4:21, 5:13, 16:17, 20:21, 20:22, 21:22, 22:8, 22:9, 51:5, 51:10
**fraction** [1] - 22:11
**frame** [3] - 48:21, 71:13, 71:19
**frankly** [2] - 8:17, 26:17
**free** [1] - 25:8
**Friday** [3] - 39:16, 73:4, 73:5
**front** [1] - 17:21
**full** [5] - 27:6, 50:3, 57:4, 73:13, 74:11
**fully** [14] - 30:14, 34:14, 34:22, 38:7, 39:1, 39:3, 46:10, 46:15, 70:16, 70:19,

**next column:**
30:24, 58:5, 73:12
**finally** [2] - 19:25, 25:21

70:22, 71:4, 72:25, 73:4
**functionally** [2] - 18:10, 54:16
**fund** [3] - 34:22, 48:6, 50:23
**fundamental** [1] - 15:23
**funded** [2] - 19:25, 34:14
**funding** [34] - 9:9, 10:7, 10:8, 20:12, 20:15, 20:18, 20:25, 21:3, 21:4, 24:4, 25:3, 25:20, 28:17, 28:19, 32:2, 33:12, 34:11, 34:17, 35:6, 35:10, 36:20, 40:5, 47:10, 49:5, 49:22, 49:25, 59:9, 59:12, 59:14, 59:22, 59:23, 60:8, 60:11, 60:21
**funds** [47] - 6:23, 7:18, 9:1, 9:4, 10:4, 11:8, 11:22, 12:3, 13:4, 13:5, 13:15, 13:25, 14:1, 14:9, 14:13, 14:16, 14:18, 15:1, 15:7, 21:14, 21:18, 22:14, 22:20, 23:3, 23:6, 23:9, 30:10, 36:5, 47:19, 47:22, 48:25, 61:16, 61:17, 63:1, 63:4, 63:13, 63:14, 63:21, 64:2, 65:6, 65:12, 65:15, 65:18, 66:6, 68:9, 68:19
**future** [5] - 7:22, 9:6, 11:16, 11:25, 63:2
**FUTURES** [1] - 1:8
**Futures** [6] - 3:5, 3:23, 5:9, 52:10, 73:10, 74:22
**FY** [1] - 34:12

**G**

**gain** [1] - 15:17
**game** [1] - 14:5
**gearing** [1] - 63:13
**general** [1] - 21:19
**Gerardi** [3] - 2:18, 4:7, 16:5
**Ginger** [2] - 2:8, 3:19
**gist** [1] - 74:20
**given** [11] - 14:20, 38:12, 39:12, 55:21, 56:17, 57:14, 59:8, 59:24, 63:11, 64:4,

73:17
**glad** [1] - 68:25
**gordon** [1] - 34:17
**GORDON** [57] - 3:13,
19:10, 19:20, 19:22,
19:25, 20:2, 20:5,
20:10, 20:21, 20:23,
21:10, 21:15, 22:21,
23:12, 23:16, 23:19,
23:23, 24:15, 25:7,
26:21, 27:3, 27:19,
27:23, 28:16, 28:20,
28:22, 29:4, 29:8,
29:14, 29:16, 30:1,
30:6, 31:1, 31:13,
31:16, 31:21, 31:23,
32:10, 32:15, 37:17,
37:20, 69:19, 69:23,
70:7, 70:11, 70:25,
71:3, 71:10, 71:17,
71:23, 72:3, 72:12,
72:19, 74:10, 74:13,
74:17, 75:4
**Gordon** [6] - 2:4,
3:14, 19:9, 32:22,
34:2, 71:24
**government** [95] -
5:1, 6:8, 6:14, 6:22,
7:12, 7:13, 7:17, 8:18,
8:19, 10:8, 10:22,
11:9, 11:11, 11:21,
11:24, 12:13, 12:23,
13:3, 13:5, 13:6,
13:13, 13:20, 13:22,
14:7, 14:8, 14:12,
14:24, 16:20, 19:13,
20:11, 21:11, 21:16,
21:23, 21:25, 22:13,
22:16, 22:24, 25:15,
27:1, 27:17, 28:1,
28:8, 28:11, 28:25,
29:4, 29:9, 33:6, 34:7,
34:20, 36:12, 36:15,
37:7, 39:10, 39:14,
39:19, 40:4, 40:9,
40:16, 40:18, 40:21,
41:19, 42:1, 42:5,
43:9, 43:22, 43:24,
44:3, 44:6, 44:12,
44:22, 45:1, 45:8,
46:11, 47:21, 48:17,
50:7, 51:19, 54:25,
55:18, 56:6, 56:7,
58:16, 58:19, 61:25,
66:13, 67:12, 67:21,
67:23, 68:1, 68:17,
73:2, 73:6
**Government** [1] -
2:10
**government's** [15] -

4:20, 19:3, 22:13,
26:25, 30:15, 31:11,
33:14, 39:4, 41:5,
41:11, 45:22, 47:18,
54:21, 67:3, 74:23
**governmental** [1] -
55:1
**grant** [12] - 22:15,
23:3, 23:6, 27:12,
46:14, 48:7, 53:5,
56:2, 61:18, 64:10,
65:22, 71:11
**granted** [1] - 41:21
**grantee** [1] - 45:21
**grantees** [11] -
20:11, 21:17, 22:3,
22:10, 22:12, 36:19,
43:17, 45:18, 45:25,
54:16, 64:18
**grants** [14] - 10:10,
14:3, 14:6, 14:22,
20:15, 23:8, 34:10,
42:6, 45:19, 47:13,
47:23, 53:14, 53:15,
60:12
**grounds** [4] - 56:12,
63:12, 65:14, 67:7
**group** [2] - 24:17,
25:10
**Group** [1] - 3:22
**GROUP** [1] - 2:13
**guess** [8] - 9:11,
43:21, 50:13, 52:21,
60:16, 60:22, 62:8,
71:25
**Gull** [1] - 29:16

## H

**half** [1] - 29:18
**halfway** [1] - 52:10
**hanging** [1] - 74:19
**happy** [6] - 16:6,
33:1, 33:5, 37:14,
51:12, 72:5, 72:25,
73:25
**hard** [1] - 40:2
**hardly** [3] - 22:25,
26:8, 40:23
**harm** [7] - 24:3, 25:1,
25:5, 26:23, 28:14,
61:2, 61:4
**harmed** [1] - 12:7
**haste** [1] - 50:7
**hasten** [1] - 23:20
**head** [2] - 52:18,
74:19
**Health** [4] - 3:6, 3:7,
3:9, 53:14
**HEALTH** [3] - 1:11,

1:17, 1:23
**Healthy** [6] - 3:5,
3:22, 5:9, 52:9, 73:10,
74:21
**HEALTHY** [1] - 1:8
**hear** [6] - 9:3, 57:3,
68:8, 69:19, 72:17,
74:25
**heard** [1] - 32:21
**HEARING** [1] - 2:1
**hearing** [3] - 6:7,
6:11, 57:4
**heart** [1] - 26:20
**Heimann** [1] - 58:11
**held** [2] - 16:23, 18:1
**help** [1] - 41:21
**helpful** [1] - 6:4
**Hennepin** [14] - 2:9,
3:8, 3:18, 32:23,
32:24, 34:3, 36:1,
36:4, 37:13, 42:16,
58:22, 59:2, 60:13,
61:17
**HENNEPIN** [1] - 1:20
**herring** [1] - 59:10
**hesitancy** [1] - 57:3
**HHS** [8] - 5:22, 7:10,
15:21, 27:5, 34:10,
53:2, 53:15, 53:18
**history** [1] - 47:8
**hold** [3] - 8:11,
59:22, 60:19
**holiday** [1] - 73:18
**holidays** [1] - 74:18
**HOLLAND** [1] - 2:5
**Holschuh** [2] - 2:8,
3:19
**Honor** [91] - 3:3,
3:13, 3:17, 3:21, 4:4,
4:18, 5:4, 7:24, 19:6,
19:10, 19:11, 19:22,
21:10, 22:22, 23:12,
23:23, 27:19, 28:16,
29:14, 31:21, 32:10,
33:18, 34:13, 36:15,
37:2, 37:20, 38:3,
38:5, 38:8, 38:14,
38:20, 38:22, 39:7,
39:12, 39:14, 39:17,
39:22, 39:25, 40:3,
40:6, 40:11, 40:13,
40:15, 40:18, 40:24,
41:23, 41:25, 42:7,
42:13, 42:17, 42:21,
43:1, 43:3, 43:14,
43:18, 44:4, 44:8,
44:11, 44:24, 45:3,
45:7, 45:10, 45:13,
45:25, 46:9, 46:10,
46:13, 46:21, 50:8,

50:19, 51:2, 67:9,
69:17, 69:20, 69:23,
70:7, 70:11, 70:13,
70:18, 70:20, 71:10,
71:17, 71:23, 72:7,
72:12, 72:24, 73:2,
73:24, 75:4
**Honor's** [1] - 74:2
**HONORABLE** [1] -
2:1
**hope** [3] - 8:1, 34:21,
68:23
**hopefully** [1] - 69:7
**hopes** [1] - 4:10
**hoping** [1] - 66:14
**horns** [3] - 17:17,
44:23, 57:9
**House** [1] - 34:16
**Human** [4] - 3:6, 3:7,
3:9, 53:14
**HUMAN** [3] - 1:12,
1:18, 1:23
**hung** [1] - 69:22
**hypothetical** [1] -
71:9

## I

**i.e** [1] - 26:1
**idea** [1] - 40:9
**ideal** [1] - 68:12
**identical** [4] - 5:3,
27:20, 42:22, 73:3
**identify** [1] - 45:24
**ignore** [2] - 66:23,
67:7
**II** [1] - 1:6
**imagine** [1] - 52:1
**immediately** [1] -
46:14
**implication** [1] -
14:11
**imploring** [1] - 34:9
**important** [4] -
16:20, 28:17, 49:23,
50:1
**imposed** [1] - 46:2
**impress** [1] - 30:11
**impression** [3] -
58:15, 58:17, 58:23
**imprimatur** [1] - 32:1
**Inc** [2] - 3:7, 4:1
**INC** [1] - 1:14
**included** [1] - 37:6
**including** [1] - 21:22
**inclusion** [1] - 23:22
**incompatible** [1] -
55:3
**inconsistent** [1] -
22:9

**indeed** [3] - 22:21,
44:21, 69:25
**independent** [1] -
68:7
**indicated** [2] - 38:13,
42:20
**indicating** [2] - 14:2,
74:25
**individual** [2] -
49:17, 58:21
**inexpensive** [1] -
25:14
**inflicted** [1] - 12:5
**initial** [3] - 10:25,
29:18, 61:3
**inject** [1] - 45:17
**injunction** [19] -
24:25, 26:13, 26:24,
30:20, 30:22, 30:25,
32:1, 33:8, 37:3, 42:5,
43:24, 46:6, 46:13,
50:6, 50:11, 50:15,
50:18, 50:21, 51:8
**injunctive** [1] -
27:11, 31:23
**injury** [1] - 12:13
**insist** [1] - 67:4
**insisted** [1] - 43:22
**insofar** [4] - 8:13,
19:13, 23:5, 30:5
**instance** [2] - 17:21,
20:17
**instantaneous** [1] -
7:9
**instruction** [1] - 50:6
**intend** [2] - 45:19,
74:2
**intends** [1] - 39:20
**intensive** [3] - 56:3,
65:24
**intention** [1] - 60:8
**interest** [4] - 25:10,
49:4, 49:18, 50:25
**interested** [4] -
11:23, 19:2, 32:15,
49:1
**interesting** [2] -
8:16, 21:15
**interfere** [3] - 44:18,
45:1, 55:5
**interferes** [1] - 68:12
**interim** [1] - 11:17
**internally** [1] - 24:13
**interrupt** [1] - 63:16
**interruption** [1] -
49:23
**involve** [1] - 4:21
**involving** [1] - 63:8
**irreparable** [5] -
24:3, 25:1, 25:5,

26:23, 28:13
**issue** [21] - 4:13,
5:23, 6:5, 8:6, 16:19,
30:13, 34:25, 40:4,
41:18, 45:4, 55:13,
56:17, 56:19, 56:24,
57:14, 69:8, 69:14,
69:20, 69:22, 74:17,
75:5
**issued** [2] - 13:3,
27:21
**issues** [8] - 33:7,
37:13, 40:22, 47:4,
49:7, 50:23, 57:13,
57:15
**itself** [4] - 22:25,
27:6, 37:23, 67:20

## J

**JACKSON** [1] - 2:1
**jammed** [1] - 15:22
**job** [3] - 24:7, 32:3,
68:23
**Joel** [2] - 2:18, 4:4
**Joseph** [1] - 2:18
**Judge** [2] - 13:3,
73:14
**JUDGE** [1] - 2:2
**judgment** [19] - 11:2,
11:4, 11:5, 26:20,
30:19, 32:2, 33:9,
38:11, 38:19, 38:24,
39:3, 46:6, 46:13,
46:14, 50:16, 50:23,
51:11, 70:19, 73:10
**judicial** [1] - 51:1
**July** [9] - 5:20, 5:23,
6:1, 6:16, 20:9, 20:10,
34:5, 59:11, 60:15
**jumping** [1] - 72:22
**June** [22] - 7:3, 7:9,
15:19, 20:12, 24:8,
25:4, 27:18, 29:12,
30:10, 35:18, 36:13,
36:14, 36:17, 40:7,
49:20, 50:2, 50:8,
53:17, 61:4, 61:9,
61:13, 72:15
**Justice** [4] - 4:5, 4:7,
10:16, 25:9
**JUSTICE** [1] - 2:19

## K

**Kaneshiro** [2] - 76:3,
76:8
**KANESHIRO** [2] -
2:22, 76:9
**Kaneshiro-Miller** [2]

- 76:3, 76:8
**KANESHIRO-
MILLER** [2] - 2:22,
76:9
**keep** [5] - 13:23,
23:3, 46:24, 53:24
**KETANJI** [1] - 2:1
**KNIGHT** [1] - 2:5
**knows** [2] - 26:9,
34:13
**kudos** [1] - 60:17

## L

**laches** [26] - 5:2,
5:10, 5:19, 6:8, 7:14,
9:24, 12:15, 12:24,
13:7, 13:8, 13:19,
17:18, 19:12, 19:14,
29:5, 29:6, 33:15,
33:22, 37:21, 39:20,
47:7, 47:17, 48:10,
57:19, 58:5, 61:13
**laid** [1] - 39:13
**largely** [2] - 49:3,
59:8
**last** [4] - 19:7, 22:3,
25:3, 51:8
**late** [1] - 57:22
**latest** [2] - 32:25,
38:12
**law** [10] - 12:9,
12:11, 25:24, 25:25,
41:10, 42:1, 43:23,
54:11, 54:14, 67:10
**lawful** [2] - 12:11,
66:11
**lawfully** [3] - 8:6,
66:11, 66:18
**lawsuit** [12] - 35:7,
35:8, 36:6, 40:10,
47:15, 49:18, 50:2,
60:21, 60:24, 63:12,
67:21, 68:13
**lawsuits** [14] - 5:21,
10:23, 11:25, 12:4,
21:22, 33:22, 40:9,
41:16, 65:15, 67:25,
68:7, 68:11
**layer** [1] - 50:17
**laying** [1] - 4:23
**learning** [3] - 5:22,
6:2, 6:19
**least** [11] - 9:10,
12:25, 19:19, 20:19,
31:2, 31:4, 31:5,
31:11, 42:19, 51:15,
61:2
**leave** [3] - 31:17,
32:4, 44:25

**leaves** [1] - 35:2
**leaving** [1] - 66:13
**left** [2] - 28:14, 69:22
**legal** [6] - 4:12,
11:18, 11:24, 26:10,
29:23, 37:11
**legally** [1] - 13:21
**legislation** [1] -
25:21
**legitimate** [1] - 13:19
**legitimately** [1] -
24:21
**less** [1] - 4:12
**letter** [3] - 5:22, 5:25,
40:5
**letters** [1] - 34:9
**letting** [1] - 28:11
**light** [5] - 9:13,
39:24, 60:13, 67:1,
69:9
**likelihood** [1] - 26:17
**likely** [1] - 74:21
**limit** [1] - 52:1
**limitations** [1] - 22:5
**limits** [1] - 22:4
**line** [4] - 5:18, 5:25,
32:9, 32:15
**list** [1] - 45:25
**listen** [1] - 24:10
**litigant** [1] - 26:9
**litigants** [2] - 23:24,
25:11
**litigate** [3] - 16:9,
23:24, 24:2
**litigating** [4] - 16:12,
25:10, 25:23, 29:22
**LITIGATION** [1] -
2:13
**Litigation** [1] - 3:22
**litigation** [14] - 9:17,
9:20, 9:22, 10:1,
10:21, 10:25, 14:9,
14:19, 15:9, 25:8,
34:18, 62:12, 64:12,
64:13
**LLP** [2] - 2:5, 2:16
**load** [1] - 52:1
**lobbying** [1] - 60:13
**look** [7] - 18:19,
19:2, 39:17, 53:25,
69:3, 71:24, 74:21
**looked** [1] - 11:20
**looking** [3] - 30:17,
33:9, 54:4
**looming** [1] - 28:12,
60:6
**lose** [3] - 14:16,
14:19, 62:6
**losing** [1] - 72:4
**lost** [1] - 72:5

## M

**mail** [2] - 35:15,
49:13
**main** [1] - 31:24
**major** [1] - 73:14
**March** [12] - 21:5,
25:24, 34:13, 34:24,
35:11, 35:12, 40:21,
59:10, 59:11, 60:1,
60:10, 60:17
**Marcy** [1] - 2:12
**Marie** [2] - 2:15, 4:1
**Massachusetts** [1] -
2:20
**matter** [14] - 7:23,
10:17, 15:24, 16:17,
21:11, 25:13, 25:14,
26:5, 30:24, 38:5,
43:23, 65:1, 65:11,
76:5
**matters** [1] - 32:6
**maximum** [1] - 36:18
**McElvain** [90] - 2:18,
4:4, 4:5, 4:16, 4:18,
5:4, 5:13, 5:18, 6:10,
6:13, 7:15, 7:23, 9:21,
9:25, 10:5, 10:12,
10:25, 11:7, 12:9,
12:19, 13:10, 14:11,
15:10, 15:14, 16:6,
16:11, 16:15, 17:6,
17:17, 18:1, 18:9,
18:17, 19:6, 42:1,
51:5, 51:7, 51:14,
51:21, 52:21, 52:21,
52:24, 53:8, 53:11,
53:20, 54:6, 54:9,
54:24, 55:11, 55:23,
56:9, 56:14, 56:22,
57:2, 57:6, 57:12,
57:20, 58:1, 58:5,
58:8, 58:14, 59:1,
59:7, 59:20, 60:22,
61:14, 62:12, 62:17,
63:3, 63:16, 63:18,
63:21, 63:25, 64:9,
64:13, 64:23, 65:3,
65:10, 65:17, 66:7,
66:10, 66:18, 67:9,
67:14, 67:19, 68:21,
69:17, 73:9, 73:22,
74:4, 74:6
**mean** [7] - 18:5,
37:21, 38:18, 39:3,
45:12, 47:7, 66:17
**means** [3] - 48:9,
67:13, 67:14
**meantime** [3] -
10:20, 21:12, 29:20

**mechanism** [1] -
46:7
**member** [1] - 46:17
**member's** [1] - 42:24
**members** [3] - 18:21,
42:4, 45:24
**Memorial** [2] - 73:15,
74:14
**Mendoza** [1] - 11:10
**mentioned** [1] - 6:16
**merits** [26] - 5:11,
5:14, 7:25, 8:1, 8:4,
13:23, 26:15, 26:18,
29:24, 29:25, 30:22,
37:23, 42:2, 50:16,
50:23, 51:9, 51:12,
53:1, 57:23, 66:13,
66:15, 70:23, 70:25,
71:6, 71:7, 71:12
**Michael** [2] - 2:18,
4:6
**mid** [1] - 20:12
**mid-June** [1] - 20:12
**middle** [5] - 38:12,
70:20
**might** [5] - 37:21,
37:22, 43:14, 48:13,
57:5
**Miller** [2] - 76:3, 76:8
**MILLER** [2] - 2:22,
76:9
**million** [2] - 23:4,
26:1
**Minneapolis** [1] -
2:11
**Minnesota** [1] - 2:11
**minute** [1] - 25:3
**missing** [1] - 70:13
**mode** [1] - 58:20
**moment** [3] - 15:16,
57:18, 60:20
**Monday** [1] - 1:6,
39:16
**money** [23] - 9:14,
9:16, 12:6, 12:7, 14:5,
14:21, 15:1, 19:24,
21:24, 22:2, 22:11,
25:25, 28:5, 28:24,
29:1, 29:12, 35:7,
35:9, 40:7, 48:18,
61:12, 62:6, 66:3
**moneys** [1] - 48:6
**month** [13] - 5:21,
19:18, 19:19, 19:20,
19:21, 19:23, 21:5,
26:10, 28:18, 28:21,
29:11, 29:21, 50:3
**months** [5] - 6:17,
19:17, 27:2, 27:5,
27:6

**mooted** [1] - 34:25
**MORING** [1] - 2:16
**morning** [5] - 38:7
**most** [5] - 25:11, 25:17, 28:17, 51:2, 67:8
**motion** [18] - 11:1, 17:6, 26:19, 30:15, 38:6, 38:7, 38:18, 38:19, 38:24, 39:1, 39:5, 41:22, 46:10, 46:15, 50:10, 50:15, 70:18, 72:24
**motions** [5] - 38:10, 51:11, 52:13, 52:14, 70:19
**move** [1] - 20:20
**moved** [4] - 21:12, 23:12, 37:9, 46:12
**moves** [2] - 23:6, 70:9
**moving** [3] - 49:25, 50:25, 69:12
**MR** [183] - 3:13, 3:17, 3:21, 4:4, 4:18, 5:4, 5:13, 5:18, 6:10, 6:13, 7:15, 7:23, 9:21, 9:25, 10:5, 10:12, 10:25, 11:7, 12:9, 12:19, 13:10, 14:11, 15:10, 15:14, 16:6, 16:11, 16:15, 17:6, 17:17, 18:1, 18:9, 18:17, 19:6, 19:10, 19:20, 19:22, 19:25, 20:2, 20:5, 20:10, 20:21, 20:23, 21:10, 21:15, 22:21, 23:12, 23:16, 23:19, 23:23, 24:15, 25:7, 26:21, 27:3, 27:19, 27:23, 28:16, 28:20, 28:22, 29:4, 29:8, 29:14, 29:16, 30:1, 30:6, 30:1, 31:13, 31:16, 31:21, 31:23, 32:10, 32:15, 32:20, 32:24, 33:18, 33:20, 34:1, 35:1, 35:14, 35:23, 36:14, 37:2, 37:17, 37:20, 38:3, 38:5, 38:10, 38:20, 38:22, 38:25, 39:6, 39:10, 39:22, 39:25, 40:15, 41:2, 41:23, 41:25, 42:13, 42:16, 43:14, 43:17, 43:20, 44:3, 44:8, 44:24, 45:3, 45:10, 45:13, 46:9, 46:19, 51:7, 51:14, 51:21,

52:5, 52:21, 52:24, 53:8, 53:11, 53:20, 54:6, 54:9, 54:24, 55:11, 55:23, 56:9, 56:14, 56:22, 57:2, 57:6, 57:12, 57:20, 58:1, 58:5, 58:8, 58:14, 59:1, 59:7, 59:20, 60:22, 61:14, 62:12, 62:17, 63:3, 63:16, 63:18, 63:21, 63:25, 64:9, 64:13, 64:23, 65:5, 65:10, 65:17, 66:7, 66:10, 66:18, 67:9, 67:14, 67:19, 68:21, 69:17, 69:19, 69:23, 70:7, 70:11, 70:18, 70:25, 71:3, 71:10, 71:17, 71:23, 72:3, 72:12, 72:19, 72:24, 73:9, 73:24, 74:4, 74:6, 74:10, 74:13, 74:17, 75:4
**MS** [15] - 3:25, 46:21, 46:23, 47:3, 47:7, 48:1, 48:11, 48:16, 49:3, 49:12, 49:22, 50:12, 50:19, 50:25, 51:4
**music** [1] - 16:17
**must** [1] - 21:24
**mutual** [2] - 11:10, 67:10

---

# N

**nailed** [1] - 15:3
**naive** [1] - 70:13
**name** [1] - 43:12
**NATION** [1] - 1:2
**Nation** [15] - 3:4, 3:14, 5:1, 23:2, 24:7, 24:19, 24:22, 25:11, 25:16, 26:2, 26:5, 27:1, 28:17, 31:9, 42:25
**Nation's** [1] - 23:23
**necessarily** [4] - 17:16, 22:9, 70:4, 74:25
**need** [16] - 4:10, 7:2, 15:16, 27:13, 28:2, 49:24, 55:23, 56:1, 56:3, 56:20, 57:7, 59:4, 61:4, 65:4, 69:1, 69:13
**needed** [2] - 15:17, 61:1
**needs** [1] - 73:19

**negotiate** [1] - 67:1
**negotiated** [1] - 27:25
**nervous** [1] - 24:20
**never** [3] - 18:22, 34:20, 40:16
**new** [12] - 5:6, 5:16, 10:23, 13:8, 13:15, 14:24, 22:4, 22:15, 23:5, 38:16, 56:17, 61:1
**next** [5] - 26:4, 66:2, 66:5, 73:11, 75:2
**nobody** [1] - 13:4
**non** [6] - 11:10, 34:25, 43:2, 44:9, 45:5, 67:10
**non-issue** [1] - 34:25
**non-mutual** [2] - 11:10, 67:10
**non-similarly** [3] - 43:2, 44:9, 45:5
**nonlitigation** [1] - 34:4
**noon** [1] - 73:1
**note** [1] - 47:17
**noted** [1] - 44:16
**nothing** [2] - 5:20, 6:1
**notice** [8] - 5:23, 6:1, 6:7, 6:16, 34:5, 37:19, 58:25, 60:14
**notify** [1] - 41:7
**notion** [3] - 11:7, 28:10, 32:2
**Number** [1] - 47:21
**numerosity** [1] - 56:12
**NW** [5] - 2:5, 2:13, 2:16, 2:20, 2:23

---

# O

**object** [4] - 56:6, 56:7, 56:18, 75:5
**objections** [1] - 52:24
**objective** [1] - 45:21
**obligate** [10] - 21:25, 47:19, 47:22, 61:17, 63:4, 63:24, 63:25, 64:2, 65:6, 65:18
**obligated** [4] - 13:21, 21:19, 22:6, 65:16
**obligating** [2] - 48:5, 65:12
**obviously** [5] - 5:10, 11:16, 30:9, 33:2, 50:1
**odd** [1] - 62:7

**OF** [9] - 1:1, 1:2, 1:8, 1:11, 1:17, 1:23, 2:1, 2:19, 76:1
**offensive** [2] - 11:11, 67:11
**offer** [1] - 51:15
**office** [1] - 3:18
**Office** [1] - 2:9
**OFFICIAL** [1] - 76:1
**OKLAHOMA** [1] - 1:3
**Oklahoma** [1] - 3:4
**once** [2] - 21:18, 26:9
**one** [31] - 8:16, 9:11, 12:17, 13:8, 14:17, 16:9, 16:17, 16:19, 16:20, 19:1, 19:8, 20:19, 21:22, 27:7, 27:20, 35:5, 40:24, 42:5, 42:14, 42:19, 44:2, 47:24, 49:16, 50:20, 54:11, 55:1, 55:14, 58:5, 62:20, 74:3, 74:15
**ones** [1] - 55:21
**ongoing** [3] - 10:21, 14:10, 24:4
**onus** [1] - 15:25
**opinion** [4] - 9:1, 20:1, 24:13, 24:24
**opportunity** [3] - 10:19, 12:19, 15:24
**oppose** [1] - 69:24
**opposed** [4] - 17:20, 26:16, 31:7, 61:10
**opposing** [3] - 23:21, 38:12, 45:9
**opposite** [1] - 34:21
**opposition** [5] - 5:10, 38:23, 39:4, 56:14, 73:1
**opt** [13] - 16:23, 16:24, 17:1, 17:4, 18:2, 18:5, 18:8, 18:10, 18:24, 44:9, 45:6, 54:12, 54:17
**opt-out** [12] - 16:23, 16:24, 17:1, 17:4, 18:2, 18:5, 18:8, 18:10, 44:9, 45:6, 54:12, 54:17
**opted** [1] - 17:2
**options** [1] - 11:18
**oral** [3] - 20:3, 40:14, 40:15
**order** [32] - 4:10, 6:24, 11:8, 11:13, 14:2, 14:14, 27:11, 27:19, 30:8, 30:24, 31:2, 36:11, 36:22,

38:15, 41:18, 42:21, 42:22, 43:5, 44:17, 45:16, 60:10, 66:23, 67:15, 67:16, 67:17, 67:20, 69:8, 72:13, 72:16, 74:1, 74:2, 74:21
**ordered** [1] - 73:2
**orders** [3] - 6:24, 39:14, 69:15
**ordinarily** [4] - 8:24, 14:25, 29:2
**ordinary** [1] - 74:5
**otherwise** [4] - 11:9, 17:15, 43:3, 47:22
**overview** [1] - 6:10
**owe** [1] - 52:11
**own** [11] - 5:6, 19:1, 23:24, 24:2, 31:7, 52:17, 55:7, 61:24, 67:1, 67:21, 67:25

---

# P

**p.m** [2] - 3:2, 75:12
**paper** [1] - 52:1
**papers** [2] - 61:3, 65:25
**part** [21] - 15:13, 17:13, 18:23, 23:17, 32:7, 33:1, 33:3, 34:16, 36:8, 36:24, 37:4, 48:20, 49:2, 50:9, 53:18, 54:5, 63:12, 70:10, 71:16, 71:25, 75:6
**particular** [9] - 8:21, 11:21, 16:24, 24:1, 27:7, 51:24, 54:16, 59:5, 71:21
**parties** [3] - 59:12, 61:22, 63:8
**partner** [1] - 3:15
**parts** [1] - 69:12
**partway** [1] - 21:20
**passed** [3] - 25:24, 28:21, 47:12
**past** [2] - 43:7, 43:21
**patience** [1] - 58:8
**Patricia** [2] - 76:3, 76:8
**PATRICIA** [2] - 2:22, 76:9
**pays** [1] - 25:11
**pending** [8] - 11:2, 21:22, 22:10, 26:6, 37:25, 44:15, 47:20, 70:22
**Pennsylvania** [1] - 2:16

people [23] - 8:22, 14:17, 15:6, 17:1, 17:4, 17:8, 17:11, 17:13, 18:7, 18:20, 18:22, 26:15, 43:25, 55:9, 56:3, 60:11, 60:13, 64:6, 65:22, 66:3, 68:4, 71:15
people's [3] - 14:22, 27:12, 37:1
perfectly [1] - 51:14
perhaps [5] - 8:23, 13:11, 21:13, 33:21, 71:14
period [7] - 35:17, 40:23, 53:15, 59:18, 59:21, 66:19
periods [3] - 27:13, 41:7, 67:6
permissibly [1] - 58:16
person [1] - 16:4
person's [1] - 34:23
personnel [1] - 73:17
perspective [1] - 4:11
persuade [1] - 8:2
pertain [1] - 17:4
petition [3] - 6:23, 59:23, 61:20
Philip [2] - 2:4, 3:15
philosophical [1] - 24:1
phrase [1] - 45:15
physically [1] - 71:18
PI [2] - 12:14, 51:10
pick [1] - 18:11
piece [1] - 16:4
pike [1] - 33:24
place [2] - 7:8, 64:17
Plaintiff [9] - 1:4, 1:9, 1:15, 1:21, 2:4, 2:7, 2:12, 2:15, 3:14
plaintiff [9] - 15:15, 17:14, 17:15, 17:23, 20:19, 28:9, 43:3, 56:23, 62:14
plaintiff's [2] - 5:5, 48:7
plaintiffs [63] - 5:15, 5:20, 5:21, 5:24, 6:1, 7:5, 7:19, 8:10, 9:10, 10:10, 11:3, 11:8, 13:2, 13:15, 13:18, 15:11, 15:19, 16:16, 17:18, 17:23, 18:12, 18:14, 20:21, 20:22, 24:11, 25:17, 27:9, 30:13, 41:14, 42:9, 42:19, 43:10, 43:12,

44:1, 44:9, 48:3, 51:6, 52:16, 53:25, 54:6, 54:7, 55:2, 55:3, 55:5, 55:7, 57:25, 58:15, 59:19, 59:25, 60:3, 61:1, 61:19, 62:5, 62:7, 62:14, 62:21, 62:22, 65:4, 65:18, 67:15, 67:16, 67:19, 69:18
plaintiffs' [5] - 16:2, 19:4, 65:7, 67:5, 69:3
plan [4] - 38:11, 58:9, 59:22, 73:25
Planning [2] - 27:21, 27:24
planning [1] - 65:13
plans [5] - 7:16, 8:7, 8:8, 16:24, 58:17
plausible [1] - 9:10
play [1] - 59:16
pleasure [1] - 16:12
podium [2] - 3:11, 53:25
point [29] - 6:13, 9:25, 10:14, 10:17, 12:17, 12:23, 13:11, 13:19, 19:13, 21:21, 30:11, 30:18, 31:3, 44:13, 48:24, 51:8, 54:15, 56:9, 56:15, 57:7, 57:12, 58:5, 58:6, 58:9, 59:20, 63:7, 63:19
pointed [4] - 22:24, 34:17, 42:16, 56:7
points [11] - 6:5, 6:15, 10:12, 46:23, 46:25, 54:9, 54:10, 54:11, 66:8, 66:15
Policy [31] - 4:13, 4:22, 5:3, 6:20, 7:4, 15:14, 20:20, 24:17, 24:24, 27:10, 27:21, 27:22, 27:24, 30:2, 37:15, 40:13, 40:16, 41:9, 41:14, 42:22, 43:9, 53:2, 57:24, 59:25, 60:18, 60:23, 61:5, 61:11, 67:14, 72:14
policy [15] - 8:5, 8:7, 8:14, 8:15, 8:21, 9:7, 11:12, 11:18, 12:1, 12:12, 13:16, 13:25, 18:13, 22:1
political [1] - 35:8
popped [1] - 22:17
position [27] - 17:22, 18:20, 22:13, 22:17,

22:21, 22:23, 26:25, 31:24, 32:22, 33:14, 34:15, 37:18, 40:18, 41:5, 47:4, 54:21, 57:14, 64:17, 66:22, 70:5, 70:14, 70:23, 71:5, 71:8, 71:23, 72:18, 72:20
positions [1] - 37:1
possibility [3] - 8:9, 50:20, 63:4
possible [19] - 30:17, 34:4, 36:2, 36:10, 36:17, 41:13, 42:20, 46:5, 46:12, 46:15, 49:5, 49:6, 49:25, 51:1, 60:9, 70:3, 71:1, 71:18, 72:11
possibly [3] - 17:2, 62:25, 64:4
pot [5] - 14:5, 21:24, 25:22, 26:1, 62:6
potential [3] - 17:23, 18:20, 64:18
potentially [4] - 13:14, 40:22, 49:24, 57:14
practical [1] - 15:20
practice [2] - 8:21, 8:25
preceded [1] - 33:23
precise [1] - 54:18
precisely [1] - 22:18
preexisted [1] - 13:25
prefer [3] - 31:19, 68:2, 72:15
preference [1] - 13:16, 23:24, 23:25, 63:5
preferred [1] - 30:6
preferring [1] - 30:18
Pregnancy [1] - 53:13
prejudice [30] - 6:14, 6:21, 12:23, 13:8, 13:12, 13:20, 19:15, 29:9, 29:10, 40:1, 40:3, 40:4, 40:11, 47:18, 48:24, 58:11, 58:19, 61:24, 62:23, 62:25, 63:3, 63:6, 63:7, 65:12, 65:17, 65:20, 66:13, 68:5, 68:8, 68:15
prejudiced [7] - 12:3, 13:7, 14:8, 22:25, 40:9, 48:17, 68:6
prejudices [2] - 7:11, 7:13

prejudicial [4] - 65:20, 67:23, 67:25, 68:2
preliminary [19] - 5:10, 24:25, 26:13, 26:24, 30:19, 30:22, 30:24, 31:23, 32:1, 33:8, 37:3, 46:6, 46:13, 50:5, 50:11, 50:15, 50:18, 50:21, 51:8
premise [1] - 73:9
prepare [2] - 6:11, 8:9
prepared [2] - 6:8, 27:3
preparing [1] - 63:9
present [3] - 5:6, 15:25, 37:12
presented [1] - 41:9
preserve [2] - 47:15, 48:4, 48:18
pressure [1] - 16:1
presume [1] - 49:9
pretend [2] - 66:24, 68:2
pretty [4] - 24:12, 43:23, 54:2, 56:1
prevent [1] - 65:14
Prevention [1] - 53:13
previous [3] - 35:19, 36:16, 48:22
previously [4] - 14:4, 17:1, 18:15, 27:5
primarily [1] - 49:4
primary [4] - 24:2, 31:8, 32:10, 49:4
principle [1] - 11:10
principles [1] - 67:10
priorities [1] - 35:5
problem [6] - 28:3, 44:22, 52:3, 55:16, 60:18, 68:8
procedurally [1] - 69:15
procedure [1] - 75:8
procedures [2] - 63:23, 64:16
proceed [17] - 7:1, 8:7, 9:18, 10:11, 10:25, 11:18, 13:16, 14:12, 14:15, 14:23, 39:8, 39:24, 44:19, 54:13, 58:17, 67:4, 67:7
proceeded [2] - 20:14, 22:7
proceeding [7] - 7:15, 8:8, 15:9, 54:24,

56:19, 57:11, 62:13
Proceedings [2] - 2:25, 75:12
proceedings [2] - 7:4, 76:5
process [25] - 6:22, 7:9, 8:12, 14:22, 15:21, 18:24, 27:2, 27:7, 27:13, 28:7, 29:2, 36:12, 49:11, 51:1, 55:19, 56:4, 59:11, 61:20, 61:22, 62:2, 62:15, 63:22, 64:14, 64:22, 66:4
processed [3] - 36:18, 49:5, 49:10
processes [1] - 14:24
processing [7] - 6:23, 7:8, 13:14, 27:17, 31:2, 50:17, 50:21
produced [1] - 2:25
program [10] - 20:14, 22:4, 22:15, 23:6, 24:5, 24:6, 35:17, 61:21, 62:11
Program [3] - 47:11, 48:6, 53:14
Programs [1] - 2:20
project [3] - 27:13, 41:7, 53:15
prolong [1] - 30:23
promise [3] - 14:9, 14:17, 63:11
promised [2] - 40:7, 63:14
promptly [4] - 47:11, 48:21, 49:5, 51:1
proposed [5] - 23:17, 23:19, 23:20, 23:22, 73:8
protectively [1] - 42:17
protest [1] - 29:17
provide [2] - 16:22, 59:23
provided [2] - 25:20, 58:25
provides [1] - 20:18
PUBLIC [1] - 2:13
Public [1] - 3:22
public [1] - 25:10
purported [3] - 53:16, 53:19, 53:20
put [12] - 10:8, 12:23, 13:11, 17:12, 21:16, 21:25, 27:24, 31:25, 39:11, 40:8, 47:15, 74:8

putative [1] - 17:15
putting [1] - 68:10

## Q

quality [1] - 21:1
questioning [1] - 13:9
questions [2] - 22:25, 37:5
quicker [2] - 38:16, 39:14
quickly [12] - 27:5, 29:2, 36:17, 37:9, 39:8, 39:17, 41:13, 42:20, 46:12, 49:25, 70:25, 72:11
quiet [1] - 22:12
quote/unquote [2] - 27:11, 53:16

## R

raise [1] - 38:16
raised [1] - 38:16
raises [2] - 5:3, 56:19
raising [2] - 12:21, 41:22
ran [1] - 11:3
rates [1] - 25:12
rather [6] - 22:2, 24:20, 30:19, 49:13, 71:15, 72:16
re [2] - 47:19, 65:16
re-obligate [1] - 47:19
re-obligated [1] - 65:16
reach [3] - 63:6, 71:5, 71:7
reacted [1] - 8:18
read [2] - 35:2, 45:8
real [1] - 25:19
reality [1] - 25:7
realize [1] - 4:24
reallocate [1] - 36:5
reallocated [1] - 23:4
really [9] - 13:7, 15:3, 18:22, 36:25, 41:17, 55:19, 60:20, 64:20, 66:23
reappropriated [2] - 19:24, 28:19
reason [8] - 37:4, 42:19, 59:3, 60:3, 60:5, 65:3, 74:25, 75:5
reasonable [3] - 25:13, 28:5, 29:22

reasoned [1] - 58:14
reasoning [3] - 5:7, 6:2, 54:19
reasons [4] - 56:6, 58:2, 60:23, 73:14
Rebecca [2] - 2:8, 3:19
receive [4] - 6:17, 8:9, 8:10, 37:18
received [5] - 8:19, 17:14, 18:7, 55:10, 60:14
recognize [3] - 8:6, 36:15, 53:1
recognized [1] - 60:1
recompete [20] - 7:18, 9:4, 9:16, 9:20, 10:3, 11:22, 12:2, 12:6, 12:7, 13:25, 14:1, 14:18, 15:1, 22:20, 60:8, 63:1, 63:13, 63:14, 66:6, 68:19
recompeted [1] - 21:14
recompeting [6] - 9:1, 13:4, 13:5, 63:21, 64:6, 68:9
recompetition [12] - 7:16, 8:5, 8:8, 8:11, 13:17, 14:13, 40:5, 62:13, 63:5, 63:8, 63:22, 65:23
reconsider [1] - 8:2
record [4] - 3:11, 11:5, 47:21, 76:4
recount [3] - 6:23, 59:22, 61:20
red [1] - 59:10
redoing [1] - 14:22
reexamination [1] - 64:3
refer [4] - 5:7, 58:11, 60:22, 65:25
referenced [1] - 37:3
referencing [1] - 57:4
referring [1] - 18:6
refrain [1] - 48:5
refund [1] - 59:17
refunded [1] - 59:17
regard [3] - 13:24, 23:10, 33:22
regarding [2] - 28:1, 32:22
regardless [2] - 59:24, 74:2
reinforced [1] - 25:1
reinstituting [1] - 14:21

relative [1] - 74:8
relevance [1] - 49:21
relevant [1] - 73:17
relied [1] - 61:23
relief [29] - 7:2, 8:9, 8:10, 15:17, 15:18, 16:22, 17:14, 18:3, 18:7, 18:23, 18:24, 23:2, 24:14, 30:5, 30:6, 30:17, 30:24, 31:23, 32:16, 33:10, 42:20, 42:21, 43:4, 49:16, 49:19, 55:10, 65:5, 67:20, 72:10
rely [1] - 67:20
relying [3] - 58:16, 59:9, 63:9
remain [2] - 43:19, 44:5
remaining [8] - 10:9, 10:10, 23:6, 30:14, 43:17, 46:8, 51:16, 57:21
remedy [1] - 46:17
remember [1] - 19:19
reminding [1] - 69:21
renew [1] - 66:19
renewal [1] - 27:4
repeat [2] - 34:1, 51:15
replies [1] - 5:16
reply [12] - 30:15, 38:6, 38:15, 38:25, 39:6, 46:12, 52:8, 52:11, 73:1, 73:11, 73:12
report [1] - 10:14
reported [1] - 2:25
Reporter [1] - 2:22
REPORTER [1] - 76:1
represent [2] - 3:12, 61:17
representation [6] - 55:24, 56:21, 56:22, 61:19, 62:9, 62:20
representations [5] - 10:16, 58:21, 59:2, 59:7, 73:16
represented [1] - 56:18
Republican [4] - 35:2, 35:3, 35:4, 35:5
request [2] - 8:23, 40:8
require [3] - 27:17, 50:21, 71:21
required [1] - 13:13
requires [2] - 19:14,

36:12
requisite [1] - 20:18
Research [28] - 4:13, 4:22, 5:3, 6:20, 7:4, 15:15, 20:20, 24:18, 24:24, 27:10, 30:3, 37:15, 40:13, 40:17, 41:9, 41:14, 42:23, 43:10, 53:2, 57:25, 59:25, 60:18, 60:23, 61:5, 61:11, 67:15, 72:14
reserve [2] - 5:14, 48:13
resisting [1] - 36:24
resolutions [1] - 15:20
resolve [4] - 4:11, 42:23, 53:22
resolved [4] - 34:4, 36:3, 36:10, 36:17
resolving [1] - 6:6
resource [2] - 56:3, 65:24
resource-intensive [2] - 56:3, 65:24
resources [7] - 13:13, 16:1, 61:21, 62:3, 63:8, 65:21, 68:10
RESOURCES [1] - 1:14
Resources [4] - 3:7, 4:1, 47:3, 62:9
respect [23] - 14:2, 15:5, 24:24, 26:12, 26:16, 28:7, 28:9, 33:8, 39:7, 39:21, 41:5, 42:25, 43:8, 43:10, 43:11, 46:25, 47:7, 47:17, 48:24, 49:15, 57:17, 60:16, 69:5
respectful [1] - 53:3
respond [6] - 5:15, 26:25, 33:7, 39:11, 39:14, 48:13
responded [1] - 38:21
response [7] - 10:13, 12:23, 33:14, 34:6, 34:7, 46:11, 65:6
responsible [1] - 51:19
responsive [1] - 40:20
rest [1] - 34:14
reviewing [4] - 61:21, 62:1, 62:17, 64:15

rights [1] - 47:16
ripe [2] - 31:8, 40:22
risk [7] - 7:20, 14:16, 14:23, 14:25, 25:2, 61:10, 72:4
RMR [1] - 2:22
Rogan [4] - 2:7, 3:17, 32:18, 42:16
ROGAN [11] - 3:17, 32:20, 32:24, 33:18, 33:20, 34:1, 35:1, 35:14, 35:23, 36:14, 37:2
roll [1] - 68:17
Room [1] - 2:23
ROSS [15] - 3:25, 46:21, 46:23, 47:3, 47:7, 48:1, 48:11, 48:16, 49:3, 49:12, 49:22, 50:12, 50:19, 50:25, 51:4
Ross [4] - 2:15, 3:25, 46:20, 62:24
rub [1] - 23:7
rule [8] - 14:12, 30:20, 54:14, 70:3, 70:5, 70:15, 71:21, 71:24
ruled [6] - 8:1, 10:6, 26:7, 26:8, 53:2, 71:5
rules [2] - 45:12, 71:20
ruling [12] - 6:20, 10:4, 13:3, 20:3, 20:5, 27:16, 40:14, 40:15, 55:14, 67:8, 74:18, 75:1
rulings [1] - 8:20
run [3] - 13:2, 15:2, 25:3, 28:6
running [2] - 24:6, 68:22
runs [1] - 72:4

## S

safely [1] - 33:21
sand [1] - 32:9
saw [1] - 24:22
scaled [2] - 66:12, 66:16
schedule [6] - 31:7, 33:6, 69:3, 70:8, 73:20, 73:22
schedules [1] - 31:6
scheduling [1] - 38:6
schools [1] - 24:6
scope [1] - 66:11
Sean [2] - 2:12, 3:21
second [3] - 6:21,

54:15, 58:21
**see** [13] - 7:11, 27:8, 34:23, 35:22, 40:11, 45:21, 50:24, 51:23, 53:25, 57:10, 59:6, 70:2, 70:14
**seeing** [1] - 15:24
**seek** [4] - 27:20, 30:9, 45:19, 49:19
**seeking** [3] - 40:5, 59:13, 59:14
**seem** [3] - 9:5, 26:22, 26:23
**self** [1] - 12:5
**self-inflicted** [1] - 12:5
**sense** [4] - 34:18, 42:10, 69:11, 70:1
**sent** [1] - 34:9
**separate** [3] - 8:14, 12:21, 51:5
**separately** [2] - 16:10, 16:13
**separating** [1] - 8:4
**September** [14] - 61:15, 61:16, 61:18, 62:1, 62:19, 64:2, 64:7, 64:19, 64:20, 64:25, 65:1, 65:13, 65:19
**Services** [4] - 3:6, 3:8, 3:9, 53:14
**SERVICES** [3] - 1:12, 1:18, 1:23
**set** [5] - 30:7, 42:6, 42:7, 43:8, 62:20
**setting** [5] - 7:4, 11:7, 22:22, 29:10, 43:5
**seven** [2] - 49:8, 73:13
**Shenk** [2] - 2:4, 3:15
**Sherman** [6] - 2:12, 3:22, 38:2, 46:18, 72:22, 73:21
**SHERMAN** [31] - 3:21, 38:3, 38:5, 38:10, 38:20, 38:22, 38:25, 39:6, 39:10, 39:22, 39:25, 40:15, 41:2, 41:23, 41:25, 42:13, 42:16, 43:14, 43:17, 43:20, 44:3, 44:8, 44:24, 45:3, 45:10, 45:13, 46:9, 46:19, 70:18, 72:24, 73:24
**shifting** [1] - 61:2
**short** [3] - 36:21, 40:23, 68:22

**shorten** [1] - 27:12, 41:7, 53:6, 53:9, 53:10, 53:16, 53:19, 53:21, 54:3, 66:19, 67:5
**shortening** [1] - 27:14
**shorter** [1] - 39:17
**shorthand** [1] - 2:25
**shoulders** [1] - 21:3
**sign** [1] - 64:7
**signed** [1] - 25:25
**similar** [2] - 5:14, 43:25
**similarly** [4] - 9:10, 43:2, 44:9, 45:5
**simple** [1] - 46:9
**simply** [5] - 5:7, 7:3, 32:11, 40:8, 49:15
**simultaneously** [3] - 8:11, 13:6, 20:23
**single** [1] - 51:19
**sitting** [2] - 20:8, 36:1
**situated** [4] - 9:10, 43:2, 44:9, 45:5
**situation** [6] - 13:2, 20:10, 21:16, 30:23, 67:8, 70:2
**six** [2] - 20:2, 49:8
**Sixth** [1] - 2:10
**slight** [2] - 5:19, 51:23
**slightly** [2] - 30:4, 61:3
**slow** [1] - 31:14
**small** [1] - 15:20
**solicitation** [1] - 61:23
**soliciting** [1] - 61:22
**someone** [1] - 64:7
**sometime** [2] - 11:15, 63:1
**somewhat** [1] - 51:22
**soon** [3] - 36:10, 46:15, 70:3
**sorry** [3] - 19:22, 38:17, 63:16
**sort** [6] - 12:15, 14:21, 36:11, 41:3, 43:1, 64:2
**sought** [2] - 31:4, 40:20
**South** [1] - 2:10
**speaking** [2] - 4:16, 23:1
**specifically** [1] - 44:15
**spend** [2] - 28:5,

35:7
**spoken** [2] - 18:10, 42:13
**staff** [4] - 24:5, 32:3, 72:4, 72:5
**stages** [1] - 26:16
**stand** [3] - 18:20, 32:8, 37:22
**standards** [2] - 45:17, 45:20
**standing** [3] - 21:2, 45:18, 56:23
**stands** [1] - 27:8
**start** [5] - 4:20, 4:23, 19:12, 31:2, 40:3
**started** [2] - 26:6, 68:16
**starting** [2] - 52:6, 52:21
**state** [3] - 3:11, 68:12
**statement** [2] - 16:11, 62:8
**statements** [2] - 15:15, 47:9
**STATES** [2] - 1:1, 2:2
**status** [2] - 4:9, 59:12
**STATUS** [1] - 2:1
**stayed** [1] - 22:12
**stenotype** [1] - 2:25
**step** [2] - 15:10, 23:1
**steps** [2] - 56:2, 64:14
**Steven** [2] - 2:4, 3:13
**still** [7] - 10:15, 10:21, 11:17, 15:4, 21:3, 54:3, 57:18
**stipulate** [1] - 59:4
**stop** [3] - 9:19, 13:3, 67:6
**stopping** [2] - 9:21, 15:8
**story** [1] - 10:2
**straight** [1] - 51:12
**strange** [1] - 66:23
**Street** [3] - 2:5, 2:10, 2:13
**stuck** [2] - 48:23, 54:14
**study** [2] - 26:9, 26:10
**subject** [3] - 14:14, 17:8, 18:12
**subjective** [2] - 45:17, 45:20
**submit** [4] - 5:22, 7:6, 47:12, 48:21
**submitted** [3] - 46:16, 47:13, 73:5

**substantially** [1] - 43:25
**substantive** [1] - 42:2
**substantively** [2] - 42:22, 69:15
**success** [1] - 26:18
**successfully** [1] - 7:20
**suddenly** [2] - 22:17, 64:25
**sue** [1] - 34:19
**sufficient** [1] - 65:14
**suggest** [4] - 19:15, 45:16, 46:7
**suggested** [1] - 71:17
**suggesting** [3] - 18:6, 24:19, 25:1
**suggestion** [1] - 31:11
**suit** [10] - 6:18, 6:19, 15:11, 15:16, 20:25, 21:5, 25:15, 25:16, 29:14, 35:24
**Suite** [1] - 2:6
**suits** [3] - 21:23, 22:8, 22:10
**summary** [15] - 26:19, 30:19, 32:1, 33:9, 38:11, 38:19, 38:24, 39:2, 46:6, 46:13, 46:14, 50:15, 51:11, 70:19, 73:10
**summer** [4] - 61:25, 62:1, 62:4, 62:18
**suppose** [3] - 9:3, 52:16, 60:9
**Supreme** [2] - 44:11, 44:13
**suspend** [1] - 8:20
**sweep** [1] - 55:5
**system** [1] - 35:21

## T

**table** [1] - 12:24
**tea** [1] - 35:2
**team** [1] - 5:23
**technical** [1] - 16:19
**tedious** [1] - 51:22
**Teen** [1] - 53:13
**tentatively** [1] - 51:15
**term** [1] - 49:13
**terminate** [7] - 14:3, 52:25, 53:7, 53:8, 53:16, 54:3, 59:13
**terminated** [2] - 49:24, 53:5

**termination** [4] - 42:6, 43:5, 53:3, 66:20
**terminologic** [1] - 63:18
**terms** [7] - 6:5, 29:14, 45:16, 46:5, 48:9, 49:21, 56:21
**test** [1] - 58:8
**Texas** [4] - 3:5, 3:23, 31:3, 31:18
**TEXAS** [1] - 1:8
**THE** [201] - 1:1, 2:1, 3:3, 3:16, 3:20, 3:24, 4:3, 4:8, 4:19, 5:9, 5:17, 6:4, 6:12, 7:11, 7:17, 8:13, 9:23, 10:3, 10:6, 10:18, 11:6, 11:20, 12:18, 12:22, 13:22, 14:15, 15:13, 16:3, 16:7, 16:14, 16:25, 17:10, 17:22, 18:4, 18:14, 18:19, 19:7, 19:12, 19:21, 19:24, 20:1, 20:4, 20:7, 20:19, 20:22, 21:7, 21:11, 22:16, 23:10, 23:14, 23:18, 23:21, 24:9, 24:16, 26:12, 26:22, 27:8, 27:22, 27:25, 28:18, 28:21, 28:23, 29:7, 29:10, 29:15, 29:24, 30:2, 30:21, 31:10, 31:15, 31:18, 31:22, 32:5, 32:12, 32:17, 32:21, 33:13, 33:19, 33:21, 34:23, 35:13, 35:22, 36:7, 36:23, 37:15, 37:18, 38:1, 38:4, 38:9, 38:17, 38:21, 38:23, 39:2, 39:9, 39:19, 39:23, 40:14, 40:25, 41:3, 41:24, 42:9, 42:15, 43:6, 43:16, 43:19, 43:21, 44:5, 44:21, 44:25, 45:8, 45:12, 46:1, 46:18, 46:20, 46:22, 47:2, 47:6, 47:24, 48:8, 48:15, 49:1, 49:11, 49:20, 50:10, 50:13, 50:24, 51:3, 51:5, 51:13, 51:18, 52:3, 52:14, 52:23, 53:6, 53:10, 53:12, 53:24, 54:8, 54:21, 55:7, 55:17, 56:5, 56:11, 56:21, 56:25, 57:3, 57:9,

57:17, 57:21, 58:3,
58:7, 58:13, 58:20,
59:6, 59:18, 60:5,
61:7, 62:5, 62:16,
62:23, 63:10, 63:17,
63:20, 63:24, 64:1,
64:11, 64:20, 64:24,
65:9, 65:11, 66:1,
66:9, 66:16, 66:22,
67:13, 67:18, 67:24,
68:25, 69:18, 69:21,
70:6, 70:8, 70:16,
70:21, 71:2, 71:7,
71:11, 71:20, 72:2,
72:10, 72:17, 72:22,
73:6, 73:20, 74:3,
74:5, 74:7, 74:11,
74:14, 74:20, 75:7

**theory** [2] - 54:25

**thereof** [1] - 22:11

**thinking** [3] - 21:12,
46:5, 52:17

**thinks** [2] - 32:23,
69:25

**third** [2] - 61:22, 63:8

**third-parties** [1] -
63:8

**thoughts** [2] - 33:24,
49:21

**threat** [1] - 24:3

**three** [2] - 9:12,
50:17

**throughout** [1] - 62:4

**Thursday** [2] - 72:13,
73:15

**tied** [1] - 31:6

**time-intensive** [1] -
65:24

**timeline** [1] - 48:23

**timely** [1] - 67:22

**timing** [13] - 38:14,
49:7, 49:16, 50:9,
55:18, 61:8, 67:22,
67:25, 68:1, 68:21,
69:4, 75:5

**today** [5] - 27:1,
47:5, 56:17, 57:15,
61:3

**together** [5] - 16:8,
39:3, 39:18, 42:9,
47:15

**tomorrow** [1] - 65:6

**took** [1] - 40:18

**touchstones** [1] -
40:1

**TP3** [2] - 24:13,
24:14

**TPP** [6] - 34:17,
34:22, 35:6, 47:10,
48:6, 59:15

**TPPP** [1] - 24:13

**trailing** [1] - 31:4

**TRANSCRIPT** [1] -
2:1

**Transcript** [1] - 2:25

**transcript** [1] - 76:4

**transcription** [1] -
2:25

**treat** [2] - 24:18,
26:19

**treating** [1] - 57:24

**treatment** [1] - 45:9

**treats** [2] - 43:24,
44:1

**tried** [2] - 34:6, 36:2

**true** [2] - 15:18, 55:8

**truth** [1] - 25:13

**try** [11] - 13:11,
26:15, 33:9, 34:1,
34:4, 34:19, 35:1,
35:10, 46:4, 51:7,
54:13

**trying** [11] - 4:13,
6:5, 22:22, 24:16,
26:24, 27:8, 36:25,
38:17, 53:22, 54:15,
72:21

**TTP** [1] - 34:10

**turn** [3] - 21:24, 22:2,
65:5

**twice** [1] - 30:20

**two** [14] - 6:25,
19:14, 27:1, 27:5,
27:6, 39:16, 40:2,
47:13, 54:11, 65:23,
71:24, 72:6, 72:20,
73:21

**typically** [2] - 8:20,
46:4

## U

**U.S** [2] - 2:19, 2:23

**ultimate** [1] - 5:18

**ultimately** [3] -
15:25, 50:22, 59:15

**uncertain** [2] - 24:5,
59:16

**uncertainty** [3] -
7:16, 60:6, 60:17

**unclear** [1] - 74:24

**uncomfortable** [1] -
58:25

**under** [9] - 7:15,
11:9, 13:9, 16:21,
17:24, 25:5, 36:7,
54:13, 74:7

**underlying** [1] -
71:12

**undermine** [1] -

62:23

**undermined** [1] -
63:10

**undermines** [1] -
62:10

**understood** [5] -
11:6, 40:21, 41:5,
41:14, 72:18

**undue** [4] - 14:23,
48:19, 58:11, 58:18

**unfavorable** [1] -
8:19

**uninterrupted** [1] -
49:6

**unique** [1] - 37:13

**UNITED** [2] - 1:1, 2:2

**unlawful** [2] - 43:5,
43:9

**unless** [5] - 17:22,
25:8, 25:9, 59:24,
60:9

**unlike** [2] - 27:10,
35:10

**unreasonable** [12] -
6:14, 6:15, 19:14,
21:8, 26:8, 28:25,
29:8, 29:11, 33:25,
40:1, 40:24, 48:20

**unreasonably** [1] -
19:16

**untimely** [1] - 40:17

**up** [16] - 4:15, 5:15,
12:20, 17:20, 22:18,
23:9, 25:20, 32:13,
33:5, 34:15, 46:2,
51:6, 62:7, 63:13,
65:3, 70:9

**urgency** [1] - 70:2

**usual** [1] - 29:3

## V

**vacuum** [1] - 8:15

**variation** [1] - 5:16

**variations** [2] - 5:20,
51:24

**various** [1] - 18:12

**vehicle** [3] - 32:6,
49:17, 49:19

**veiled** [1] - 31:11

**versus** [9] - 3:4, 3:5,
3:7, 3:8, 30:22, 46:6,
46:7, 50:15, 51:9

**via** [2] - 32:1, 36:23

**view** [7] - 4:20, 7:23,
8:2, 18:9, 19:3, 34:21,
54:11

**views** [1] - 8:3

**vis** [2] - 30:12

**vis-a-vis** [1] - 30:12

**voluntarily** [1] -
48:18

## W

**wait** [3] - 15:2, 20:7,
29:11

**waited** [10] - 6:19,
15:11, 24:22, 25:2,
28:18, 29:21, 55:14,
61:9

**waiting** [6] - 19:17,
36:2, 57:21, 61:10,
61:11

**wants** [5] - 25:17,
28:4, 42:20, 43:4

**Washington** [6] -
1:5, 2:6, 2:14, 2:17,
2:21, 2:24

**ways** [2] - 9:8, 34:4

**wedded** [1] - 50:14

**Wednesday** [17] -
30:14, 30:16, 39:3,
48:12, 52:8, 52:11,
69:5, 70:12, 70:15,
71:4, 73:1, 73:12,
73:23, 73:25, 74:1,
74:10, 74:22

**week** [15] - 31:5,
31:19, 38:12, 39:10,
39:11, 40:10, 40:12,
72:20, 74:3, 74:11,
74:15, 74:18, 74:23,
75:1, 75:3

**weekend** [1] - 73:18

**Weekend** [1] - 74:14

**weeks** [5] - 28:14,
49:8, 71:24, 72:6

**weigh** [1] - 12:14

**whole** [6] - 16:22,
26:1, 28:21, 36:2,
59:18, 62:10

**willing** [1] - 62:21

**win** [2] - 27:1, 28:8

**wisely** [1] - 28:5

**won** [2] - 61:13,
67:15

**wonder** [1] - 6:7

**word** [3] - 52:25,
54:17, 59:14

**words** [6] - 13:1,
25:2, 43:11, 50:14,
51:23, 66:24

**works** [4] - 43:13,
43:15, 61:20, 64:22

**world** [2] - 25:8, 67:1

**worried** [1] - 70:23

**worry** [1] - 30:5

**worth** [4] - 25:18,
25:23, 26:2, 26:9

**wound** [1] - 12:5

**wrap** [1] - 4:15

**wraps** [1] - 32:13

**written** [1] - 17:14

## Y

**Yamasaki** [1] - 44:11

**year** [15] - 21:19,
21:20, 21:25, 22:4,
22:6, 25:23, 26:1,
29:18, 29:23, 32:3,
34:15, 53:15, 61:15,
66:2, 66:5

**year-end** [1] - 21:25

**years** [2] - 35:19,
48:22

**yourselves** [1] -
42:12

## Z

**zero** [4] - 20:13,
20:14, 34:17, 35:6

**Zieve** [2] - 2:12, 3:23