## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HEALTHY FUTURES OF TEXAS, individually and on behalf of all other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 1:18-cv-00992 |
| v. | ) ) | |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
## THEIR CROSS-MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

In its response to Defendants' cross-motion, Plaintiff focuses on the issues of laches.

Pl.'s Resp. Br. at 2-7, ECF No. 23.  Despite this focus, Plaintiff's brief does not seriously dispute

the facts central to this defense:

- Plaintiff's alleged harm arises from the Department of Health and Human Services' (HHS) decision in July 2017 not to extend Plaintiff the opportunity to file a continuation award for the fourth and fifth years of its Teen Pregnancy Prevention ("TPP Program") grants.  Defs.' Cross-Mot. at 10, ECF No. 18-1 (citing Realini Decl. ¶¶ 8-9).

- That decision was made nearly ten months before Plaintiff filed its complaint, nine months after Plaintiff filed an appeal letter, and ten weeks after similarly situated grantees sought judicial relief.  Compl., ECF No. 1.

- HHS spent millions of dollars and invested significant amounts of time and effort in order to review the TPP Program and developing a new competitive grant program consistent with Congress's goals.  Hundreds of grantees are already committing resources in order to participate in the recompetition, which launched on April 20.  Defs.' Cross-Mot. at 10-12 (citing Kretschmaier Decl. ¶¶ 6-9).

Rather than contest these facts, Plaintiff tries to justify its delay, as well as the delay of its class

members, and minimize Defendants' prejudice as a consequence of that delay.  These arguments

are not well founded.  The undisputed facts compel the conclusion that Plaintiff's claim is barred

by laches, and judgment in Defendants' favor is warranted.

## I.        Plaintiff's Delay Was Unreasonable

Plaintiff does not dispute that it delayed filing suit until after litigation brought by other

grantees reached a final judgment.  And although Plaintiff (along with an unspecified number of

class members) sent a letter in August of 2017 challenging HHS's decision, it does not contest

that it waited nine months after sending that letter before seeking to vindicate its rights in court,

or that other members of its class neglected to take even this minimal action.  It also fails to

explain what Plaintiff hoped to achieve through an administrative appeal in light of the agency's

public position that further funding of the TPP Program in its current state was "not a reasonable

option."  Gerardi Decl., Ex. I, 2.  Plaintiff now asserts that its inaction was justified by

Congress's delay in passing an appropriations bill and that, in any event, its delay was of a

reasonable duration.  Neither point has merit.

Plaintiff argues, without factual support from its declarant, that it chose to wait nearly a

month after Congress enacted an appropriation bill to bring this action because the

appropriations bill would potentially moot its claim.  Pl.'s Resp. Br. at 2-3.  But the harm that

Plaintiff's complaint seeks to redress is not the loss of funding, per se, but the deprivation of an

asserted right to apply for a non-competing continuation award grant award in the same manner

that Plaintiff had done in FY 2016 and FY 2017.  The complaint reflects the nature of this harm

by requesting relief in the form of (1) a declaration that the "termination of the TPPP grants" was

"unlawful," (2) an injunction to "continue to administer the grants to the same extent and in the

same manner as prior to the unlawful termination," and (3) an injunction "to accept and process

the non-competing continuation applications of all members of the class for the fourth budget

period."  Complaint at 6-7 (Prayer for Relief), ECF No. 1.  Plaintiff could have lost its funding

through failure of a variety of conditions even if it had been allowed to file a continuation

application in the normal course, including a lapse in appropriations or its own failure to comply

with grant terms and conditions, but the absence or presence of those conditions is independent

of the harm it has alleged here.  That putative harm was evident close to a year ago.

Plaintiff, of course, is correct that a decision by Congress to defund the TPP Program

would have made its legal objection to HHS's decision academic.  But it does not follow that a

potential plaintiff can wait for all contingencies that might moot its case to fully run their course

before filing suit, particularly in a factual setting where time is of the essence.  Indeed, nine

grantees filed motions for preliminary injunctions against Defendants on February 15, well over

a month before the passage of the appropriations bill, precisely because HHS's July 2017

decision created "uncertainty" and prevented grantees from "effectively initiat[ing] work plans,

staffing decisions, [and] resource allocations" for their projects, among other things.  *Policy &

Research, LLC v. Dep't of Health & Human Servs.*, No. 18-cv-00346-KBJ, Pls.' Mot. For

Preliminary Injunction, ECF No. 6-1, at 2, 42.  Those asserted harms were independent of any

concerns regarding appropriations.  Plaintiff gives no cogent explanation as to why it could not

have discerned the same harms in July 2017 or, at the latest, by February 2018 when other

grantees began asserting claims, or as to why it instead waited to bring suit until HHS was far

down the road of developing and launching the recompetition for TPP Program funds.

Plaintiff also nitpicks the authority Defendants relied upon in their opposition, asserting

that this case does not involve a "considerable delay" of the sort found by this Court and the D.C.

Circuit in previous cases.  Pl.'s Resp. at 3.  But the amount of delay that will justify a finding of

laches "does not depend solely on the time that has elapsed between the alleged wrong and the

institution of suit; it is 'principally a question of the inequity of permitting the claim to be

enforced—an inequity founded upon some change in the condition or relations of the property or

the parties.'" *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 843 (D.C. Cir. 1982)

(quoting *Galliher v. Cadwell*, 145 U.S. 368, 373 (1892)).  That amount will vary from case to

case, and Defendants cited numerous cases in their brief where delays of months or even weeks

supported a finding of laches.  Defs.' Cross-Mot. at 8-10, ECF No. 18-1.  That includes

*LTMC/Dragonfly, Inc. v. Metropolitan Washington Airports Authority*, 699 F. Supp. 2d 281

(D.D.C. 2010), where this Court agreed that plaintiff's delay of eighteen months in bringing suit

was improper, but deferred its final ruling on the motion while the plaintiff developed further

evidence of how it had been unfairly prejudiced by the decision.  *Id.* at 294.  In the context of a

grant program funded through annual appropriations, in which funds must be spent by the end of

the fiscal year and the planning and implementation of a new application process for competitive

grants takes months to complete, the delay of Plaintiff and the class in asserting these claims is

unacceptable and merits imposition of laches.

## II.    Plaintiff's Delay Will Prejudice HHS

Plaintiff does not contest its failure (as well as the failure of other class members) to take

meaningful steps to correct HHS's decision until it filed this complaint, or the numerous ways in

which HHS has changed its position between July 2017 and April 2018.  Rather, Plaintiff argues

that HHS could not have been relying on the inaction of Plaintiff and other class members in

developing its recompetition announcement.  Pl.'s Resp. Br. at 4-5.  But HHS's reliance on the

inaction of grantees is not only plausible, but sensible.  Not every grantee was challenging

HHS's decision with respect to every grant awarded, opening the possibility that funds would be

available for other interested grantees.  For example, at least one grantee has represented to this

Court in February that it was *not* seeking to challenge HHS's decision with respect to all of its

4

grants.  *Policy & Research, LLC v. U.S. Dep't of Health & Human Servs.*, No. 18-cv-346-KBJ,

2018 WL 2184449, at *4 (D.D.C. May 11, 2018) (noting that only one of two TPP Program

grants issued to plaintiff SHIFT NC was at issue in the litigation).  And although Plaintiff's

August 2017 letter to the agency is far from sufficient to show that Defendants should have been

expecting a lawsuit in April 2017, Plaintiff does not aver that every member of its class took

even this step.[1]

        In proceeding with its recompetition, HHS is taking care to ensure that it may need to

issue continuation awards, absent relief from judicial orders requiring it to process certain

grantees' continuation applications.  To date, the agency has not obligated these funds.  But HHS

could also observe that not every grantee seemed concerned with pursuing judicial relief,

particularly when only nine of the grantees filed suit in February 2018.  Because HHS is under a

legal imperative to spend TPP Program funds by the end of the fiscal year, it had to make plans

for spending these funds and could not wait to see how many grantees would bring litigation.

Because the planning and implementation of a grant program is both time- and labor-intensive,

Kretschmaier Decl. ¶ 6, the agency had to make a final decision on recompetition as soon as

possible after the passage of the appropriations bill, and it was reasonable to rely on the silence

of other grantees in making that decision.

        Nor is there any genuine dispute that Defendants, as well as members of the public, have

changed their position in response to inaction by the Plaintiff and other grantees.  Although

Defendants have not obligated TPP Program funds and are complying with orders to issue

continuation awards, the delay of Plaintiff and other TPP Program grantees has led to substantial

commitments of money and other resources by both HHS (in studying the TPP Program and

---

[1] For an example of one such class member that did not take even this minimal step, see *Choctaw Nation of Okla. v. Azar*, No. 1:18-cv-00971, Decl. of A. Michon Kretschmaier ¶ 5, ECF No. 11-2 (D.D.C. May 10, 2018).

developing a recompetition) and eligible applicants (which are now taking the steps necessary to prepare a competing application).[2]  Plaintiff asserts that these interests are not relevant because HHS has yet to receive applications or award grants.  Pl.'s Resp. Br. at 5.  While that would be sufficient for laches, it is not necessary.  Laches is applicable whenever a putative plaintiff "create[s] an impression of acquiescence that has led others to make substantial financial commitments."  *Indep. Bankers Ass'n of Am. v. Heimann*, 627 F.2d 486, 488 (D.C. Cir. 1980).  Furthermore, Plaintiff's request for relief will circumscribe HHS's ability to "effectuat[e] statutes enacted by representatives of its people" to achieve legitimate policy goals, "a form of irreparable injury" that must be weighed when analyzing an equitable issue.  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).[3]

Plaintiff also argues that Defendants are not entitled to laches because, it asserts, the Tier I recompetition announcement does not comply with the governing statute.  In its view, the announcement does not seek to implement programs "proven effective through rigorous

---

[2] Plaintiff's assertion that prejudice to third parties is irrelevant to a laches analysis, Pl.'s Resp. Br. at 7, is wrong. *See, e.g.*, *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1978 (2014) (holding that laches did not bar petitioner's suit from going forward because, among other reasons, it would "work no unjust hardship on innocent third parties, such as consumers" who purchased a copy of respondent's film); *Heimann*, 627 F.2d at 488 (noting financial commitments made by non-party "national banks" and potential prejudice to third parties and the public interest as a basis for meeting the "prejudice" prong of the laches test).

[3] Plaintiff's brief argues that prior, adverse decisions with respect to a subset of grantees gave it no "reason to rely on 'an impression of acquiescence' in its termination decision with respect to *all* grantees.  Pl.'s Resp. Br. at 5-6. But judgments in those actions say nothing about the intentions of other grantees to bring suit, nor do they imply that the agency must change its position with respect to all grantees.  "[N]onmutual offensive collateral estoppel simply does not apply against the government in such a way as to preclude relitigation" of a question previously resolved by a court in favor of different plaintiffs.  *United States v. Mendoza*, 464 U.S. 154, 162-63 (1984).  Absent a judgment as to a particular plaintiff, the government retains the ability to make its own determination as to the scope of its lawful discretion in matters involving other parties.  *See also Am. Fed. of Gov't Emps., Council 214 v. Fed. Labor Relations Auth.*, 835 F.2d 1458, 1463 (D.C. Cir. 1987) (rejecting collateral estoppel argument in light of *Mendoza* despite two decisions from other circuits because separate locals of the same union were not the "same party" for purposes of collateral estoppel); *Reich v. D.C. Wiring, Inc.*, 940 F. Supp. 105, 106-07 (D.N.J. 1996) (holding, in light of *Mendoza*, that government was not precluded from bringing enforcement action against plaintiff despite an earlier determination adverse to the government in a separate dispute to which the government was a party on a question of law common to both cases).

evaluation to reduce teenage pregnancy."  Pl.'s Resp. Br. at 6.  Plaintiff did not raise a challenge

to this funding opportunity announcement in its complaint or in its summary judgment motion,

and may not convert its case into an entirely different cause of action now.  In any event, any

such challenge would be futile for two reasons.  First, the announcements do not constitute

reviewable final agency action.  *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal

citations omitted).  When a change to grant award criteria involves some level of discretion, "the

matter is not ripe for judicial review" until the agency "completes its review and reaches a

decision [on the grant award]."  *Citizens Alert Regarding Env't v. EPA*, 102 F. App'x 167, 168

(D.C. Cir. 2004).[4]

Second, neither the TPP Program appropriation nor any of HHS's governing regulations

sets forth the standard that Plaintiff describes.  Although the new FOA does not require

applicants to show that their programs were previously approved by the TPP Evidence Review,

neither the appropriation nor any of HHS's governing regulations make inclusion on that list a

condition for the agency to find that a program has been "proven effective."  The announcement

simply advises applicants to replicate or adapt one of two programs recognized by social science

research as effective.  *See* Dep't of Health & Human Servs., Announcement of Availability of

Funds for Phase I Replicating Programs (Tier 1) 12,

https://www.grantsolutions.gov/gs/preaward/previewPublicAnnouncement.do?id=61741.

Plaintiff does not contest the effectiveness of the programs HHS has asked applicants to

replicate, and points to no statute or regulation requiring the agency to adhere to its prior

---

[4] *See also Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1103-04 (9th Cir. 2007) (holding that there was no "final agency action . . . until the [agency] ha[d] reviewed a grant application and decided to disburse the funds"*); Karst Env't Educ. & Prot., Inc. v. EPA*, 403 F. Supp. 2d 74, 81 (D.D.C. 2005) (holding that there was no final agency action when the agency "ha[d] not yet decided whether to award the grant"), *aff'd* 475 F.3d 1291, 1295 (D.C. Cir. 2007).

approach.  Even assuming the issue is properly before the Court, Plaintiff's accusation that the recompetition forecloses equitable relief is not viable.

HHS cannot turn on a dime when making policy choices about its grant programs.  The new funding announcements for the TPP Program required a substantial investment in time, money, and other resources to develop, and will require significant resources to implement on the part of both HHS and the public before the close of the fiscal year.  HHS and the public at large will sustain serious prejudice if grantees who sat on their claims for close to a year and showed no interest in raising them until other grantees obtained favorable outcomes are allowed to bring their claims at this late juncture.  Accordingly, Plaintiff's claim (and the claims of its class members) should be dismissed.

### III.    Plaintiff Raises No New Arguments on the Merits

Plaintiff provides a brief response in its opposition brief regarding the merits.  Pl.'s Resp. Br. 7-10.  But this response is limited to a summary of orders issued by this Court and others in the first wave of TPP Program litigation.  Plaintiff provides no new arguments in support of the merits of its challenge to HHS's decision not to offer it the opportunity to apply for continuation funding, nor does it respond to Defendants' arguments about the reasoning of these orders.  It has consequently waived any such arguments.  Accordingly, for the reasons stated in Defendants' cross-motion, entry of judgment in favor of the Defendants is appropriate.

### CONCLUSION

For these reasons, the Court should grant Defendants' cross-motion to dismiss or for summary judgment.

Dated:  May 30, 2018                    Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JESSIE K. LIU
United States Attorney

JOEL McELVAIN
Assistant Branch Director, Federal Programs
Branch

RUTH A. HARVEY
Director, Commercial Litigation Branch

MICHAEL J. QUINN
Senior Litigation Counsel, Commercial
Litigation Branch

/s/ *Michael J. Gerardi*
Michael J. Gerardi
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Room 7223
Washington, D.C. 20530
Tel: (202) 616-0680
Fax: (202) 616-8460
E-mail: michael.j.gerardi@usdoj.gov

/s/ *Jonathan E. Jacobson*
Jonathan E. Jacobson
Alicia M. Hunt
Trial Attorneys
United States Department of Justice
Civil Division, Commercial Litigation Branch
1100 L St. NW, 10th floor
Washington, D.C. 20005
Tel: (202) 353-7971
Fax: (202) 514-9163
E-mail: jonathan.e.jacobson@usdoj.gov

*Attorneys for Defendants*