## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HEALTHY FUTURES OF TEXAS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:18-cv-992 (KBJ) |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

### MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff Healthy Futures of Texas ("Healthy Futures") has sued the United

States Department of Health and Human Services ("HHS") and HHS Secretary Alex

Azar (collectively, "Defendants") on behalf of itself and similarly situated individuals.

(*See* Compl., ECF No. 1.)  Healthy Futures is a nonprofit organization that received a

five-year grant from HHS under the federal Teen Pregnancy Prevention Program

("TPPP") in 2015 to fund a teen pregnancy prevention program near the Texas-Mexico

border (*see id.* ¶ 8), and its complaint claims that HHS's unexplained decision to end

prematurely the grant funding that HHS authorized for Healthy Futures and dozens of

other non-profit organizations (in 2018) was arbitrary and capricious agency action that

violated the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (*see id.* at ¶¶ 53–57

(citing 5 U.S.C. § 706(2)(A)).)  Before this Court at present is the Motion for Class

Certification that Healthy Futures filed along with its complaint; the motion proposes

that this Court "certify this case as a class action under Federal Rule of Civil Procedure 23(b)(2)[.]" (Pl.'s Mem. in Supp. of Mot. for Class Certification ("Pl.'s Mem."), ECF No. 6, at 4.)[1]

As amended, Healthy Futures's motion for class certification defines the putative class as

> [a]ll entities awarded Teen Pregnancy Prevention Program grants by the Department of Health and Human Services (HHS) in 2015, with five-year project periods, whose grants HHS purported to "shorten," effective June 30, 2018.

(Compl. at 12–13.)[2]  Moreover, and notably, Healthy Futures's motion expressly excludes the similarly-situated TPPP grant recipients who filed suit against HHS in four prior cases: *Policy and Research, LLC v. HHS.*, No. 18-cv-346, 2018 WL 2184449, at *1–13 (D.D.C. May 11, 2018), *Planned Parenthood of Greater Washington and Northern Idaho v. HHS*, No. 2:18-cv-0055-TOR, 2018 WL 1934070 (E.D. Wash. Apr. 24, 2018), *King County v. Azar*, No. 18-cv-00242 (W.D. Wash. May 29, 2018), and *Healthy Teen Network v. Azar*, No. 18-cv-00468 (D. Md. Apr. 25, 2018).  (*See* Pl.'s Mem. at 4.)  HHS opposes Healthy Futures's motion for class certification on the grounds that the proposed class definition impermissibly carves out these TPPP grantees (*see* Defs.' Opp'n to Pl.'s Mot. for Class Certification ("Defs.' Opp'n"), ECF No. 17, at 3–4 (calling the exception of grantees with resolved prior claims an

---

[1] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

[2] Healthy Futures's initial class definition asserted that "HHS purported to terminate or 'shorten'" the putative class members' grants.  (*See* Pl.'s Mem. at 4.)  However, during the discussion of class certification that transpired at the status conference this Court held on May 21, 2018, Plaintiff agreed to delete the words "or terminate" from the proposed class definition.  (*See* Tr. of Status Hr'g ("Hr'g Tr."), ECF No. 25, at 53:24–54:4.)

unauthorized "opt-out mechanism")), and the agency further maintains that there is no way of revising the class definition to avoid improperly interfering with litigation in those original four cases (*see id.* at 5 (arguing that removal of the carve outs would result in a class that "improperly interfere[s] with the litigation of similar issues in other judicial districts" (internal quotation marks and citation omitted))).

Upon consideration of the parties' written submissions and the oral arguments presented at the May 21, 2018 status conference, the Court issued an Order on May 25, 2018, **GRANTING** Plaintiff's motion for certification of the class defined above, and **APPOINTING** Sean Sherman and Allison Zieve to serve as class counsel in the instant matter. (*See* Order Granting Motion to Certify Class, ECF No. 24, at 1–2.) The instant Memorandum Opinion provides the reasons for that Order.

## I.    BACKGROUND

In its *Policy and Research, LLC* opinion, this Court recently explained the facts that pertain to the TPPP in general, as well as those that relate to HHS's particular decision to "shorten" the five-year project periods relating to grants that had been awarded in 2015 pursuant to that program. *See Policy & Research, LLC*, 2018 WL 2184449, at *2–5. Those facts need not be restated here. For present purposes, it is sufficient to note that Healthy Futures is a "nonprofit organization that is a recognized leader in teen and unplanned pregnancy prevention in San Antonio and Texas" (Decl. of Dr. Janet Realini, ECF No. 6–1, ¶ 2), and that Healthy Futures received a grant under the TPPP in support of its efforts to disseminate an "innovative evidence-informed sexual health curriculum" to schools and agencies in Texas (*id.* ¶¶ 2–3). Healthy Futures is one of eighty-one nonprofit organizations that received TPPP grants during

the 2015-2020 grant cycle but were notified by HHS in 2017 that their project periods were being "shorten[ed]" such that their funding would expire at the end of June of 2018.  (Notice of Award FY 2017–2018 for Healthy Futures of Texas, Ex. C to Decl. of Dr. Janet Realini, ECF No. 6-1, at 35.)

Healthy Futures filed the instant lawsuit on April 27, 2018 to challenge that agency decision.  (*See* Compl. ¶¶ 53–57.)  Healthy Futures's complaint trails several other similar legal actions filed in this Court and elsewhere, the first four of which were filed on the same day—February 15, 2018—in different federal courts across the country.[3]  But unlike those prior plaintiffs, Healthy Futures has requested that a nationwide class action be certified under Federal Rule of Civil Procedure 23(b)(2) to secure injunctive relief on behalf of *all* TPPP grantees who received grant awards for five-year project periods in 2015 and had their projects summarily shortened by HHS (except those who have already received this relief in the context of the four lawsuits that were filed in February of 2018).  (*See id.* ¶¶ 45–46.)  In this regard, Healthy Futures asserts that this proposed class satisfies all of the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2), and therefore, certification is appropriate.  (*See* Pl.'s Mem. at 8–12.)

HHS has objected to Plaintiff's proposed class action.  The agency argues that this Court cannot certify such a class because the proposed exclusion of former TPPP plaintiffs functions as an "opt-out mechanism" (*see* Defs.' Opp'n at 3), when it is well established that "the mandatory nature of a Rule 23(b)(2) class precludes individual

---

[3] *See Policy & Research, LLC v. HHS*, No. 18-cv-346 (KBJ), 2018 WL 2184449, at *2–5 (D.D.C. May 11, 2018); *Healthy Teen Network v. Azar*, No. CCB-18-468, 2018 WL 1942171, at *1–4 (D. Md. Apr. 25, 2018); *Planned Parenthood of Greater Wash. & N. Idaho v. HHS*, No. 2:18-cv-0055-TOR, 2018 WL 1934070, at *1–2 (E.D. Wash. Apr. 24, 2018).

opt-outs" (*id.* at 4).  Defendants also contend that the impermissible carve outs cannot

be removed without risking improper interference with the cases that Healthy Futures

seeks to exclude.  (*Id.* at 5.)  Healthy Futures's motion for class certification became

ripe for this Court's review on May 21, 2018.  (*See* Pl.'s Reply Mem. in Further Supp.

of Mot. for Class Certification ("Pl.'s Reply"), ECF No. 20.)

## II.    LEGAL STANDARDS

Before a district court may certify a class under Rule 23, the party seeking

certification must establish that the proposed class "satisfies all of the prerequisites set

forth in Rule 23(a)."  *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 190 (D.D.C.

2017) (citation omitted).  Rule 23(a) requires that: "(1) the [proposed] class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or

fact common to the [proposed] class; (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the [proposed] class; and (4) the

representative parties will fairly and adequately protect the interests of the [proposed]

class."  Fed. R. Civ. P. 23(a).  These four requirements are usually known by their

shorthand names: "numerosity, commonality, typicality, and adequacy of

representation[.]"  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460

(2013).

Additionally, once the party seeking certification has satisfied the four

requirements of Rule 23(a), it must also establish that the class action it seeks to litigate

is one of the three types of class actions authorized by Rule 23(b).  *See Ross*, 267 F.

Supp. 3d at 190–91.  Here, Healthy Futures is pursuing class-wide injunctive relief;

therefore, it has requested certification under Rule 23(b)(2) (*see* Pl.'s Mem. at 4), which

provides that a class action may be maintained if "the party opposing the class has acted

or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a

whole[,]" Fed. R. Civ. P. 23(b)(2).

Notably, the party seeking to certify a class under Rule 23 must provide proof

that the proposed class satisfies all of the necessary criteria, *see In re Rail Freight Fuel

Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 249 (D.C. Cir. 2013), and it

bears the burden of proving that the "putative class[] meet[s] the requirements of Rule

23 by a preponderance of the evidence[,]" *Garnett v. Zeilinger*, 17-cv-1757, 2018 WL

1524748, at *2 (D.D.C. Mar. 28, 2018).  For its part, the court may "probe behind the

pleadings before coming to rest on the certification question[,]" *In re Rail Freight*, 725

F.3d at 249 (internal quotation marks and citation omitted), with an understanding that

the question of class certification "often 'involves considerations that are enmeshed in

the factual and legal issues comprising the plaintiff's cause of action[,]'" *Steele v.

United States*, 159 F. Supp. 3d 73, 80 (D.D.C. 2016), *on reconsideration in part*, 200 F.

Supp. 3d 217 (quoting *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 n.5 (D.C.

Cir. 2006)).  Courts must take care to refrain from engaging in free-ranging merits

inquiries, however; instead, they must examine merits questions only to the extent that

they are "relevant to determining whether the Rule 23 prerequisites for class

certification are satisfied."  *DL v. District of Columbia*, 713 F.3d 120, 126 (D.C. Cir.

2013).

## III.   ANALYSIS

Healthy Futures has argued that Rule 23(a) authorizes the proposed class of

TPPP grantees (*see* Pl.'s Mem. at 8–12 (arguing that Rule 23(a) is satisfied)), and it appears that HHS does not contest this proposition (*see* Pl.'s Reply at 1 (pointing out that HHS does not dispute that Rule 23(a) is satisfied); *see also* Hr'g Tr. at 57:12–16). Indeed, the only issue in dispute—and one that HHS claims is fatal to Healthy Futures's class certification motion—is whether the class that Healthy Futures proposes can be certified under Rule 23(b)(2), even though Healthy Futures seeks an express exclusion of TPPP grantees who filed lawsuits prior to the filing of Healthy Futures's case.  (*See* Defs.' Opp'n at 3–5; *see also* Pl.'s Reply at 2–4.)  In this regard, HHS vigorously contends that Healthy Futures is caught "on the horns of [a] dilemma" (Hr'g Tr. at 17:17): if the proposed class "exclude[s] grantees who sued before Plaintiff did[,]" then the class definition functions as an "opt-out" mechanism, which Rule 23(b)(2) does not permit (Defs.' Opp'n at 3–4), but if the prior plaintiffs are carved out of the class definition, then the proposed class action improperly interferes with those pre-existing actions (*see id.* at 5).  As explained below, this Court concludes that the agency's objection is meritless, and that, in fact, the circumstances that have given rise to the claims in Healthy Futures's complaint easily comport with the requirements of Rules 23(a) and 23(b)(2).

**A.      The Proposed Class Is Proper Under Rule 23(a) Because It Satisfies The Numerosity, Commonality, Typicality, and Adequacy Requirements**

Starting with the "numerosity" requirement, it is clear to this Court that the proposed class is sufficiently numerous for purposes of Rule 23(a).  In this district, "[t]here is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination requires examination of the specific facts of each case and imposes no absolute limitations." *Taylor v. D.C. Water & Sewer*

*Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) (internal quotation marks and citation omitted). However, as a general rule of thumb, "the numerosity requirement is satisfied and [] joinder is impracticable where a proposed class has at least forty members." *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 160 (D.D.C. 2014) (quoting *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 114 (D.D.C. 2007)); *accord Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 117 (D.D.C. 2017); *Coleman v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015). Healthy Futures's proposed class consists of more than sixty TPPP grantee organizations headquartered throughout the United States whose five-year project periods HHS authorized in 2015 and who had their grant project periods cut short in the Notice of Award that HHS issued in 2017. (*See* Compl. ¶¶ 45, 48–49; *see also* OAH, *Current Teen Pregnancy Prevention Program (TPP) Grantees* (listing all TPPP grantees for the 2015–2020 cycle); OAH Press Release, *HHS Awards Teen Pregnancy Prevention Program Grants* (July 6, 2015), Ex. B to Decl. of Sean Sherman, ECF No. 6-2, at 13–14.)[4] This number of prospective class members, and also their geographic diversity, supports a finding that the proposed class is sufficiently numerous and that joinder is impracticable.

The next of Rule 23(a)'s requirements—commonality—is also satisfied. As the Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the key to the commonality requirement is whether the members of a proposed class have "suffered the same injury" such that their claims depend upon the resolution of a "common contention." 564 U.S. at 350. In this regard, a court must ask whether there is a common question of fact or law whose resolution will "resolve an issue that is

---

[4] This list is available at https://www.hhs.gov/ash/oah/grant-programs/teen-pregnancy-prevention-program-tpp/current-grantees/index.html.

central to the validity of each one of the claims in one stroke."  *Id.*; *accord Ross*, 267 F.

Supp. 3d at 195–96.  And that inquiry is simplified in cases like the instant one,

because, as the D.C. Circuit has explained, a challenge to "a uniform policy or practice

that affects all class members" in the same way clearly gives rise to common questions

of fact or law.  *DL*, 713 F.3d at 128; *see also Garza v. Hargan*, 2018 WL 1567600, at

*5 (D.D.C. Mar. 30, 2018), *appeal filed*; *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 181

(D.D.C. 2015).  This Court has no doubt that the claims Healthy Futures brings in the

instant case meet this standard, for the prospective class members have all suffered the

same injury: the unexplained and indiscriminate "shorten[ing]" of their five-year

project periods and the lapse in grant funding that accompanies that agency decision,

(Compl. ¶ 49; *see also, e.g.*, *Healthy Teen Network* Oral Arg. Tr., Ex. E to Decl. of

Sean Sherman, ECF No. 6-2, at 39 (confirming that HHS made the decision to shorten

the project periods for all 81 TPPP grants programmatically)).  Thus, when considering

whether HHS's decision to institute a programmatic policy that shortened the project

period for all of the class members by two years without providing any explanation for

this action violated the Administrative Procedure Act, as Healthy Futures claims (*see*

Compl. ¶¶ 53–57), this Court would be deciding in one fell stroke whether or not the

agency practice that allegedly injured the putative class members was legally

permissible.  As such, common issues of law and fact clearly exist.  *See, e.g.*, *Nio*

*v. DHS*, 323 F.R.D. 28, 32 (D.D.C. 2017); *Steele*, 159 F. Supp. 3d at 80.

The third of Rule 23(a)'s requirements is typicality, and with respect to this

mandate, the Court must assess whether the proposed party representative's injury is

similar to that of other class members.  While the commonality inquiry seeks to

determine whether or not class members share the same injury as one another, the question of typicality asks whether "the claims of the representative and absent class members are sufficiently similar so that the representatives' acts are also acts on behalf of, and safeguard the interests of the class." *Littlewolf v. Hodel*, 681 F. Supp. 929, 935 (D.D.C. 1988), *aff'd sub nom. Littlewolf v. Lujan*, 877 F.2d 1058, 1060 (D.C. Cir. 1989); *accord Alvarez*, 303 F.R.D. at 161.  Furthermore, and notably, to the extent that "each class member's claim arises from the same course of events that led to the claims for the representative parties and each class member makes similar legal arguments to prove the defendant's liability[,]" typicality is obviously established, *Alvarez*, 303 F.R.D. at 161 (internal quotation marks and citation omitted), and so it is here.  Healthy Futures's claims are identical to (and thus plainly representative of) the claims of other members of the proposed class.  (*See* Compl. ¶¶ 52–57 (challenging HHS's indiscriminate decision to shorten the project periods for all TPPP grantees with five-year project periods authorized in 2015)).  *See also Alvarez*, 303 F.R.D. at 161 (finding the typicality requirement satisfied when the injuries that the named plaintiffs suffer are identical to the injuries of the class members and "caused by the exact same conduct").

Finally, Rule 23(a) demands proof that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This "adequacy requirement" is satisfied once the moving party demonstrates that "(1) there is no conflict of interest between the proposed class representative and other members of the class, and (2) the proposed class representative will vigorously prosecute the interests of the class through qualified counsel."  *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010) (citation omitted).  The first of these two criteria exists to prevent any

"conflicts of interest" that would prove "fundamental to the suit and . . . go to the heart of the litigation." *Garza*, 2018 WL 1567600, at *7; *see also Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 41 (D.D.C. 2017). Meanwhile, the second criterion merely ensures that "class counsel is competent" to manage a class action and the underlying legal claims the lawsuit seeks to advance. *Garza*, 2018 WL 1567600, at *7; *see also Nat'l Veterans Legal Servs. Program*, 235 F. Supp. 3d at 43. Given these standards, this Court again has no trouble in concluding that Healthy Futures is an adequate class representative, because Healthy Futures and the other class members all presumably want the same thing—the restoration of the five-year project periods and related TPPP grant funding that HHS discontinued in July of 2017—and the Court can foresee no "fundamental" disagreements that go to the heart of the litigation at issue in this case. *Cf. Alvarez*, 303 F.R.D. at 161–62. Furthermore, Mr. Sherman and Ms. Zieve have experience litigating class actions and APA claims (*see* Decl. of Allison M. Zieve, ECF No. 6-3, ¶ 3), including APA claims involving HHS's decision to shorten the project period of other TPPP grantees, *see, e.g., Policy & Research, LLC*, 2018 WL 2184449, at *1. Thus, these attorneys are well equipped to serve as Class Counsel for this case, and Healthy Futures's obvious commitment to litigating this action in a manner consistent with the interests of the proposed class members persuades the Court that Rule 23(a)'s adequacy requirement is also satisfied.

### B. The Proposed Class Is Also Proper Under Rule 23(b)(2), Notwithstanding The Express Exclusion Of TPPP Grantees With Prior Resolved Claims

"Rule 23(b)(2) exists so that parties and courts . . . can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *DL v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017). The Supreme Court

discussed these types of class actions relatively recently in *Wal-Mart*, explaining that "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted[.]"  *Wal-Mart*, 564 U.S. at 360 (internal quotation marks and citation omitted).  By its terms, Rule 23(b)(2) permits a class action only where "a single injunction or declaratory judgment would provide relief to each member of the class[,]" *id.*, which means that a district court should not certify a 23(b)(2) class action if each "individual class member would be entitled to a different injunction or declaratory judgment against the defendant[,]" *id.* (emphasis omitted); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) (reemphasizing that Rule 23(b)(2) class actions should not be certified where "members of the certified class" would be entitled to individualized relief).  With this guidance in mind, courts within this district have certified Rule 23(b)(2) class actions only if "(1) the defendant's action or refusal to act [was] generally applicable to the class," and if "(2) plaintiff [sought] final injunctive relief or corresponding declaratory relief on behalf of the class."  *Steele*, 159 F. Supp. 3d at 81 (internal quotation marks and citation omitted); *accord Garza*, 2018 WL 1567600, at *9.

The class Healthy Futures seeks to certify is proper under these Rule 23(b)(2) standards.  First of all, the agency action that Healthy Futures challenges—the "shorten[ing]" of TPPP grant project periods by two years (*see* Compl. ¶ 34 (emphasis omitted))—impacted the entire proposed class.  Moreover, and importantly, the requested relief that Healthy Futures seeks—an order that declares the agency action unlawful and that "[e]njoin[s] defendants to reinstate the TPPP grants from the five-year project period . . . and to continue to administer the grants to the same extent and

in the same manner as prior to the unlawful termination" (*id.*, Prayer for Relief, ¶ C)—
would provide the same relief to all class members.  Indeed, the agency has repeatedly
confirmed that it took the same action with respect to every one of the TPPP grantees
and without regard to the individual circumstances of any one of the recipient
organizations.  (*See Healthy Teen Network* Oral Argument Tr. at 34 ("[I]t was a
programmatic decision to step back and reassess the future of the program on a
program-wide basis.  This was not targeting any individual grantee. . . .  This was a
programmatic decision across the board."); *Policy & Research, LLC* Oral Argument Tr.,
Ex. F to Decl. of Sean Sherman, ECF No. 6-2, at 39 (explaining that the agency
"decid[ed] as a programmatic matter that it would not issue continuing awards");
*Planned Parenthood of Greater Wash. and N. Idaho* Oral Argument Tr., Ex. G to Decl.
of Sean Sherman, ECF No. 6-2, at 45 (identifying the agency action as "a broader
programmatic determination, a broader policy change, a policy shift").)  And because
the proposed class members have all suffered the same injury due to HHS's
programmatic decision to shorten the project periods for all TPPP grantees, this Court
would need to enter only a single program-wide injunction on behalf of the class if it
agrees with Healthy Futures's claims on the merits.  Such is precisely the situation that
Rule 23(b)(2) envisions.  *See Wal-Mart*, 564 U.S. at 360–361; *DL*, 860 F.3d at 726.

HHS does not seriously contest that the proposed class satisfies the Rule 23(b)(2)
requirements.  (*See* Defs.' Opp'n at 1–6.)  For example, its passing suggestion that an
injunction requiring HHS "to accept and process the non-competing continuation
applications of plaintiff and class members to the same extent and in the same manner
as those grants were administered previously" (*id.* at 4 (internal quotation marks and

citation omitted)) would "impose[] somewhat different obligations" on the agency (*id.* at 4–5) is unexplained, and, of course, that sentiment is somewhat true, but only insofar as each TPPP grant-recipient's non-competing application is necessarily substantively different.  The agency does not, and cannot, maintain that a court order requiring it to "accept and process" each application "in the same manner as before" somehow introduces the type of variability with respect to the agency's treatment of the class members that renders the certification of this class under Rule 23(b)(2) improper.  (*Id.* at 4 (internal quotation marks and citation omitted).)

The agency's other primary contention—that the proposed class definition functions as an impermissible "opt-out mechanism" because it expressly excludes those TPPP grant recipients who have already received the requested relief (*see id.* at 3–4)— fares no better.  HHS cites no direct authority for the novel proposition that explicitly acknowledging the obvious fact that such TPPP grantees no longer have valid claims against the agency amounts to a nefarious attempt to permit these plaintiffs to opt out of the class action, and that may well be because well-established principles applicable to class action litigation do not support any such conclusion.

For example, it is clear beyond cavil that the "class definition" and "opt-out" mechanisms involve different decision makers, serve different functions, and take place at markedly different times.  When it comes to *defining* a proposed class, the proposed class representative and the district court make the determination regarding the parameters of membership, and that step occurs *before* a district court has certified the case for class action proceedings.  *See* Fed. Judicial Ctr., *Manual for Complex Litigation* § 21.222 (4th ed. 2004).  By contrast, the opt-out mechanism is the initiative

of individual putative class members: each decides whether or not he or she wishes to participate in the class action *after* the district court has certified the case for class adjudication.  *See* Scott Dodson, *An Opt-In Option for Class Actions*, 115 Mich. L. Rev. 171, 173 (2016) ("In an 'opt-out' class, any person [already] within the scope of the class definition is a class member by default unless she affirmatively excludes herself from the class[.]").  Thus, while these two devices taken together ultimately determine the composition of a putative class, they differ with respect to timing and who has the power to decide what the composition of the class will be.  And, again, HHS has offered nothing to support its assertion that the threshold membership decision is somehow constrained by Rule 23(b)(2)'s requirements with respect to the unavailability of opt outs.

Even more to the point, HHS's argument that it is improper to explicitly carve out litigants who have already received the requested relief makes no sense.  Healthy Futures's class action definition is entirely unremarkable insofar as it simply makes plain what is undoubtedly implicit in any and all proposed class action definitions: people who no longer have claims against the defendant are not (and in fact *cannot* be) included in the class.  *Cf. Burke v. Barnes*, 479 U.S. 361, 363 (1987) ("Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case[.]").  What is more, no less an authority than the Supreme Court has already implicitly and rejected the argument that Rule 23(b)(2) is violated if a proposed class definition expressly excludes potential members who have existing or resolved claims.  The district court in *Califano v. Yamasaki*, 442 U.S. 682 (1979), had certified a Rule 23(b)(2) class that "excluded from the class residents of Hawaii and the

Eastern District of Pennsylvania, where suits raising similar issues were known to have been brought" as well as all other persons "who had participated as plaintiffs or members of a plaintiff class in litigation" relating to "similar issues, if a decision on the merits had been rendered." *Id.* at 689.  The Supreme Court ultimately upheld the district court's decision to exclude from the relevant class definition those individuals who had already brought a lawsuit against the defendant in a judicial district other than the one where the class action was to be litigated, and in fact, expressly *approved* of the district court's "sensitivity to ongoing litigation of the same issue in other districts." *Id.* at 703.  Thus, far from asserting (as HHS does here) that a Rule 23(b)(2) class definition that excludes plaintiffs involved in ongoing or resolved litigation outside of the class action's judicial district *defeats* an otherwise viable nationwide class action, the Supreme Court strongly suggested that a district court should take care to define the class so as to ensure that a 23(b)(2) class action does not interfere with litigation elsewhere.  *See id.*

Here, Healthy Futures's proposed class definition goes to great lengths to follow the Supreme Court's dictate, by deliberately and specifically excluding those particular TPPP grantees who have already secured the relief that the putative class members seek.  (*See* Compl. ¶ 45.)  And not only does this Court conclude that there is nothing impermissible about this exclusion, to gild the lily further, the Court adds that HHS's argument that prior litigation forecloses a subsequent Rule 23(b)(2) class (because the prior litigants cannot be carved out without running afoul of Rule 23(b)(2)) yields absurd results.  As agency counsel acknowledged during the status conference, this view of the law effectively creates a '*Hunger Games*'-tinged race to the courthouse, in

which similarly situated plaintiffs who seek injunctive relief for their own benefit must be the first in the door *and* must also volunteer as tribute for the benefit of all other potential plaintiffs by asserting their claims as a class action.  (*See* Hr'g Tr. at 55:11–16.)[5]  This is the inevitable result of the agency's insistence that any plaintiff's decision to file its own case and litigate its own claims precludes the certification of a Rule 23(b)(2) class *at any later point*, notwithstanding the universality of claims, issues, and requested relief.  (*See id.* ("If they had brought a class action back in February or whenever the first case was brought, that wouldn't have been the issue that we have now.  But the fact that they waited . . . is what creates the problem.").)  But HHS makes no credible argument as to *why* Rule 23(b)(2) should be interpreted to instigate such drama, and this is especially so given the fact that the agency's preclusion consequence appears nowhere in the rule itself and would clearly undermine the purpose of Rule 23(b)(2), which is to "avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief,"  *DL v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017).

## IV.   CONCLUSION

This Court concludes that Rule 23's requirements are met for certifying the proposed class action under Rule 23(b)(2), and therefore, the Court has certified the following class:

> [a]ll entities awarded Teen Pregnancy Prevention Program grants by the Department of Health and Human Services (HHS) in 2015, with five-year project periods, whose grants HHS purported to "shorten," effective June 30, 2018.

---

[5] *See* Suzanne Collins, *The Hunger Games* 22 (2008); *see also The Hunger Games* (Color Force 2012).

Moreover, the plaintiffs in the following actions are *not* included in this class definition: *Policy and Research, LLC v. HHS*, No. 18-cv-346-KBJ (D.D.C.), *Planned Parenthood of Greater Washington and Northern Idaho v. HHS*, No. 2:18-cv-00055 (E.D. Wash.), *King County v. Azar*, No. 18-cv-00242 (W.D. Wash.), and *Healthy Teen Network v. Azar*, No. 18-cv-00468 (D. Md.).[6]  As noted in the Order that this Court issued on May 25, 2018, this class is certified to resolve the claims held in common by the class members regarding whether or not HHS's decision to "shorten" the project periods for the TPPP grants was arbitrary or capricious within the meaning of 5 U.S.C. § 706(2)(A), and Sean Sherman and Allison Zieve are designated as class counsel for these claims.

DATE:  June 1, 2018

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[6] By adopting, this definition of the class, the Court rejects HHS's request to include in the class only those TPPP grantees "who were otherwise in good standing" and "who intend to seek continuation awards for the remaining years within the project period" (*see* Defs.' Opp'n at 6), because inserting such language into the class definition would make the category of class members less precise, and because doing so would not result in the uniform injunctive relief that is the appropriate remedy in a Rule 23(b)(2) class action.