**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| HEALTHY FUTURES OF TEXAS, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-992 (KBJ) |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

# MEMORANDUM OPINION

Before this Court at present are ripe cross-motions for summary judgment in the instant class action, which involve legal claims that are indistinguishable from the dispute that this Court recently considered and resolved in *Policy and Research, LLC v. HHS*, No. 18-cv-346, 2018 WL 2184449, (D.D.C. May 11, 2018). (*See* Pl.'s Mot. for Summ. J. on the Individual and Class Claims, ECF No. 7, at 12–16; Defs.' Cross-Mot. to Dismiss or for Summ. J., ECF No. 18, at 18–28.)[1] In fact, the only new issue that has arisen in the context of the summary judgment motions at issue here is HHS's contention that the equitable doctrine of laches bars Healthy Futures of Texas ("Healthy Futures") and the other class members (collectively "Plaintiffs") from filing their lawsuit *now*—some ten months after the challenged agency action, and more than two months after Policy and Research, LLC and other similarly situated plaintiffs filed

---

[1] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

lawsuits asserting identical claims in federal districts across the country.[2]

For the reasons explained below, this Court rejects HHS's laches argument, and it also finds no reason to depart from its conclusion that (1) the termination provisions of HHS's regulations apply to the agency's unexplained decision to "shorten" the project periods for the grants it had awarded to the class members under the Teen Pregnancy Prevention Program ("TPPP"), such that this decision is not committed to agency discretion by law, *see Policy & Research, LLC*, 2018 WL 2184449, at *7–12, and (2) HHS acted arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), because it terminated Plaintiffs' project periods without providing any explanation for this action and without complying with its own regulations, *Policy & Research, LLC*, 2018 WL 2185559, at *13. Accordingly, Plaintiffs' motion for summary judgment is **GRANTED**, Defendants' cross-motion to dismiss and for summary judgment is **DENIED**, and HHS's decision to shorten these project periods will be **VACATED**. A separate Order that requires HHS to accept and process the class members' noncompeting continuation applications to the same extent and in the same manner as before the agency decided to "shorten" the project periods for grants made under the TPPP will follow.

I.   **THE LACHES DISPUTE**

HHS contends that Healthy Futures and the class members it represents unreasonably delayed the filing of the instant lawsuit (which challenges agency action

---

[2] *See King Cnty. v. Azar, et al.*, C18-0242, 2018 WL 2411759, at *6 (W.D. Wash May 29, 2018); *Policy & Research, LLC v. HHS*, No. 18-cv-346 (KBJ), 2018 WL 2184449, at *2–5 (D.D.C. May 11, 2018); *Healthy Teen Network v. Azar*, No. CCB-18-468, 2018 WL 1942171, at *1–4 (D. Md. Apr. 25, 2018); *Planned Parenthood of Greater Wash. & N. Idaho v. HHS*, No. 2:18-cv-0055-TOR, 2018 WL 1934070, at *1–2 (E.D. Wash. Apr. 24, 2018).

that occurred last summer), and it further maintains that HHS would be prejudiced if Plaintiffs' belated request for an injunction is granted, because HHS is currently engaged in the expensive, labor-intensive process of awarding the contested TPPP grant funds to other organizations through a recompetition process. (*See* Defs.' Mem. in Opp'n to Pl.'s Mot. for Summ. J. & in Supp. of Their Cross-Mot. to Dismiss or for Summ. J. ("Defs.' Mem."), ECF No. 18-1, at 14–18.) In this regard, HHS emphasizes the following "factual circumstances," which, in the agency's view, render the April 27, 2018 filing of the instant action "unreasonable[.]" (*Id.* at 15.) First of all, HHS points out that the agency's "announcement" that each of the class members' project periods was being shortened, effective June 30, 2018, and "was made ten months ago." (*Id.* at 16.) Moreover, "[e]ven after [other] grantees began filing lawsuits to challenge HHS's decision, Healthy Futures (and the putative class it represents) waited another *two-and-a-half months* before seeking to assert its rights." (*Id.* (emphasis added); *see also id.* (decrying this delay as "not reasonably expeditious behavior" (internal quotation marks and citation omitted)).) HHS also highlights the fact that the class claims involve "government grants and contracts"—a context in which "expedient assertion of claims is vital." (*Id.* at 15 (citing *LTMC/Dragonfly, Inc. v. Metro. Wash. Airports Auth.*, 699 F. Supp. 2d 281, 293 (D.D.C. 2010)).)

HHS further insists that it would "unfairly prejudice" the agency to allow this case to proceed now. (*Id.* at 16.) This is because, while the class members purportedly dithered over instigating legal action to protect their interests, the agency "spent a year analyzing the [TPPP] and developing a new approach to the program at a cost to the agency of millions of dollars and many house of staff time." (*Id.* at 16–17.) Pursuant
3

to these efforts, HHS recently announced that the grant funding that Plaintiffs seek to preserve with this lawsuit will be competitively redistributed, so HHS argues here that the "requested relief interferes with the recompetition" both "by reducing the funds available to the agency to award to new grantees and diminishing HHS's investment in reviewing and redesigning the TPP Program[,]" and also by thwarting the legitimate expectations of the members of the public who will "commit resources to participate in that recompetition." (*Id.* at 17.) Thus, notwithstanding the fact that other TPPP grantees had launched several (ultimately successful) lawsuits challenging HHS's decision to cut the previous round of TPPP grant awards short prior to the time that the agency announced the recompetition, HHS maintains that it had "good reason to believe" that *these* grantees' alleged rights to the funding "had been abandoned" during the ten months that elapsed between the agency's decision to shorten Plaintiffs' project period and the class action lawsuit that Healthy Futures filed in this Court. (*Id.* at 18 (internal quotation marks and citation omitted)); *see also id.* at 16 ("When a litigant creates an impression of acquiescence that has led others to make substantial financial commitments, laches should apply to defeat the claim." (internal quotation marks and citation omitted)).)

On behalf of the class it represents, Healthy Futures vigorously disputes HHS's assertion of laches. (*See* Pl.'s Reply Mem. in Further Supp. of Mot. for Summ. J. & Mem. in Opp'n to Defs.' Cross-Mot. to Dismiss or for Summ. J. ("Pl.'s Reply"), ECF No. 22, at 6–11.) For one thing, Healthy Futures disagrees with the agency's contention that there was an unreasonable delay with respect to the filing of this lawsuit, and it does so largely by pointing to certain facts and circumstances that existed at the time

4

that HHS's decision to shorten the TPPP grants was made, which the organization says demonstrably influenced the timing of its response during the ten months prior to the filing of its action. (*See id.* at 6–8.) Specifically, Healthy Futures notes that "HHS's budget request for fiscal year 2018 proposed to eliminate the TPPP in May 2017, and Congress did not pass a 2018 funding bill rejecting that proposal under March 23, 2018." (*Id.* at 6.)[3] With respect to the agency's contention that the instant action should be deemed untimely on equitable grounds, Healthy Futures argues that filing this lawsuit five weeks after the time that Congress rejected HHS's elimination request "can hardly be deemed a delay, let alone an unreasonable one." (*Id.* at 7.) Healthy Futures also urges the Court to disregard HHS's suggestion "that delay should be measured from the filing of the four prior lawsuits[,]" because the agency "offers no support for the notion that a lawsuit becomes untimely, as an equitable matter, when it post-dates the filing of similar suits by two months and the decisions in those suits by a few days." (*Id.*)

As to prejudice, Healthy Futures maintains that any such allegation by the agency is "implausible because HHS's decision [to stop funding the existing TPPP grants] has been contested from the start." (*Id.* at 8.) That is, according to Healthy Futures, various TPPP grantees took swift action to express their dissatisfaction with

---

[3] This representation is undisputed. HHS specifically requested that Congress zero out funding for the TPPP during the 2018 fiscal year—a request that would have "eliminat[ed] the [TPPP]." (Overview of Budget Request, Ex. J to Decl. of Sean Sherman, ECF No. 6-2, at 85.) Congress appears to have taken that proposal quite seriously; indeed, according to news reports, Congress engaged in a heated debate as to whether funding would be appropriated for the TPPP. (*See* Politico, *Planned Parenthood Defunding Threatens Government Spending Package* (Mar. 7, 2018), Ex. G to Decl. of Michael J. Gerardi, ECF No. 18-3, at 63–66.) That question was finally answered in the appropriations bill that passed on March 23, 2018, when Congress reauthorized funding for the program. *See* Consol. Appropriations Act of 2018, Pub. L. No. 115-141.

5

HHS's decision to shorten these grant awards soon after the agency announced that decision; these actions included writing letters to the agency, "attempting to appeal the decision" through the administrative process, and encouraging House and Senate members to inquire about this HHS's decision. (*Id.*) In addition, on February 15, 2018, "nine grantees filed lawsuits challenging" this agency's decision. (*Id.* at 9.) Therefore, Healthy Futures argues that HHS was fully aware of the TPPP grantees' claims prior to its April 20, 2018 announcement that the funding would be recompeted (*see id.*), and "at no point did HHS have reason to rely on an impression of acquiescence" to its decision; indeed, "HHS developed the new [recompetition announcements] in light of the possibility of challenges to the termination of the TPPP grants and issued them in the midst of such litigation." (*Id.* (internal quotation marks omitted).)

This Court heard from the parties regarding HHS's laches argument, among other things, during a status conference that it held in this matter on May 21, 2018. The parties' cross-motions for summary judgment became ripe on May 30, 2018.

## II. LEGAL STANDARDS

The legal standards applicable to motions for summary judgment in APA cases are set forth in this Court's *Policy and Research, LLC* opinion. *See* 2018 WL 2184449 at *6. These are the standards that this Court has applied to rule on the summary judgment motions that are presented here.

With respect to laches, it is important to note that "[l]aches is 'a defense developed by courts of equity' to protect defendants against 'unreasonable, prejudicial delay in commencing suit.'" *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 960 (2017) (quoting *Petrella v. Metro–Goldwyn–Mayer,*

6

*Inc.*, 134 S. Ct. 1962, 1967, 1973 (2014)). The doctrine is "founded on the notion that equity aids the vigilant and not those who slumber on their rights" and thereby permit "pertinent evidence [to] become[] lost" or "equitable boundaries [to] blur as defendants invest capital and labor into their claimed property." *NAACP v. NAACP Legal Def. & Educ. Fund., Inc.*, 753 F.2d 131, 137 (D.C. Cir. 1985). It also serves to prevent plaintiffs from gaining "the unfair advantage of hindsight while defendants suffer the disadvantage of an uncertain future outcome." *Id.* If the doctrine applies in a given case, a plaintiff will be barred from pursuing "claims of an equitable cast[.]" *Petrella*, 134 S. Ct. at 1973.

Significantly for present purposes, the application of "[l]aches does not depend solely on the time that has elapsed between the alleged wrong and the institution of suit; it is principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties." *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 843 (D.C. Cir. 1982) (internal quotation marks and citation omitted). Thus, to establish a successful laches defense, the party asserting the defense must show "(1) [a] lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense[,]" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002), and "[t]he amount of prejudice required in a given case varies with the length of the delay[,]" *Pro-Football, Inc. v. Harjo*, 565 F.3d 880, 884 (D.C. Cir. 2009). In other words, "[i]f only a short period of time elapses between accrual of the claim and suit, the magnitude of prejudice required before suit would be barred is great[.]" *Id.* (quoting *Gull Airborne Instruments*, 694 F.2d at 843).

7

Because the laches inquiry necessarily requires the district court to "weigh [] both the length of delay and the amount of prejudice, it leaves the district court very broad discretion to take account of the particular facts of particular cases." *Id.* at 885. Thus, whether or not laches applies is necessarily a holistic and fact-bound determination. And there is nothing about the nature of a class action lawsuit that makes the defense of laches inapplicable to the claims of the class representative or class members, so when laches is raised to defend against claims in that context, the Court must engage in the necessary holistic evaluation of the facts in those cases as well. *See, e.g.*, *Does I through III v. District of Columbia*, 232 F.R.D. 18, 32 (D.D.C. 2005), *rev'd in part, vacated in part on other grounds sub nom. Doe ex rel. Tarlow v. District of Columbia*, 489 F.3d 376 (D.C. Cir. 2007); *Clarke v. Ford Motor Co.*, 220 F.R.D. 568, 575–76 (E.D. Wis. 2004), *opinion vacated on other grounds sub nom. Clarke ex rel. Pickard v. Ford Motor Co.*, 228 F.R.D. 631 (E.D. Wis. 2005).

### III. ANALYSIS

#### A. Laches Does Not Bar The Instant Claim Because There Was Not Unreasonable Delay In The Filing Of This Action, And The Maintenance Of This Lawsuit Does Not Prejudice HHS

As mentioned, for HHS to raise a successful laches defense, the agency must establish (1) that Healthy Futures and the class it represents exhibited an unreasonable lack of diligence in bringing the claims at issue in this lawsuit, and (2) that excusing this lack of diligence would prejudice HHS. *See Pro-Football, Inc.*, 565 F.3d at 882. For the following reasons, this Court concludes that HHS has failed to make the necessary showing with respect to either requirement.

First of all, HHS cannot credibly contend that Healthy Futures and the other

class members "slept on their rights," *Ewert v. Bluejacket*, 259 U.S. 129, 138 (1922), such that a finding of lack of diligence in the filing of this lawsuit is warranted. In early July of 2017, HHS made the decision to discontinue funding the five-year project periods that the agency had authorized under the TPPP. (*See, e.g.*, Notice of Award FY 2017–2018 for Healthy Futures of Texas, Ex. C to Decl. of Dr. Janet Realini, ECF No. 6-1, at 35.) The agency made this decision indiscriminately (*i.e.*, the decision applied across the board, with respect to all of the TPPP awards for five-year projects that HHS had issued in 2015), and as Plaintiffs have pointed out, before March 23, 2018, there was no guarantee that Congress would appropriate any funds for grants under the TPPP going forward, and thus no guarantee that any TPPP grantee would have had a viable claim in court. (*See* Pl.'s Reply at 6–7.) After Congress reauthorized funds, Plaintiffs filed the instant suit approximately five weeks later, on April 27, 2018—a period of time that cannot reasonably be conceived of as *any* delay as far as complex litigation is concerned, much less a delay that is indicative of an inexcusable lack of diligence on Plaintiffs' part. Indeed, courts in this district have explicitly held that such a minimal delay in bringing a claim cannot justify the application of the laches doctrine. *See Breen v. Tucker*, 760 F. Supp. 2d 141, 145 (D.D.C. 2011) (rejecting the argument that a one-month delay suffices for purposes of laches); *Purepac Pharm. Co. v. Thompson*, 238 F. Supp. 2d 191, 203 (D.D.C. 2002) (explaining that a five-month delay is not a sufficient delay for purposes of laches). Moreover, even if the relevant period of "delay" in this case was the ten months that elapsed between HHS's issuance of the 2017–2018 Notice of Award and the filing of Plaintiffs' lawsuit, *see Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 531 (D.C. Cir. 2010), that period would

*still* not be an unreasonable delay for laches purposes, *see Powell v. Zuckert*, 366 F.2d 634, 636 (D.C. Cir. 1966) (explaining that a sixteen-month delay in filing a lawsuit "is not generally considered enough time to warrant a finding of laches"); *see also Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 293, 297 (D.D.C. 2005) (concluding that a three-year period of delay was not unreasonable).

Also significant is the undisputed fact that HHS was *aware* of the TPPP grantees' collective resistance to the agency's decision to shorten the existing project periods. The agency does not dispute that it was subjected to a barrage of letters in the wake of its issuance of the 2017–2018 Notice of Award, nor does it contest that some grantees attempted to appeal the agency's decision administratively. (*See, e.g.*, Decl. of Benjamin Link, ECF No. 22-2, ¶¶ 3–4; 2d Decl. of Dr. Janet Realini, ECF No. 22-1, ¶ 4.) As a result, HHS's suggestion that the TPPP grantees that had not yet sued gave "an impression of acquiescence" with respect to the agency's decision is not only manifestly implausible, but also leads inexorably to the conclusion that any such agency belief was *itself* entirely unreasonable, and certainly cannot be credited in the context of the laches defense that the agency now seeks to assert.

Nor can HHS base its laches argument on the mere fact that the claims at issue here involve the funding of government contracts. (*See* Defs.' Mem. at 15–16.) Even setting aside the fact that none of the cases HHS cites analyzes the plaintiffs' actions against the backdrop of similar uncertainty about congressional appropriations, the cited cases are of limited utility because they involve challenges to an agency's decision to award a contract or funding grant to another organization for work that was slated to begin immediately. *See, e.g.*, *LTMC/Dragonfly, Inc. v. Metro. Wash. Airports*

*Auth.*, 699 F. Supp. 2d 281, 293 (D.D.C. 2010). Such bid protest scenarios necessarily raise the specter of urgency in a manner that is not present here. *See id.* (noting that "[i]n the *bid protest context*, time is of the essence" (emphasis added)); *see also id.* ("[C]omplaints about the solicitation and award of contracts . . . must be quickly asserted and expeditiously resolved so that the contract can awarded and the job begun." (internal quotation marks and citation omitted)). By contrast, although the class members' claims likely arose in July of 2017 (with HHS's issuance of the allegedly offensive Notice of Award), that Notice expressly stated that the announced change was going to occur the following summer (in 2018), and thus did not have the kind of *immediate* practical implications for either Plaintiffs or HHS that might otherwise weigh heavily in the laches analysis.

This all means that there is no factual basis for HHS's contention that there was an unreasonable delay in the filing of the instant lawsuit, which, as mentioned, is a prerequisite to establishing the equitable defense of laches. *See Menominee Indian Tribe*, 614 F.3d at 531. And, if possible, the complete absence of any credible claim of prejudice to the agency due to this class action is even clearer. As explained in Part II, *supra*, it is well established in this jurisdiction that only two kinds of prejudice can support a laches defense: (1) "[the] loss of evidence or witnesses supporting defendant's position" or (2) changes to the defendant's position "that would not have occurred but for the plaintiff's delay." *Gull Airborne Instruments*, 694 F.2d at 844. HHS does not (and cannot) contend that any delay in initiating this action on the part of Healthy Futures and the associated class members has resulted in the loss of evidence or the unavailability of key witnesses. (*See* Defs.' Mem. at 14–18 (making no such claim);

Defs.' Reply Mem. in Supp. of Cross-Mot. to Dismiss or for Summ. J. ("Defs.' Reply"), ECF No. 26, at 4–8 (same).) Therefore, the only potential question of prejudice here is the extent to which the government's position may have changed in the intervening time.

To demonstrate such prejudice, HHS first argues that it has "spent a year analyzing the [TPPP] and developing a new approach to the program at a cost to the agency of millions of dollars and many hours of staff time." (Defs.' Mem. at 16–17.) But HHS admits that it voluntarily embarked upon this revamp of the TPPP over a year ago, and that it did so *prior* to its decision to shorten the project periods for the grants it had previously authorized under the TPPP. (*See* Decl. of A. Michon Kretschmaier, ECF No. 18-4, ¶¶ 5–6.) Thus, HHS clearly incurred these costs as a result of its own choices and its own policy preferences, and would have done so regardless of the lawsuits that the class members or any of the other TPPP grantees have filed. *See Pro-Football*, 565 F.3d at 884 ("[A] finding of prejudice requires at least some reliance on the absence of a lawsuit—if [the defendant] would have done exactly the same thing regardless of a more timely complaint, its laches defense devolves into claiming harm . . . from [the plaintiff's] success on the merits.").

HHS's second prejudice argument fares no better. The agency has claimed that "Plaintiff's requested relief interferes" with the agency's ongoing recompetition of TPPP grant funding by "reducing the funds available to the agency to award to new grantees" and by causing prospective applicants for these funds to waste time preparing lengthy grant applications. (Defs.' Mem. at 17.) As an initial matter, the Court notes that the agency's formal recompetition process began on April 20, 2018—only one

12

week before the instant lawsuit was filed. (*See* Funding Opportunity Announcement 2018–2020 ("FOA 2018–2020"), Ex. J to Decl. of Michael J. Gerardi, ECF No. 18-3, at 75–79.) At that point in time, the agency had not made any commitments to provide funding to any new TPPP grantees, and had barely initiated the recompetition process for these funds. (*See id.* at 75).) Indeed, according to HHS's own funding announcement, the applications it has solicited for the newly revised TPPP grants are not due until June 29, 2018 (*id.*), and the agency has further represented that it will not actually award these funds to any prospective TPPP grantee until at least September of 2018 (*see* Tr. of Status Hr'g ("Hr'g Tr."), ECF No. 25, at 62:1–2). Thus, HHS cannot seriously suggest that, at the time the instant action was filed, it would have had to engage in a harmful divestiture of funds that the agency has already committed to other uses, nor can it credibly claim that third parties had made enormous expenditures within the first week of the recompetition process.

Even so, and even more importantly, any such injury would be a self-inflicted wound. HHS formally opened the recompetition process on April 20, 2018, the day *after* this Court orally announced in *Policy and Research, LLC* that the agency's decision to shorten the project periods of four TPPP grantees without providing any explanation for doing so violated the APA. (*Compare* Oral Ruling Tr., *Policy & Research, LLC, v. HHS*, No. 18-cv-346 (D.D.C. decided April 19, 2018), Ex. H to Decl. of Sean Sherman, ECF No. 6-2, at 70 *with* Kretschmaier Decl. ¶ 6.) Thus, the agency was on notice that the unexplained and indiscriminate action that it took when it issued the 2017–2018 Notice of Award was on shaky legal ground, yet HHS apparently decided to recompete the TPPP grant funding anyway, thereby knowingly exposing

13

itself and third parties to the risk that future lawsuits or rulings relating to other similarly situated TPPP grantees would upend the newly minted recompetition process. Put another way, even though Healthy Futures and the 60-plus other class members had not already filed legal actions at the time the recompetition process launched, the handwriting was on the wall due to this Court's ruling that enjoined the agency's alleged unlawful termination of four TPPP grants, and HHS is to blame for whatever financial or administrative burden results from its decision to recompete the funds as though no other TPPP grantees had actionable claims (*i.e.,* the willful blindness option) rather than opting to put its plans on hold and seek an expedited appeal. Stated simply, the defense of laches does not shield an agency from the consequences of its own choices. *See Rozen v. District of Columbia*, 702 F.2d 1202, 1204 (D.C. Cir. 1983) "[A]ny prejudice suffered by defendant in this case is attributable to its own actions.").

The bottom line is this: although HHS would certainly have preferred to be able to execute its new approach to the TPPP without being challenged in court, it cannot credibly contend that equity entitles it to do so, either because Healthy Futures and the other class members waited too long to bring the instant lawsuit or because the entirely foreseeable instigation of this class action might forestall the agency and third parties' investment in the new TPPP. Consequently, this Court confidently concludes that laches does not bar the action that Healthy Futures has brought on behalf of itself and all other similarly situated TPPP grantees.

> **B. Consistent With Its Decision In *Policy And Research, LLC*, This Court Concludes That HHS's Decision To Shorten The Class Members' Project Periods Is Not Committed To Agency Discretion By Law And Is Arbitrary And Capricious Under The APA**

This Court has previously ruled on HHS's "committed to agency discretion"

14

argument, as well as the merits of the claims that the Healthy Futures class action seeks to advance. (*See* Pl.'s Mem. in Supp. of Mot. for Summ. J. on the Individual and Class Claims ("Pl.'s Mem."), ECF No. 6, at 13–16; Defs.' Mem. at 18–28; *see also* Hr'g Tr. at 57:23–58:2 (acknowledging as much).) The Court sees no need to repeat its prior discussion, which is incorporated by reference herein. *See Policy & Research, LLC*, 2018 WL 2184449, at *7–13. Moreover, the Court declines the agency's suggestion that it revisit that analysis in the instant context. (*See* Defs.' Mem. at 18 (asserting that "[t]his Court erred . . . in concluding that HHS engaged in a termination by announcing that it would recompete the entire program" and engaging in a lengthy rehashing of its unsuccessful arguments).)

Putting the finest possible point on the matter, although this Court was the first to render a ruling with respect to the four legal challenges that TPPP grantees filed in February of 2018 regarding the agency's 2017–2018 Notice of Award announcement, its conclusion that HHS's decision to shorten the project periods of the TPPP grantees was a "termination" of those grants under HHS's regulations, and thus that meaningful standards apply such that the challenged agency action is reviewable, *see Policy & Research, LLC*, 2018 WL 2184449, at *9, is now a consensus view that unquestionably applies to the claims at issue here.[4] Also fully applicable to the instant summary judgment dispute is this Court's prior finding that HHS acted arbitrarily and capriciously, in violation of the APA, when it terminated the TPPP grant funding at issue without explanation and in clear contravention of its own regulations. *See id.* at

---

[4] All four of the district judges who have addressed this legal issue to date have reached this same conclusion. *See King Cnty.*, 2018 WL 2411759, at *6; *Policy & Research, LLC*, 2018 WL 2184449, at *12; *Healthy Teen Network*, 2018 WL 1942171, at *7; *Planned Parenthood of Greater Wash. & N. Idaho*, 2018 WL 1934070, at *8.

15

*13.  In other words, HHS has done nothing to distinguish the instant claims and arguments from those that have already been thoroughly evaluated and decided, and at this point, it appears that the agency's efforts might best be directed at deciding whether or not to seek appellate review.  *Cf.* Fed. R. App. P. 4(a)(1)(B) ("The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is . . . (ii) a United States agency[.]")

## IV. CONCLUSION

For the reasons stated above, HHS's laches defense is meritless, and for the reasons set forth in *Policy and Research, LLC*, the class members have reviewable claims that warrant injunctive relief.  Therefore, as set forth in the Order that accompanies this Memorandum Opinion, Healthy Futures's motion for summary judgment on behalf of itself and similarly situated individuals is **GRANTED**, while HHS's cross-motion to dismiss or for summary judgment is **DENIED**.  Furthermore, consistent with the remedy in *Policy and Research, LLC*, HHS's shortening of the class members' project periods will be **VACATED**, and HHS will be ordered to accept and process any noncompeting continuation applications that the class members submit as if the agency had not undertaken to shorten these grantees' federal awards.

DATE:  June 1, 2018 　　　　　　　　　*Ketanji Brown Jackson*
　　　　　　　　　　　　　　　　　　KETANJI BROWN JACKSON
　　　　　　　　　　　　　　　　　　United States District Judge